**Nos. 2025-1812, 2025-1813**

---

## United States Court of Appeals
## For the Federal Circuit

---

V.O.S. Selections., Plastic Services and Products, LLC, dba Genova Pipe,
Microkits, LLC, FishUSA Inc., Terry Precision Cycling LLC,
Plaintiffs-Appellees,

v.

Donald J. Trump, Executive Office of the President, United States, Pete R. Flores,
Jamieson Greer, Office of the United States Trade Representative, Howard Lutnik,
United States Customs and Border Protection,
Defendants-Appellants.

---

State of Oregon, State of Arizona, State of Colorado, State of Connecticut, State of
Delaware, State of Illinois, State of Maine, State of Minnesota, State of Nevada,
State of New Mexico, State of New York, State of Vermont,
Plaintiffs-Appellees,

v.

Donald J. Trump, United States Department of Homeland Security, Kristi Noem,
United States Customs and Border Protection, Pete R. Flores, United States
Defendants-Appellants.

---

On Appeal from the United States Court of International Trade
Nos. 25-66, 25-77, Judges Katzmann, Reif, and Restani

---

## Crutchfield *Amicus Curiae* Brief
## Opposing Defendants' Motion for Stay Pending Appeal

---

Peter J. Brann
Brann & Isaacson
[Signature Block Continued Inside]

Peter J. Brann
David Swetnam-Burland
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME  04243-3070
207.786.3566
pbrann@brannlaw.com
dsb@brannlaw.com

*Attorneys for Amicus Curiae
Crutchfield Corporation*

# Table of Contents

Table of Contents ................................................................................................i

Table of Authorities ........................................................................................ ii

Preliminary Statement .................................................................................... 1

*Amicus Curiae* Interest ................................................................................. 1

Argument .......................................................................................................... 6

 The Court Should Deny the Stay Motion to Preserve the nearly
 50-year *Status Quo* on Tariffs under the IEEPA ..................................... 6

Conclusion ...................................................................................................... 13

Certificate of Interest. .................................................................................... 14

Certificate of Service ..................................................................................... 16

Certificate of Compliance ............................................................................. 17

# Table of Authorities

**Cases**

*Ala. Assn. of Realtors v. DHHS*, 594 U.S. 758 (2021) .........................................8–9

*Biden v. Nebraska*, 600 U.S. 477 (2023) ...................................................................9

*Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142 (2012)............................8

*Dept. of Transportation v. Assoc. of Am. Railroads*, 575 U.S. 43 (2015)........ 11–12

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)........................9

*Gundy v. United States*, 588 U.S. 128 (2019)................................................... 10–12

*J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394 (1928) ..........................11

*Learning Resources, Inc. v. Trump*, No. 1:25-cv-01248-RC, 2025 WL 1525376
   7(D.D.C. May 29, 2025) (appeal pending, No. 25-5202) ..................................6–7

*Mistretta v. United States,* 488 U.S. 361 (1989)....................................................10

*Nken v. Holder,* 556 U.S. 418 (2009) ...................................................................5–6

*Scripps-Howard Radio, Inc. v. FCC,* 316 U.S. 4 (1942)..........................................6

*Utility Air Reg. Grp. v. EPA*, 573 U.S. 302 (2014) ....................................... 7, 9–10

*Virginian Ry. Co. v. United States,* 272 U.S. 658 (1926) ........................................6

*Wayman v. Southard*, 23 U.S. (10 Wheat.) 1 (1825) ..............................................11

*West Virginia v. EPA*, 597 U.S. 697 (2022) .......................................................8–10

*Whitman v. Am. Trucking Assoc.*, 531 U.S. 457 (2001) ................................. 8–9, 11

**Statutes**

Cal. Civ. Code § 1770(a)(29)....................................................................................4

50 U.S.C. § 1701(a) ................................................................................................12

50 U.S.C. § 1702....................................................................................................8, 12

50 U.S.C. § 1702(a)(1)(B) ...................................................................8, 12

**Constitutional Provisions**

U.S. Const. Art. I.....................................................................................10

U.S. Const. Art. I, § 8, cl. 1....................................................................11

U.S. Const. Art. II, § 1 ...........................................................................10

**Other Authorities**

Laura Doan, *Trump Says His Tariffs Could Bring in Trillions in Revenue. Economists Disagree*, CBS News (Apr. 4, 2025)....................................7

Nicholas Molinari, *Spirit of the Holiday: American Business at the Heart of the Holidays*, U.S. Chamber of Commerce (Dec. 29, 2024).......................4

National Retail Federation, *Winter Holiday FAQs* (Dec. 2024)...............................4

Statista, *Higher Tariffs Here to Stay Despite Trade War De-Escalation,* (May 2025) ............................................................................................3

## Preliminary Statement

*Amicus Curiae* Crutchfield Corporation submits this brief in opposition to Defendants' motion for a stay pending appeal. Denial would preserve the *status quo* that existed between 1977 and 2025, and allow this Court, the D.C. Circuit in a parallel case, and the U.S. Supreme Court to consider deliberately whether the President's unprecedented assertion that the International Emergency Economic Powers Act of 1977 (IEEPA) grants him unilateral and unreviewable authority to impose, increase, decrease, suspend, or alter tariffs on virtually every country in the world. Crutchfield wants to avoid the adverse consequences not only of the tariffs, but also of the chaos and uncertainty resulting from wild gyrations in the tariffs.

## *Amicus Curiae* Interest[*]

Crutchfield is a family-owned and operated business that has been selling electronics to American consumers for over 50 years from its home in Virginia. Started in the family's basement, Crutchfield originally sold its products through its catalogs and by telephone, and now also sells its products through the internet. Crutchfield sells a wide range of consumer electronics products, including car and home audio products, televisions, professional audio products, home health care products, electronic watches, home security components, and more.

---

[*] No party or party's counsel assisted in the drafting this brief or contributed money toward preparing or submitting this brief. No one other than *amicus curiae* or its counsel contributed money toward preparing or submitting this brief.

Crutchfield obtains its products from different suppliers and vendors, almost all of which are overseas. For many products, the *only* available suppliers and vendors, at least in 2025, are overseas. Thus, tariffs imposed today, and the threat of additional tariffs imposed tomorrow, matter.

Obviously, announced tariffs of 145% for products coming from China (which supplies nearly 60% of Crutchfield's products), and announced tariffs of 50% for the European Union (EU), 25% for Mexico and Canada, as well as many other countries that supply products to Crutchfield, are potentially devastating.

The threat of additional tariffs of unknown size likewise has a crippling effect on Crutchfield's ability to make business decisions. Although many of the highest announced tariffs are currently paused, they hang like the proverbial sword of Damocles over every retailer that imports any product, or component part, from anywhere in the world. Furthermore, Crutchfield cannot engage in rational business planning if tariffs can be increased, decreased, suspended, or altered on a moment's notice without any recourse (in Defendants' view) to challenge them. This chart on the changing China tariffs illustrates the whirlwind Crutchfield faces:



Statista, *Higher Tariffs Here to Stay Despite Trade War De-Escalation* (May 2025), available at https://www.statista.com/chart/34447/additional-tariffs-by-the-us-on-china-and-vice-versa-2025/.

This turmoil is particularly devastating to American retailers. The holiday season can be make-or-break. Studies suggest consumers spent approximately $1

trillion on holiday sales in 2024. *See* Nicholas Molinari, *Spirit of the Holiday: American Business at the Heart of the Holidays*, U.S. Chamber of Commerce (Dec. 29, 2024), available at https://www.uschamber.com/economy/spirit-of-the-season-american-businesses-at-the-heart-of-the-holidays. Additionally, holiday sales account for a disproportionate amount of retailer sales and profits. *See* National Retail Federation, *Winter Holiday FAQs* (Dec. 2024) ("Overall, holiday sales in November and December have averaged about 19% of total retail sales over the last five years, but the figure can be higher for some retailers. In addition, holiday sales can be more profitable because the increased volume of purchases comes without significantly increasing retailers' fixed costs of doing business."), available at https://nrf.com/research-insights/holiday-data-and-trends/winter-holidays/winter-holiday-faqs.

Just as Irving Berlin wrote *White Christmas* in the summer, to prepare for the 2025 holiday season, Crutchfield must make critical business decisions *now*. To send its catalogs in time for the holidays, it must determine what products to sell and finalize straightaway for the printers the catalog copy, including the prices. Customers expect, and regulators require, that prices advertised in the catalog are accurate. *See, e.g.,* Cal. Civ. Code § 1770(a)(29).

For its online products, Crutchfield must make essential, irreversible business decisions *today*. Due to the extensive lead times to source, manufacture, and ship

products from overseas, decisions on how many products to order must be made months in advance. Conversely, faced with possible crippling tariffs, decisions to cancel or scale back purchase orders from overseas vendors for future orders, including the pivotal holiday season, must be made *today*.

Crutchfield has a direct interest not only in the ultimate merits of the issues on appeal—does the IEEPA grant the President the unprecedented, unilateral, and unreviewable authority to set tariffs, and if so, is such authority constitutional—but also in the issues on the stay pending appeal. Crutchfield seeks a reset to the *status quo* that existed between 1977 and 2025 to prevent unpredictable and unexpected changes to the tariff rates while this Court, the D.C. Circuit, and the Supreme Court thoughtfully consider these important legal issues. That is, Crutchfield asks this Court to quiet the chaos, not add to it.

## Argument

### The Court Should Deny the Stay Motion to Preserve the nearly 50-year *Status Quo* on Tariffs under the IEEPA.

To obtain a stay pending appeal, Defendants must establish: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 426 (2009) (citation omitted).

In adopting this high standard where such stays are the rare exception to the rule, the *Nken* Court relied heavily on the principles articulated in *Virginian Ry. Co. v. United States,* 272 U.S. 658 (1926), and *Scripps-Howard Radio, Inc. v. FCC,* 316 U.S. 4 (1942). *See Nken,* 556 U.S. at 421, 426–27, 430, 432–33, 435. Those principles still resonate today:

> No court can make time stand still. The circumstances surrounding a controversy may change irrevocably during the pendency of an appeal, despite anything a court can do. But within these limits it is reasonable that an appellate court should be able to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of a determination which may later be found to have been wrong.

*Scripps-Howard*, 316 U.S. at 9 (quoted in part in *Nken*, 556 U.S. at 421, 432). While that analysis supported a stay in *Scripps-Howard* to delay enforcement of an agency action that changed the *status quo*, those same considerations lead to the opposite conclusion here where the President upended the *status quo* in 2025 by reinterpreting a 1977 law to impose worldwide tariffs.

Although none of the four *Nken* factors supports a stay pending appeal, we focus on the critical first, purely legal, factor.

We do not presume to improve upon the lengthy, careful, analyses in the court below and in the district court in the parallel litigation that demonstrate beyond peradventure the IEEPA did not grant the President authority to set tariffs. *See* Addendum to Def. Stay Motion A10–67; *Learning Resources, Inc. v. Trump*, No. 1:25-cv-01248-RC, 2025 WL 1525376 (D.D.C. May 29, 2025) (appeal pending, No.

25-5202). Rather, we argue that it is a simple straight line from the plain language of the IEEPA and the Constitution to the conclusion that the IEEPA did not and could not delegate such authority to the President.

Defendants do not and cannot dispute that no other President has claimed since the IEEPA was enacted in 1977 that it conferred authority on the President to set tariffs. "When an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy, we typically greet its announcement with a measure of skepticism." *Utility Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (plurality opinion) (citation omitted).

Yet, Defendants contend that under this newly-discovered power, "IEEPA *Clearly* Authorizes These Tariffs," Def. Stay Motion 13 (emphasis added), and these worldwide tariffs will "raise over $1 trillion in the next year or so, helping to reduce the national debt and even potentially offset some income taxes." Laura Doan, *Trump Says His Tariffs Could Bring in Trillions in Revenue. Economists Disagree*, CBS News (Apr. 4, 2025) ("'You're going to see billions of dollars, even trillions of dollars coming into our country very soon in the form of tariffs,' the President said last week."), available at https://www.cbsnews.com/news/factcheck-trump-tariffs-revenue/. The Court should be skeptical that this trillion-dollar power to affect the world economy lay hidden in a 1977 statute for nearly 50 years.

7

In describing the President's authority, the IEEPA does not mention "tariffs" or any of its usual synonyms, such as tax, levy, imposition, impost, excise, or duty. *See* 50 U.S.C. § 1702. Instead, Defendants pluck the words "regulate" and "importation" from a laundry list of administrative powers to argue that this language "clearly" gives the President the right to impose tariffs:

> [I]nvestigate, block during the pendency of an investigation, *regulate*, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, *importation* or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, *any property in which any foreign country or a national thereof* has any interest by any person, or with respect to *any property, subject to the jurisdiction of the United States*[.]

50 U.S.C. § 1702(a)(1)(B) (emphasis added to show language quoted by Defendants); *see* Def. Stay Motion 6. Because language in a statute is known by the company it keeps, *see Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163 n.19 (2012), the fact that none of the rest of this statute suggests any taxing power reinforces the conclusion that this statute did not delegate tariff authority to the President. *Cf. Ala. Assn. of Realtors v. DHHS*, 594 U.S. 758, 764–65 (2021) (*per curiam*) (statute that doesn't mention evictions is a "wafer-thin reed" to convey "unprecedented," "expansive authority" to the CDC to halt evictions for millions of people); *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) ("Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle devices.'") (cleaned up) (quoting *Whitman v. Am. Trucking Assoc.*, 531

8

U.S. 457, 468 (2001)); *Whitman*, 531 U.S. at 468 (Congress does not "hide elephants in mouseholes") (ellipsis added and citation omitted).

Defendants' claim that the IEEPA granted the President unlimited and unreviewable authority to impose any tariff on any country at any time runs into the brick wall of the major questions doctrine. "Even if the text were ambiguous, the sheer scope of the [President's] claimed authority under [the IEEPA] would counsel against the Government's interpretation." *Ala. Assn. of Realtors*, 594 U.S. at 724 (brackets added). "There is no serious dispute that the [President] claims the authority to exercise control over 'a significant portion of the American economy.'" *Biden v. Nebraska*, 600 U.S. 477, 503 (2023) (brackets added) (quoting *Utility Air*, 573 U.S. at 324; *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)).

With great power comes great responsibility. "We expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Ala. Assn. of Realtors*, 594 U.S. at 724 (cleaned up) (quoting *Utility Air*, 573 U.S. at 324; *Brown & Williamson*, 529 U.S. at 160). In these circumstances, "both separation of powers principles and a practical understanding of legislative intent make us 'reluctant to read into ambiguous statutory text' the delegation claimed to be lurking there." *West Virginia*, 597 U.S. at 723 (quoting *Utility Air*, 573 U.S. at 324). The President "instead must point to 'clear

congressional authorization' for the power [he] claims." *West Virginia*, 597 U.S. at 723 (brackets added) (quoting *Utility Air*, 573 U.S. at 324). Suffice it to say, connecting the words "regulate" and "importation" with an ellipsis that erases 16 intervening words of the statute does not add up to "clear congressional authorization" for the President to impose a "tariff."

Even if the ambiguous language of the IEEPA can be elastically expanded to authorize the imposition of tariffs, Defendants' argument runs aground on another shoal, namely, the nondelegation doctrine. "The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 588 U.S. 128, 132 (2019) (plurality opinion). "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States,* 488 U.S. 361, 371 (1989).

As every civics student knows, "[a]ll *legislative* Powers herein granted shall be vested in a Congress of the United States," U.S. Const. Art. I (emphasis added), while "[t]he *executive* Power shall be vested in a President of the United States of America," U.S. Const. Art. II, § 1 (emphasis added). Additionally, the Constitution expressly grants to Congress, not the President, the power to raise money and impose taxes and tariffs: "The Congress shall have Power To *lay and collect Taxes, Duties, Imposts and Excises*, to pay the Debts and provide for the common Defence and

general Welfare of the United States[.]" U.S. Const. Art. I, § 8, cl. 1 (emphasis added).

"Accompanying that assignment of [legislative] power to Congress is a bar on its further delegation." *Gundy*, 588 U.S. at 135 (brackets added). "Congress, this Court explained early on, may not transfer to another branch 'powers which are strictly and exclusively legislative.'" *Id.* (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42–43 (1825) (Marshall, C.J.)); *see also Dept. of Transportation v. Assoc. of Am. Railroads*, 575 U.S. 43, 61 (2015) (Alito, J., concurring) (Congress "cannot delegate its exclusively legislative authority at all.") (citation omitted); *id.* at 68 (Thomas, J., concurring in the judgment) ("When the Government is called upon to perform a function that requires an exercise of legislative, executive, or judicial power, only the vested recipient of that power can perform it.").

Because the text of the Constitution "permits no delegation" of Congress' legislative powers, "*Congress* must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *Whitman*, 531 U.S. at 473 (emphasis and brackets in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

> Given that standard, a nondelegation inquiry always begins (and often almost ends) with statutory interpretation. The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion. So the answer requires construing the challenged statute to figure out what task it delegates and what instructions it provides.

11

*Gundy*, 588 U.S. at 135–36.

In contrast to the Court's late nineteenth and early twentieth century tariff cases in which Congress set the legislative policy and the President made factual determinations to adjust the tariffs that were subject to judicial review so there was no delegation of legislative power, *see Dept. of Transportation*, 575 U.S. at 77–82 (Thomas, J., concurring in the judgment), the IEEPA does not provide *any* "intelligible principle" to guide anyone in imposing, increasing, decreasing, suspending, or altering tariffs of any amount for any length of time on any country.

The statutory language relied upon by Defendants—"regulate" and "importation"—provides no discernible standard on anything to do with tariffs. *See* 50 U.S.C. § 1702(a)(1)(B). The multiple twists this year in the tariff rates underscore the conclusion that Section 1702 is standardless. If we open the aperture to include the preconditions necessary to invoke the IEEPA, *see* 50 U.S.C. § 1701(a), the "unusual and extraordinary threat" relied upon to impose the tariffs are trade deficits that have existed for generations.

In short, Defendants are unlikely to succeed on the merits because the IEEPA did not and could not delegate unprecedented, unlimited, and unreviewable authority to the President to set worldwide tariffs.

12

## Conclusion

*Amicus Curiae* Crutchfield respectfully requests that Defendants' motion for a stay pending appeal be denied.

Dated: June 4, 2025                    Respectfully submitted,

<u>/s/ Peter J. Brann</u>
Peter J. Brann
David Swetnam-Burland
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME  04243-3070
207.786.3566
pbrann@brannlaw.com
dsb@brannlaw.com

*Attorneys for Amicus Curiae*
*Crutchfield Corporation*

## Certificate of Interest

Pursuant to Fed. Cir. R. 47.4, Crutchfield certifies:

1.      *The full name of every entity represented in the case by the counsel filing the certificate*: Crutchfield Corporation. *See* Fed. Cir. R. 47.4(a)(1).

2.      *For each entity, the name of every real party in interest, if that entity is not the real party in interest*: None. *See* Fed. Cir. R. 47.4(a)(2).

3.      *For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock*: None.  *See* Fed. Cir. R. 47.4(a)(3).

4.      *The names of all law firms, partners, and associates that have not entered an appearance in the appeal and appeared for the entity in the lower tribunal or are expected to appear for the entity in this court*: None. *See* Fed. Cir. R. 47.4(a)(4).

5.      *Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal*: None. *See* Fed. Cir. R. 47.4(a)(5).

6.      *All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases*: None applicable. *See* Fed. Cir. R. 47.4(a)(6).

I certify that the foregoing information is accurate and complete to the best of my knowledge.

Dated: June 4, 2025

/s/ Peter J. Brann
Peter J. Brann

## Certificate of Service

On June 4, 2025, I served the foregoing document on all counsel of record through the Court's CM/ECF system.

Dated: June 4, 2025                          /s/ Peter J.  Brann
                                             Peter J. Brann

## Certificate of Compliance

Under Fed. R. App. P. 29(b), counsel for the undersigned *Amici Curiae* certify that this brief complies with the type–volume limitation for motions under Fed. R. App. P. 27(d)(2). Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2), the brief contains 2594 words.

The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), I have relied on the word count feature of this word processing system in preparing this certificate.

I certify that the foregoing information is accurate and complete to the best of my knowledge.

Dated: June 4, 2025                          /s/ Peter J.  Brann
                                             Peter J. Brann