Case Nos. 2025-1812, -1813

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

**V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, DBA GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC,**

*Plaintiffs–Appellees,*

*v.*

**DONALD J. TRUMP, in his official capacity as President of the United States, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, PETE R. FLORES, Acting Commissioner for United States Customs and Border Protection, in his official capacity as Acting Commissioner of the United States Customs and Border Protection, JAMIESON GREER, in his official capacity as United States Trade Representative, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, HOWARD LUTNICK, UNITED STATES CUSTOMS AND BORDER PROTECTION,**

*Defendants–Appellants.*

---

**THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, THE STATE OF VERMONT,**

*Plaintiffs–Appellees,*

*v.*

**PRESIDENT DONALD J. TRUMP, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, Secretary of Homeland Security, in her official capacity as Secretary of the Department of Homeland Security, UNITED STATES CUSTOMS AND BORDER PROTECTION, PETE R. FLORES, Acting Commissioner for United States Customs and Border Protection, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection, UNITED STATES,**

*Defendants–Appellants.*

---

ON APPEAL FROM THE UNITED STATES COURT OF INTERNATIONAL TRADE
NOS. 25-66, -77, JUDGES KATZMANN, REIF, AND RESTANI

---

## BRIEF OF 33 MEMBERS OF THE UNITED STATES SENATE AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS–APPELLEES' OPPOSITION TO EMERGENCY MOTION FOR A STAY PENDING APPEAL

---

The Norton Law Firm PC
William Fred Norton
Nathan Walker
Josephine Petrick
Celine Purcell
Emily Kirk

Jennifer Hillman
Georgetown University Law Center
600 New Jersey Ave NW
Washington, DC 20001
jennifer.hillman@law.georgetown.edu

*Counsel listing continued on next page*

Rebecca Kutlow
300 Frank H. Ogawa Plaza, Suite
450 Oakland, CA 94612
Telephone: 510-906-4900
fnorton@nortonlaw.com
nwalker@nortonlaw.com
jpetrick@nortonlaw.com
cpurcell@nortonlaw.com
ekirk@nortonlaw.com
rkutlow@nortonlaw.com

*Attorneys to Amici Curiae*

Peter Harrell
Peter Harrell LLC
1102 St. Louis Place NE
Atlanta, GA 30306
harrell@peterharrelllaw.com

*Of Counsel*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

|  |  |
|---|---|
| **Case Number** | 2025-1812, -1813 |
| **Short Case Caption** | V.O.S. Selections Inc. et al. v. Trump et al. |
| **Filing Party/Entity** | Amici Curiae, 33 Members of the United States Senate |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/09/2025

Signature: /s/William Fred Norton

Name: William Fred Norton

i

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| See attached list. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑   Additional pages attached

ii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| William Fred Norton | Nathan Walker | Josephine Petrick |
| Celine Purcell | Emily Kirk | Rebecca Kutlow |
| Jennifer Hillman | Peter Harrell | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☐   No    ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

LIST OF REPRESENTED ENTITES
AMICI CURIAE

**Senator Jeanne Shaheen**
New Hampshire
Ranking Member
Senate Foreign Relations Committee

**Senator Charles E. Schumer**
New York
Senate Minority Leader

**Senator Peter Welch**
Vermont

**Senator Jacky Rosen**
Nevada

**Senator Maria Cantwell**
Washington

**Senator Catherine Cortez Masto**
Nevada

**Senator Adam B. Schiff**
California

**Senator Tammy Duckworth**
Illinois

**Senator Richard Blumenthal**
Connecticut

**Senator Alex Padilla**
California

**Senator Richard J. Durbin**
Illinois

**Senator Martin Heinrich**
New Mexico

**Senator Bernard Sanders**
Vermont

**Senator Raphael Warnock**
Georgia

**Senator Ron Wyden**
Oregon
Ranking Member
Senate Finance Committee

**Senator Tim Kaine**
Virginia

**Senator Michael F. Bennet**
Colorado

**Senator Ben Ray Luján**
New Mexico

**Senator Andy Kim**
New Jersey

**Senator Chris Van Hollen**
Maryland

**Senator Margaret Wood Hassan**
New Hampshire

**Senator Angus S. King, Jr.**
Maine

**Senator John Hickenlooper**
Colorado

**Senator Christopher A. Coons**
Delaware

**Senator Mark R. Warner**
Virginia

**Senator Jeffrey A. Merkley**
Oregon

**Senator Amy Klobuchar**
Minnesota

**Senator Lisa Blunt Rochester**
Delaware

**Senator Mazie K. Hirono**
  Hawaii

**Senator Edward J. Markey**
  Massachusetts

**Senator Gary C. Peters**
  Michigan

**Senator Brian Schatz**
  Hawaii

**Senator Angela Alsobrooks**
  Maryland

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .................................................................i

TABLE OF AUTHORITIES....................................................................vii

STATEMENT OF AUTHORSHIP AND FUNDING ................................x

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO
     FILE ............................................................................................... 1

INTRODUCTION................................................................................ 1

DISCUSSION .....................................................................................2

I.    The Court of International Trade Correctly Held That
    IEEPA Does Not Authorize the President to Impose the
    Challenged Tariffs........................................................................2

II.   A Stay Would Not Harm the Administration but Would
    Significantly Harm Plaintiffs, *Amici's* Constituents, and the
    Public ...........................................................................................8

       A.    The Administration's Claimed Injury Is Avoidable................8

       B.    A Stay of the Injunction Would Irreparably Harm
           *Amici*'s Constituents Who Are Similarly Situated to
           Appellants. .......................................................................... 10

       C.    The Public Interest Weighs Strongly Against a Stay. ...........12

CONCLUSION .................................................................................. 14

CERTIFICATE OF COMPLIANCE....................................................... 15

APPENDIX: LIST OF AMICI CURIAE................................................. 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Biden v. Nebraska,*
    600 U.S. 477 (2023) ................................................................ 3

*Fed. Energy Admin. v. Algonquin SNG, Inc.,*
    426 U.S. 548 (1976) ............................................................... 5

*Georgia v. President of the United States,*
    46 F.4th 1283 (11th Cir. 2022) ............................................ 3

*Kentucky v. Biden,*
    23 F.4th 585 (6th Cir. 2022) ................................................ 3

*Learning Res., Inc. v. Trump,*
    1248, 2025 WL 1525376 (D.D.C. May 29, 2025) ................ 2

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) .............................................. 3

*Mayes v. Biden,*
    67 F.4th 921 (9th Cir. 2023) ................................................ 3

*Nken v. Holder,*
    556 U.S. 418 (2009) .............................................................. 1

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) .............................................................. 8

*In re Section 301 Cases,*
    570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022).................... 12

*Sierra Club v. Trump,*
    929 F.3d 670 (9th Cir. 2019)............................................. 12

*State v. Su,*
    121 F.4th 1 (9th Cir. 2024) ......................................................... 3

*United States v. Arch Trading Co.,*
    987 F.2d 1087 (4th Cir. 1993) ...................................................... 6

*United States v. Curtiss-Wright Export Corp.,*
    299 U.S. 304 (1936) ...................................................................... 6

*United States v. Yoshida Int'l, Inc.,*
    526 F.2d 560 (C.C.P.A. 1975) ...................................................... 7

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ...................................................................... 3

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ...................................................................... 3

## U.S. Constitutional Provisions

Article I
    § 8 ............................................................................................ 3, 13
    § 9 ................................................................................................... 5

## Statutes

15 U.S.C.
    § 78 ................................................................................................ 4

19 U.S.C.
    § 1338 ............................................................................................ 3
    § 1862 ............................................................................................ 3
    § 2132 ............................................................................................ 3
    § 2253 ............................................................................................ 3

50 U.S.C.
    § 1701 ....................................................................................... 8, 10
    § 1702 ............................................................................................ 4

United States–Taiwan Initiative on 21st-Century Trade First
    Agreement Implementation Act, 137 Stat. 63, Pub. L. No. 118-13
    (Aug. 7, 2023) .................................................................................... 13

## Other Authorities

U.S. Chamber of Commerce Letter (Apr. 30, 2025),
    https://bit.ly/Chamber-Tariffs .......................................................... 11

Christopher A. Casey & Jennifer K. Elsea, T*he International
    Emergency Economic Powers Act: Origins, Evolution, and Use*,
    Congressional Research Service (Jan. 30, 2024),
    https://www.congress.gov/crs-product/R45618 ................................. 4

Sen. Edward J. Markey, *The Trump Tariffs: A Small Business Crisis*,
    U.S. Senate Comm. on Small Business & Entrepreneurship,
    https://bit.ly/tariffs-small-bus .......................................................... 11

U.S. Chamber of Commerce, *"A matter of survival": Small Businesses
    Speak Out on Tariffs*, June 2, 2025, https://bit.ly/Chamber-tariff-
    report ................................................................................................ 11

## STATEMENT OF AUTHORSHIP AND FUNDING

(Fed. R. App. P. 29(a)(4)(E).)

No counsel for a party authored this brief in whole or part, no party or counsel for a party contributed money to fund preparing or submitting this brief, and no person contributed money intended to fund preparing or submitting this brief.  *See* Fed. R. App. P. 29(a)(4)(E).

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

*Amici* are 33 Members of the U.S. Senate representing states around the country.  *See* Appendix (listing Amici).  All parties consent to *Amici*'s filing this brief.  *See* Fed. R. App. P. 29(a); Fed. Cir. R. 29, Prac. N.  *Amici* have a strong interest in protecting Congress's constitutional authority to impose tariffs and regulate commerce with foreign nations.  *Amici* firmly believe that when the President wishes to impose tariffs, he must comply with the lawful delegations of tariff power that Congress has enacted over more than fifty years or, if existing authorities are insufficient, ask Congress for new authority. The President has usurped Congress's constitutional authority by impermissibly using IEEPA to impose tariffs.  *Amici* urge this Court to deny the request for a stay of the Court of International Trade's judgment.

## INTRODUCTION

The Administration fails to carry its burden to establish all the factors required to grant a stay pending appeal.  *See Nken v. Holder*, 556 U.S. 418, 433–34 (2009).  As to the merits, IEEPA does not authorize tariffs—Congress has never delegated its constitutional tariff

1

power so broadly or carelessly. Denial of the stay causes the Administration no irreparable harm because, to the extent the Administration believes tariffs are necessary, it retains specific tariff authorities Congress has already provided. Meanwhile, continued collection of unlawful tariffs irreparably harms *Amici*'s constituents and violates separation of powers principles.

This Court should deny the motion for a stay.

## DISCUSSION

## I. The Court of International Trade Correctly Held That IEEPA Does Not Authorize the President to Impose the Challenged Tariffs

In seeking a stay, the Administration must first demonstrate that it is likely to succeed on the merits. It has not met its burden to demonstrate likelihood of success. The CIT's judgment is correct. Indeed, Congress did not grant the President the authority to impose tariffs at all in IEEPA.[1]

The Constitution grants only Congress the power to "lay and

---

[1] *See also Learning Res., Inc. v. Trump*, No. CV 25-1248, 2025 WL 1525376 (D.D.C. May 29, 2025) (holding IEEPA does not authorize imposing tariffs and entering preliminary injunction), *appeal docketed*, No. 25-5202 (D.C. Cir. May 30, 2025).

collect Taxes, Duties, Imposts and Excises." U.S. Const. Art. I, § 8, cl. 1. Congress has delegated that power sparingly and always expressly, using the term "duties" along with "tariffs," "articles," and "countries of origin," with clear conditions and limits, subject to ongoing Congressional oversight and coordination. *See* 19 U.S.C. § 1338(a) (Section 338); 19 U.S.C. §§ 1862(a), 1862(c) (Section 232); 19 U.S.C. § 2132(a)(3)(A) (Section 122); 19 U.S.C. § 2253(a)(3)(A)–(B) (Section 201). Tariff statutes are all codified in Title 19 of the U.S. Code (denominated "Customs Duties"). IEEPA lacks all those elements.

This history of express delegation demonstrates Congress's intent to retain control over its tariff power, but it is much more than that. As the CIT properly recognized, Op. at 27–28, there must be "clear congressional authorization" before a court will interpret a statute as conferring sweeping authority over areas of vast economic and political significance—the kind of authority the Administration claims here. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022); *see also Biden v. Nebraska*, 600 U.S. 477, 501 (2023).[2]

---

[2] The Administration suggests these principles do not apply if the President, rather than an executive agency, lays claim to an Article I

IEEPA lacks the express language of other tariff statutes because it is not a tariff statute.  It does not confer any—let alone sweeping—tariff authority.  From 1977 to 2024, Presidents invoked IEEPA 69 times—never for tariffs.[3]

To be sure, IEEPA allows a President, once he declares an unusual and extraordinary threat to be an emergency, to "regulate … importation or exportation" of property.  50 U.S.C. § 1702(a)(1)(B).  This is not a tariff power.  Congress does not say "regulate" to mean "tax"; if it did, many federal agencies likewise authorized to "regulate" could also tax.  *See, e.g.*, Securities Exchange Act of 1934, § 4(a), 15 U.S.C.

---

power.  Motion at 15–16.  Not so.  The President has no tariff power unless Congress grants it, *see Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  These principles thus apply to the President, as four circuits have held, *see State v. Su,* 121 F.4th 1, 14 (9th Cir. 2024); *id.* at 17–22 (Nelson, J. concurring); *Louisiana v. Biden*, 55 F.4th 1017, 1031 & n.40 (5th Cir. 2022); *Georgia v. President of the United States*, 46 F.4th 1283, 1295–97 (11th Cir. 2022); *Kentucky v. Biden*, 23 F.4th 585, 606–08 (6th Cir. 2022).  The vacated opinion the Administration cites, *Mayes v. Biden*, 67 F.4th 921, 933 (9th Cir. 2023), is non-precedential and was rejected by the subsequent reasoning of *Su*.

[3] Christopher A. Casey & Jennifer K. Elsea, *The International Emergency Economic Powers Act: Origins, Evolution, and Use*, Congressional Research Service (Jan. 30, 2024), https://www.congress.gov/crs-product/R45618.

§ 78(d).  Further, if "regulate" really means "impose tariffs" then IEEPA also authorizes tariffs on "exportation"—which the Constitution expressly forbids.  U.S. Const. Art. I, § 9, cl. 5.

**_Limited and Narrow Delegation._**  When Congress has delegated its tariff power, it has retained substantial control by prescribing the scope of the delegated power; defining trade-specific conditions that must be satisfied before the power may be exercised; requiring formal processes like investigations, factfinding, and public hearings; or setting explicit temporal or quantitative limits on tariffs the President may impose.  *See, e.g.*, Section 122(a)(1)–(2); Sections 202–203; Sections 302–309; Section 232(b)(3)(A); *see also Fed. Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 559 (1976) (holding Section 232 constitutional because it "establishes clear preconditions to Presidential action").  IEEPA has none of the restraints and prescriptions of the Title 19 tariff laws, so it is demonstrably not a tariff statute.

These limitations do not just signal when Congress intends to confer tariff power.  Separation of powers principles, including those embodied in the non-delegation doctrine, require such constraints for

the tariff power to be delegated at all, as the CIT correctly held. Op. at 27–28. But the Administration claims IEEPA gives it unconstrained tariff power, further demonstrating the implausibility of its statutory interpretation. Op. at 35–38. The carefully prescribed laws that do expressly and carefully confer tariff authority would mean nothing if the President could unilaterally set tariffs through IEEPA. Congress did not authorize that loophole.

The Administration's stay motion asserts that courts have rejected non-delegation challenges to IEEPA, Motion at 17, but none of those decisions concerned a claim that IEEPA delegated *tariff* power, so they have no relevance here. The Administration next contends the non-delegation doctrine is "inapplicable in the foreign-affairs context," Motion at 17, citing *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936). But the President claims no authority to impose tariffs pursuant to his Article II, Section 2, foreign-affairs powers: he says Congress *delegated* to him its own Article I tariff power; for that claim, the non-delegation doctrine applies. Last, the Administration claims its powers under IEEPA "are explicitly defined and circumscribed," Motion at 17, quoting *United States v. Arch Trading Co.*, 987 F.2d 1087, 1093

(4th Cir. 1993). But the Administration is citing limits only for an emergency declaration, not limits on exercise of an asserted tariff power. As the CIT correctly held, Op. at 30–31, the purportedly delegated *tariff power* must be subject to intelligible limits, but the Administration's interpretation admits none.

**Yoshida *Is Not About IEEPA.*** As the CIT correctly held, *United States v. Yoshida Int'l, Inc.*, 526 F.2d 560 (C.C.P.A. 1975) does not control. Op. at 28–36. *Yoshida* concerned a different statute, the Trading with the Enemy Act (TWEA). The duty President Nixon imposed under TWEA and that *Yoshida* upheld was a "temporary measure," a "limited surcharge." *Yoshida*, 526 F.2d at 578. In contrast, the *Yoshida* court indicated the result would be "quite different" if the President sought to impose "whatever tariff rates he deems desirable." *Id.* The *Yoshida* court emphasized the limited surcharge was consistent with "congressional will," *id.* at 577, whereas the IEEPA tariffs are inconsistent with congressionally approved free trade agreements and preference programs. After the lower court *Yoshida* decision, Congress enacted Section 122 of the Trade Act of 1974 to constrain and provide stricter oversight over emergency balance-of-payments tariffs, and then

7

Congress enacted IEEPA to **narrow** the President's emergency powers—not to give the President new authority to impose whatever tariffs he wanted. *See* H.R. Rep. No. 95-459 at 7, 10. Allowing sweeping global "reciprocal" tariffs under IEEPA would effectively nullify Section 122. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

*"Deal with."* The CIT correctly held that IEEPA only authorizes actions to directly "deal with an unusual and extraordinary threat with respect to which a national emergency has been declared" and the powers may "not be exercised for any other purpose." 50 U.S.C. § 1701(b); *see* Op. at 36–46. Even if the President can impose tariffs under IEEPA, requiring domestic importers to pay tariffs on virtually all goods sold to U.S. residents would not directly "deal with" the emergencies the Administration has declared.

The Administration will not prevail and should not be granted a stay.

## II.    A Stay Would Not Harm the Administration but Would Significantly Harm Plaintiffs, *Amici's* Constituents, and the Public

### A.    The Administration's Claimed Injury Is Avoidable.

The Administration claims it will suffer irreparable harm if it

cannot continue using IEEPA-based tariffs as leverage in negotiations with other countries. This claimed harm can be avoided if the Administration simply follows the procedures and laws Congress enacted to grant the President power to impose tariffs, rather than abusing IEEPA.

Administration officials have made this very point. The President's Senior Counselor for Trade and Manufacturing, Peter Navarro, noted: "any trade lawyer knows it's just a number of different options we can take…. There's 122, there's 301, there's 232, there's 338. There's all sorts of things we can do well within the law."[4] Or as Commerce Secretary Lutnick put it, "rest assured, tariffs are not going away. He has so many other authorities that even in the weird and unusual circumstance where this [IEEPA] was taken away, we just bring on another or another or another."[5] The Administration's recognition that it has legal options available to it undermines its claim

---

[4] Fed. Cir. Dkt. No. 21 (Appellees' Brief Opposing Stay) at B4; *see also id.* at B7 (quoting U.S. Trade Representative Greer: "[I]f the case, you know, goes the other way, we have other tools as well.").)

[5] Fed. Cir. Dkt. No. 21 at B8.

that continued collection of illegal IEEPA tariffs is necessary to sustain negotiations.

The Administration further argues that it will suffer irreparable harm because "absent a stay, the government will receive reduced revenue that it will be unable to recoup if the tariffs are ultimately upheld." Motion at 25. But this revenue-based argument undermines the Administration's own legal position. IEEPA requires that presidential powers may only be exercised to deal with a declared emergency "and may not be exercised for any other purpose." 50 U.S.C. § 1701(b). None of the national emergencies the Administration has declared relate to revenue generation. Collecting tariffs to raise revenue rather than to address these specific emergencies exceeds IEEPA's authorization and contradicts the Administration's stated justification for the tariffs.

## B. A Stay of the Injunction Would Irreparably Harm *Amici*'s Constituents Who Are Similarly Situated to Appellants.

Granting a stay will cause irreparable harm to constituents of *Amici,* particularly thousands of small and medium-sized businesses that will continue to be harmed if the President persists in collecting

the unlawful IEEPA tariffs.  Small businesses do not have cash-on-hand or capital reserves to pay the increased tariffs, nor can they quickly adapt to them by modifying supply chains.[6]  If they cannot pass on the tariff costs to consumers—which would create additional harms for *Amici*'s constituents—many face letting employees go or filing for bankruptcy.  Even a few weeks of additional tariffs means small businesses will suffer irreparable harm.  The U.S. Chamber of Commerce has documented this reality, reporting on dozens of small business owners from across the nation who describe the tariffs' devastating impacts including canceled orders, forced layoffs, and businesses on the brink of closure due to tariff costs.[7]  The prospect of a refund will not mitigate those harms, particularly for businesses forced to close.  And it is difficult and costly to obtain after-the-fact refunds, often requiring each importer to file a separate claim.  Compared to the

---

[6] *See* Sen. Edward J. Markey, *The Trump Tariffs: A Small Business Crisis*, U.S. Senate Comm. on Small Business & Entrepreneurship, https://bit.ly/tariffs-small-bus.

[7] *See* U.S. Chamber of Commerce, *"A matter of survival": Small Businesses Speak Out on Tariffs*, June 2, 2025, https://bit.ly/Chamber-tariff-report; U.S. Chamber of Commerce Letter (Apr. 30, 2025), https://bit.ly/Chamber-Tariffs.

3,600 plaintiffs who contested the Section 301 tariffs of 2018,[8] the IEEPA tariffs would require vastly more claimants to seek refunds, putting undue strain on the refund claim system and delaying compensation to injured constituents.

### C.    The Public Interest Weighs Strongly Against a Stay.

The public interest in ensuring protection of separation of powers is "foundational" and is applied "broadly." *Sierra Club v. Trump*, 929 F.3d 670, 705, 707 (9th Cir. 2019). Yet a stay would let the President violate separation of powers principles by collecting revenue from Americans that he has no right to collect. The Constitution gives Congress, the branch most directly accountable to the American people, the power to "lay ... Duties." This structure was a deliberate choice by the Framers, who distinguished the powers of the President from the powers of a king who had imposed taxes without political accountability to the public or its interests.

The Administration has also made clear it will not seek congressional approval for any agreements it reaches, despite

---

[8] *See In re Section 301 Cases*, 570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022).

Congress's repeated, bipartisan position that the President lacks the authority to enter into binding trade agreements absent approval from Congress, consistent with Congress's constitutional power to "regulate Commerce with foreign nations." U.S. Const. Art. I, § 8, cl. 3; *see, e.g.*, United States–Taiwan Initiative on 21st-Century Trade First Agreement Implementation Act, 137 Stat. 63, Pub. L. No. 118-13 § 2(7) (Aug. 7, 2023).

The powers to impose tariffs and regulate international trade were given to Congress for a reason. Absent authorization from Congress to impose tariffs and approval to enter binding, durable trade agreements, it is contrary to the public interest for the President to arrogate Congress's power to himself.

Further, the broad-based tariffs, which include extensive levies on treaty allies Japan, Canada, and members of the NATO alliance, undermine U.S. national security by weakening U.S. alliances. *Amici* regularly interact with U.S.-allied leaders who want to work with the U.S. on security and economic matters; IEEPA tariffs have been raised as one of the foremost irritants and obstacles to maintaining strong partnerships with the U.S. Multiple allied governments, including

13

Canada, Mexico, and the European Union, have threatened retaliation targeting American exports and American companies—further compounding the economic harm to *Amici's* constituents.  Denying a stay will ensure the Administration cannot continue to usurp powers granted to Congress, and it will promote U.S. national security and economic interests.

## CONCLUSION

The Court should deny the requested stay pending appeal.

Respectfully submitted,

Date: June 9, 2025

*/s/ William Fred Norton*
William Fred Norton

The Norton Law Firm PC
*Attorneys to Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Century Schoolbook, a proportionally spaced typeface.  This brief contains 2,551 words, excluding the exempt portions.  *Cf.* Fed. R. App. P. 29(a)(5) (amicus briefs during initial consideration of merits limited to one-half the maximum length authorized by the rules for the party's principal brief); Fed. Cir. R. 29(b) (similar); Fed. R. App. P. 27(d)(2) (5,200-word limit for motions and motion oppositions).

*/s/ William Fred Norton*
William Fred Norton

APPENDIX: LIST OF AMICI CURIAE

**Senator Jeanne Shaheen**
New Hampshire
Ranking Member
Senate Foreign Relations Committee

**Senator Ron Wyden**
Oregon
Ranking Member
Senate Finance Committee

**Senator Charles E. Schumer**
New York
Senate Minority Leader

**Senator Tim Kaine**
Virginia

**Senator Peter Welch**
Vermont

**Senator Michael F. Bennet**
Colorado

**Senator Jacky Rosen**
Nevada

**Senator Ben Ray Luján**
New Mexico

**Senator Maria Cantwell**
Washington

**Senator Andy Kim**
New Jersey

**Senator Catherine Cortez Masto**
Nevada

**Senator Chris Van Hollen**
Maryland

**Senator Adam B. Schiff**
California

**Senator Margaret Wood Hassan**
New Hampshire

**Senator Tammy Duckworth**
Illinois

**Senator Angus S. King, Jr.**
Maine

**Senator Richard Blumenthal**
Connecticut

**Senator John Hickenlooper**
Colorado

**Senator Alex Padilla**
California

**Senator Christopher A. Coons**
Delaware

**Senator Richard J. Durbin**
Illinois

**Senator Mark R. Warner**
Virginia

**Senator Martin Heinrich**
New Mexico

**Senator Jeffrey A. Merkley**
Oregon

**Senator Bernard Sanders**
Vermont

**Senator Amy Klobuchar**
Minnesota

**Senator Raphael Warnock**
Georgia

**Senator Lisa Blunt Rochester**
Delaware

**Senator Mazie K. Hirono**
  Hawaii

**Senator Edward J. Markey**
  Massachusetts

**Senator Gary C. Peters**
  Michigan

**Senator Brian Schatz**
  Hawaii

**Senator Angela Alsobrooks**
  Maryland