# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT
Case No. 2025-1812

**RECEIVED**

**V.O.S. SELECTIONS, INC., et al.,**

JUN 1 0 2025

*Plaintiffs-Appellees,*

United States Court of Appeals
For the Federal Circuit

**v.**

**DONALD J. TRUMP, et al.**

*Defendants-Appellants*

---

## MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

"John Doe," *in propria persona* and filing under a pseudonym, respectfully moves this Court for leave to file an amicus curiae brief in support of the Appellees' position to affirm the United States Court of International Trade's (CIT) ruling of May 28, 2025, which invalidated the tariffs imposed under Executive Order 14243, 90 Fed. Reg. 13,681 (Mar. 25, 2025). This motion is filed pursuant to Federal Rule of Appellate Procedure 29 and is timely submitted within seven days of the Appellees' response deadline of June 5, 2025.

**Statement of Interest**

Doe has an interest in this appeal arising from an ongoing lawsuit [*Doe v. Flores*, Case No. 25-cv-01042 (JEB), pending in District Court in the District of Columbia], challenging the constitutionality of these and other tariffs. A reversal by this Court could impair Movant's ability to seek similar relief, necessitating participation at this level to protect these interests.

Given that death threats sent to judges handling Trump-related cases have become almost ubiquitous, *see e.g.,* Suzanne Russell, NJ federal judge whose son was murdered: Attacks on judges worrisome for democracy, *MyCentralJersey.com,* Apr. 16, 2025, Amicus has asked that Court to proceed anonymously out of concern for the safety of his family; as this Motion has not been resolved as of this writing, Amicus will file anonymously with a separate signature page filed under seal.

1

**Purpose and Relevance of the Brief**

The proposed amicus brief will provide the Court with unique perspectives not fully addressed by the existing parties. Specifically, it will argue that:

1. An oathbreaking adjudged insurrectionist not absolved by Congress literally cannot be our President *de jure*.  U.S. Const. amend. XIV, § 3;

2. The excerpt from *Trump v. Anderson*, 601 U.S. 100 (2024), asserting otherwise is void as *obiter dictum* and an attempt to engage in constitutionally impermissible judicial lawmaking;

3. As Appellant Trump is not our President, all his actions—and, those of his agents—are void *ab initio*, as an act of a usurper is void. *Norton v. Shelby County*, 118 U.S. 425, 443 (1886).

As this line of reasoning would dispose of the appeal in its entirety, these arguments will supplement the Appellees' brief and aid this Court in its consideration of the matter.

**Compliance with FRAP 29**

Movant's brief is in compliance with FRAP 29(a)(5) (not exceeding 6,500 words), and FRAP 32 (formatting requirements, including double-spaced text, 14-point font, and a certificate of compliance). The brief is attached hereto as Exhibit A.

**Request for Relief**

WHEREFORE, Movant respectfully requests that this Court grant leave to file the attached amicus curiae brief in support of Appellees, to be considered in conjunction with the appeal proceedings, and for such other relief as the Court deems just and proper.


Respectfully submitted this 6th day of June, 2025,

_____/s/_   John Doe_____
(Signature under seal)

# EXHIBIT A

No. 2025-1812

# United States Court of Appeals for the Federal Circuit

V.O.S. Selections, Inc., et al.,
*Petitioners-Appellees,*

v.

DONALD J. TRUMP, *in his official capacity as President of the United States,* et al.,
*Respondents-Appellants*

On appeal from the United States Court of International Trade
No. 1:25-cv-00066-GSK-TMR-JAR;
No. 1:25-cv-00077-GSK-TMR-JAR,

## BRIEF OF JOHN DOE AS AMICUS CURIAE IN SUPPORT OF PETITIONERS-APPELLEES

JOHN DOE,
Pro se
(Contact information filed under seal)
@manncoulter.fox@gmail.com

## CERTIFICATE OF INTERESTED PERSONS

Amicus curiae certifies that, in addition to those listed in Appellees' Certificate of Interested Persons, the following persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. Amicus Curiae John Doe is a natural person, who received no funding from any person or entity toward the funding of this brief.
2. The same John Doe (identity filed under seal) is the Plaintiff in a matter styled *Doe v. Flores*, No. 25-cv-01042 (JEB) (D.D.C. filed Apr. 2, 2025). Amicus is proceeding in that matter under a pseudonym; a motion to proceed pseudonymously has not been resolved at this writing.

   Amicus hereby certifies that no party's counsel authored this brief in whole or in part, and no party or party's counsel contributed money intended to fund its preparation or submission.

# TABLE OF CONTENTS

Table of Cases and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Required Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    Appellant Trump Cannot Be President as a Matter of Law . . . . . 10

II.   Only a Lawfully Elected President Can Wield
         the Executive Power . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.  Supreme Court Justice Have No Lawful Authority
         to Rewrite the Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A. *Sola Scriptura*: The People Wrote the Law . . . . . . . . . . . . . . 18

      B. Any Attempt by Judges to Write Law is Void *Ab Initio* . . . . . . 23

      C. A Constitutional 'Murder Mystery'
            Starring Clarence Thomas . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.  If a Case or Controversy Can Be Adjudicated,
         It <u>Must</u> Be Adjudicated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

V.   Standing—In the Way . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF CASES AND OTHER AUTHORITIES

**CASE**                                                            **PAGE**

*Anderson v. Griswold,* No. 23CV32577
(Dist. Ct., City & Cnty. of Denver, Nov. 17, 2023) . . . . . . .    11

*Ashby v. White* [1703], 92 Eng. Rep. 126 (H.C.) . . . . . . . . . . . . . . . .    28

*Baker v. Carr,* 369 U.S. 186 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . .    29, 32

*Barron ex rel. Tiernan v. Mayor of Balt.,* 32 U.S. 243 (1833) . . . . . . .    10

*Brown v. Bd. of Educ. of Topeka,* 347 U.S. 483 (1954) . . . . . . . . . . . .    32

*City of Boerne v. Flores,* 521 U.S. 507 (1997) . . . . . . . . . . . . . . . . .    10

*Cohens v. Virginia,* 19 U.S. 264 (1821) . . . . . . . . . . . . . . . . . . . . . . .    various

*Conn. Nat'l Bank v. Germain,* 503 U.S. 249 (1992) . . . . . . . . . . . . .    10

*Cordova v. City of Albuquerque,* 816 F.3d 645 (10th Cir. 2016) . . . . .    25

*DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332 (2006) . . . . . . . . . . .    29

*Dobbs v. Jackson Women's Health Org.,* 597 U.S. 215 (2022) . . . .    13, 19, 25

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . .    22

*Fairfax's Devisee v. Hunter's Lessee,* 11 U.S. 603 (1813) . . . . . . . . .    17

*Gamble v. United States,* 587 U.S. 678 (2019) . . . . . . . . . . . . . . . . .    25-27

*Goldwater v. Carter,* 444 U.S. 996 (1979) . . . . . . . . . . . . . . . . . . . . .    29

*Jacobellis v. Ohio,* 378 U.S. 184 (1964) . . . . . . . . . . . . . . . . . . . . . . .    29

*Heiner v. Donnan,* 285 U.S. 312 (1932) . . . . . . . . . . . . . . . . . . . . . . .    22

*Hollander v. McCain,* No. 08-cv-99-JL (D.N.H. Aug. 8, 2008) . . . . .    14

*Korematsu v. United States,* 323 U.S. 214 (1944) . . . . . . . . . . . . . . .    32

**CASE**                                          **PAGE**

*Little v. Barreme*, 6 U.S. 170 (1804) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . 29

*Marbury v. Madison*, 5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . . various

*Minor v. Happersett*, 88 U.S. 162 (1874) . . . . . . . . . . . . . . . . . . . . . 21

*Nat. Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) . . . . . . . 24

*Nixon v. United States*, 506 U.S. 224 (1993) . . . . . . . . . . . . . . . . . . 28

*Norton v. Shelby Cnty.*, 118 U.S. 425 (1886) . . . . . . . . . . . . . . . . . . 9, 15, 31

*Obergefell v. Hodges*, 576 U.S. 644 (2015) . . . . . . . . . . . . . . . . . . . 24

*Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833 (1992) . . . . 26

*Poindexter v. Greenhow*, 114 U.S. 270 (1884) . . . . . . . . . . . . . . . . . 28

*Robinson v. Bowen*, No. 3:08-cv-03836-WHA
(N.D. Cal. Sept. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rucho v. Common Cause*, 588 U.S. 684 (2019) . . . . . . . . . . . . . . . . 29

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) . . . . . . . . . . . . 10

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) . . . . . . . 29

*Stump v. Sparkman*, 435 U.S. 349 (1978) . . . . . . . . . . . . . . . . . . . . 32

*Trump v. Anderson*, 601 U.S. 100 (2024) . . . . . . . . . . . . . . . . . . . . various

*Trump v. United States*, 603 U.S. 593 (2024) . . . . . . . . . . . . . . . . . 19

*United States v. Lee*, 106 U.S. 196 (1882) . . . . . . . . . . . . . . . . . . . . 20, 31

*United States v. Stanley (Civil Rights Cases)*, 109 U.S. 3 (1883) . . . 10

*United States v. Stanley*, 483 U.S. 669 (1987) . . . . . . . . . . . . . . . . . 32

| CASE | PAGE |
|---|---|
| *United States v. Texas*, 507 U.S. 529 (1993) . . . . . . . . . . . . . . . . . . . | 17 |
| *Vallely v. N. Fire & Marine Ins. Co.*, 254 U.S. 348 (1920) . . . . . . . . . | 22 |
| *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) . . . . . | 31 |

# STATUTES AND OTHER AUTHORITIES

**PAGE**

## STATUTES

3 U.S.C. § 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    31

28 U.S.C. § 453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

Declaration of Independence (U.S. 1776) . . . . . . . . . . . . . . . . . . . . . .    19

Judiciary Act of 1789, 1 Stat. 73 (1789) . . . . . . . . . . . . . . . . . . . . . .    17, 23

The Treason Act, 11 Hen. VII [1495], c. 1 . . . . . . . . . . . . . . . . . . . . .    16

U.S. Const. amend. XIV, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    various

U.S. Const. art. VI, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

## OTHER AUTHORITIES

Adams, John, *Novanglus No. 5*, Feb. 20, 1775 . . . . . . . . . . . . . . . . .    15

Andersen, Hans Christian, *The Emperor's New Clothes* (1837) . . . .    10

Bacon, Francis, *Essays* LVI (Of Judicature) (1620) . . . . . . . . . . . . .    20

Barrett, Amy C., *Precedent and Jurisprudential Disagreement*,
  91 Tex. L. Rev. 1711 (2012-13) . . . . . . . . . . . . . . . . . . . . . . . . . .    25

Berger, Raoul, *Impeachment of Judges and "Good Behavior"
  Tenure*, 79 Yale L.J. 1475 (1970) . . . . . . . . . . . . . . . . . . . . . . . . .    22

  *-- Standing to Sue in Public Actions: Is it a Constitutional
  Requirement?*, 78 Yale L.J. 816 (1969) . . . . . . . . . . . . . . . . . . . . .    16

Biographical Directory: Forty-First Congress . . . . . . . . . . . . . . . . . . .    12

Blackstone, William, Commentaries on the Laws
    of England 69 (1765) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19, 21

Bork, Robert H., Our Judicial Oligarchy,
    67 First Things 21 (Nov. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

Chin, Gabriel J., Why Senator John McCain Cannot Be President:
    Eleven Months and a Hundred Yards Short of Citizenship,
    107 Mich. L. Rev. First Impressions 1 (2008) . . . . . . . . . . . . . . . .    14

Coke, Edward, Institutes of the Lawes of England (1642) . . . . . . . . . .    21

Confirmation Hearing on the Nomination of John G. Roberts, Jr.
to Be Chief Justice of the United States: Hearing Before the
S. Comm. on the Judiciary, 109th Cong. 55-56 (2005) . . . . . . . . . . .    18

Confirmation Hearing on the Nomination of Samuel A. Alito, Jr.
    To Be an Associate Justice of the Supreme Court
    of the United States: Hearing Before the S. Comm.
    on the Judiciary, 109th Cong. 465 (2006) . . . . . . . . . . . . . . . . . . .    25

Elliot, Jonathan, *The Debates in the Several State Conventions* . . . . .    22

Geyh, Charles, *When Courts and Congress Collide*
    (U. Mich. Press 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

Gibbon, Charles, *The History of the Decline and Fall*
    *of the Roman Empire* (1776-89) . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

Kentucky Resolution (1798) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

Lincoln, Abraham, *Speech*
    (on the Kansas-Nebraska Act, Springfield, IL), Oct. 16, 1854 . . . .    20

Llewellyn, Karl, *The Bramble Bush* (1960) . . . . . . . . . . . . . . . . . . . . . .    21

Locke, John, Second Treatise of Government (1689) . . . . . . . . . . . . . .    15

MSNBC, MNBC Highlights – May 30 (YouTube video)
    (Jun. 1, 2025), https://www.youtube.com/watch?v=Acy-3xqtBvI . .    31

Orwell, George, New Adelphi, Vol. 15-16 (Jan. 1939) . . . . . . . . . . . .   18

Paine, Thomas, *Common Sense* (1776) . . . . . . . . . . . . . . . . . . . . . . . . .   16

Plutarch, *The Lives of the Noble Grecians and Romans* . . . . . . . . . . . .   18

Prakash, Saikrishna & Smith, Steven D., *How to Remove
    a Federal Judge,* 116 Yale L.J. 72 (2006) . . . . . . . . . . . . . . . . . . . . .   21

Rupar, Aaron (@atrupar.com), Tweet, *Bluesky* (Apr. 15, 2025) . . . . . .   33

Sachs, Stephen E., *Why John McCain Was a Citizen at Birth,*
    107 Mich. L. Rev. First Impressions 49 (2008) . . . . . . . . . . . . . . . . . .   14

Scalia, Antonin G., *Historical Anomalies in Administrative Law,*
    Y.B. Sup. Ct. Hist. Soc'y. 103 (1985) . . . . . . . . . . . . . . . . . . . . . . . .   19

Somin, Ilya, A Victory for Separation of Powers,
    *The Atlantic* (May 31, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

Story, Joseph, *Commentaries on the Constitution of
    the United States* (1838) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

Suetonius, *De Vita Caesarum* [The Lives of the Twelve Caesars] . . . .   14

The Federalist No. 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21-23

The Federalist No. 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Thomas, Clarence, A Conversation with Justice Clarence
    Thomas, 36-10 *Imprimis* (Oct. 2007) . . . . . . . . . . . . . . . . . . . . . . . . .   19, 30

Washington, George, *Farewell Address* (Sept. 19, 1796) . . . . . . . . . .   15

Van Alstyne, William, *A Critical Guide to Marbury v. Madison,*
    1969 Duke L.J. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

## INTEREST OF AMICUS

Amicus is Plaintiff in a matter styled *Doe v. Flores*, No. Case No. 25-cv-01042(JEB) (D.D.C. filed Apr. 2, 2025). The constitutionality of tariffs imposed by a man who is ineligible to be President as a matter of law is one of the matters at issue therein. As the first issue in any judicial determination is whether it has proper parties and jurisdiction, and a man who is not our President *de jure* cannot appear in an official capacity anywhere, *Norton v. Shelby County*, 118 U.S. 425, 443 (1886), judicial economy will be served by consideration of this submission.

A separate motion seeking permission to file this brief is enclosed.

Amicus is proceeding in that matter under a pseudonym; a motion to proceed has not been resolved at this writing. Especially in light of Judge Wilkerson's trenchant opinion in *Abrego-Garcia v. Noem*, No. 25-1404, slip op. at 5 (4th Cir. Apr. 17, 2025) and the experience of Ruby Freeman, *see Freeman v. Guiliani*, 1:21-cv-03354 (D.D.C.) (settled), Amicus is taking Voltaire's famous bromide seriously: *"Il est dangereux d'avoir raison dans des choses où des hommes accrédités ont tort."* Voltaire, *Le Siècle de Louis XIV*, ch. 28(1751).

Simply put, Amicus does not want his wife to end up like Daniel Anderl.

## SUMMARY OF THE ARGUMENT

Amicus writes to draw the Panel's attention to a foundational question that no one in this tsunami of litigation has addressed: How can one reason from the Constitution to "an oathbreaking adjudged insurrectionist who has not been absolved by Congress serve as President?" Amicus submits that this is logically impossible. In turn, that is dispositive of this matter, as the actions of a usurper to the national throne are void *ab initio*, *Norton v. Shelby County*, 118 U.S. 425, 443 (1886), and as he has no standing, he cannot act in an "official" capacity.

## ARGUMENT

This matter is resolved by resort to the bulletproof reasoning of Chief Justice Marshall, in the first case we all studied in law school:

> The constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.

> If the former part of the alternative be true, then a legislative act contrary to the constitution is not law: if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable.

*Marbury v. Madison,* 5 U.S. 137, 177 (1803).

Whether this was a tautology, an essential element of the *ratio decedendi,* or mere dictum, *see,* William W. Van Alstyne, *A Critical Guide to Marbury v. Madison,* 1969 Duke L.J. 1, 17 (1969), is beside the point. There is no support

in precedent or logic for the proposition that a constitutional provision must be activated by formal legislation to become effective. *E.g., United States v. Stanley (Civil Rights Cases),* 109 U.S. 3, 20 (1883) ("the Thirteenth amendment, as well as the Fourteenth, is undoubtedly self-executing without any ancillary legislation"), *City of Boerne v. Flores,* 521 U.S. 507, 524 (1997) (Fourteenth); *South Carolina v. Katzenbach,* 383 U.S. 301, 325 (1966) (Fifteenth); *cf., Barron ex rel. Tiernan v. Mayor of Baltimore,* 32 U.S. 243 (1833) (Bill of Rights originally not enforceable as against the States—by design). The unambiguous text of the foundational law *we the People* enacted controls. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) (per Thomas, J., collecting cases).

## I.  APPELLANT TRUMP CANNOT BE PRESIDENT AS A MATTER OF LAW.

> *"But he hasn't got anything on,"* a little child said.
> ~ Hans Christian Andersen[1]

We all recall the tale from our childhood. A vain and self-absorbed emperor was obsessed with fine clothing. Two swindlers, posing as weavers, convince him they can make a suit so exquisite, it is invisible only to those unfit for their position or foolish. The emperor, eager to display his sophistication, hires them.

---

[1] Hans Christian Andersen, The Emperor's New Clothes, in *Hans Christian Andersen's Complete Fairy Tales* 57 (Jean Hersholt trans., Canterbury Classics 2014) (1837).

The swindlers pretend to weave, and though no one—including the emperor, his court, and townspeople—can see the fabric, they all feign admiration, to avoid seeming incompetent or foolish.

But then, a child speaks truth to power.

Here, the 'two swindlers' in our real-life adaptation are Chief Justice Roberts and five of his colleagues. They wove a magnificent legal negligee in *Trump v. Anderson*, 601 U.S. 100 (2024), out of the constitutionally groundless claim that Congress must pass a law to effectuate Section 3 of the Fourteenth Amendment. Everyone with a law degree can see right through it, but no one has the child-like audacity to speak truth to power in a courtroom.

Appellant Donald John Trump had previously taken an oath as President "to support the Constitution of the United States," and was found by a competent court upon a trial on the merits via clear and convincing evidence that he had engaged in insurrection, as that term is used in Section 3 of the Fourteenth Amendment. *Anderson v. Griswold*, No. 23CV32577, ¶¶ 241, 298 (Dist. Ct., City & Cnty. of Denver, Nov. 17, 2023). Thus, as a matter of law and in accordance with established precedent, Trump cannot *currently* serve as our President unless and until Congress affirmatively removes that disability.

Why? **Because THE CONSTITUTION says so.**

This is proven conclusively by the saga of Col. Nelson Tift (D-GA), who was a public official before the War, and served as an officer in the Confederate Navy. He was elected to Congress and then, the Amendment was ratified. Rather than send him home, the Fortieth Congress enacted a private bill to allow him to serve out his term. But when he came back after getting re-elected by the good people of Georgia, the Forty-First Congress promptly sent both him and five of his colleagues home.[2]

The Tift saga is conclusive proof that the framers of the Amendment understood it to be self-executing. Otherwise, the Fortieth Congress wouldn't have needed to pass a private bill to let Tift in, and the Forty-First had no power to keep him out. As the Constitution is self-executing, *Marbury v. Madison,* 5 U.S. at 177, the only power Congress has with respect to potential officeholders barred from serving pursuant to Section 3 is the power to remove the disability. U.S. Const. amend. XIV, § 3.

---

[2] Upon the readmission of Georgia to representation, Tift was elected as a Democrat to the Fortieth Congress. The Fourteenth Amendment was ratified on July 9, 1868—presumably, while Tift was *en route*. But rather than remove Tift's disability, Congress passed a private bill **enabling him to serve out that Term—but no more.** "Congress enacted a private bill to remove the Section 3 disability of Nelson Tift of Georgia, who had recently been elected to represent the State in Congress. See ch. 393, 15 Stat. 427. Tift took his seat in Congress immediately thereafter. See Cong. Globe, 40th Cong., 2d Sess., 4499-4500 (1868)." *Trump v. Anderson,* 601 U.S. 100, ___, 144 S. Ct. 662, 669 & n.2. But Georgia sent six secessionists to the Forty-First Congress which the members refused to seat, including Nathan Tift. Biographical Directory: Forty-First Congress at 179 & fn. 11, https://www.govinfo.gov/content/pkg/GPO-CDOC-108hdoc222/pdf/GPO-CDOC-108hdoc222-3-41.pdf.

This is proven conclusively by the saga of Col. Nelson Tift (D-GA), who was a public official before the War, and served as an officer in the Confederate Navy. He was elected to Congress and then, the Amendment was ratified. Rather than send him home, the Fortieth Congress enacted a private bill to allow him to serve out his term. But when he came back after getting re-elected by the good people of Georgia, the Forty-First Congress promptly sent both him and five of his colleagues home.[2]

The Tift saga is conclusive proof that the framers of the Amendment understood it to be self-executing. Otherwise, the Fortieth Congress wouldn't have needed to pass a private bill to let Tift in, and the Forty-First had no power to keep him out. As the Constitution is self-executing, *Marbury v. Madison,* 5 U.S. at 177, the only power Congress has with respect to potential officeholders barred from serving pursuant to Section 3 is the power to remove the disability. U.S. Const. amend. XIV, § 3.

---

[2] Upon the readmission of Georgia to representation, Tift was elected as a Democrat to the Fortieth Congress. The Fourteenth Amendment was ratified on July 9, 1868—presumably, while Tift was *en route*. But rather than remove Tift's disability, Congress passed a private bill **enabling him to serve out that Term—but no more.** "Congress enacted a private bill to remove the Section 3 disability of Nelson Tift of Georgia, who had recently been elected to represent the State in Congress. See ch. 393, 15 Stat. 427. Tift took his seat in Congress immediately thereafter. See Cong. Globe, 40th Cong., 2d Sess., 4499-4500 (1868)." *Trump v. Anderson,* 601 U.S. 100, ___, 144 S. Ct. 662, 669 & n.2. But Georgia sent six secessionists to the Forty-First Congress which the members refused to seat, including Nathan Tift. Biographical Directory: Forty-First Congress at 179 & fn. 11, https://www.govinfo.gov/content/pkg/GPO-CDOC-108hdoc222/pdf/GPO-CDOC-108hdoc222-3-41.pdf.

As the only question of law properly before the Supreme Court in *Trump v. Anderson* was whether "the Colorado Supreme Court err[ed] in ordering President Trump excluded from the 2024 presidential primary ballot," *Trump v. Anderson*, No. 23–719, 601 U.S. 100 (2024), Pet. Br. at (i), the question of whether Trump could legally serve as President was never before the Court. Defendant Roberts ***knew* better. And he even *said* so**: "If it is not necessary to decide more to dispose of a case, then it is necessary not to decide more." *Dobbs v. Jackson Women's Health Organization,* 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in the judgment).

The Colorado Supreme Court was in error, for the reason foreshadowed in the precedent set by the saga of Colonel Tift. Like Tift, Appellant Trump was a public official, swearing an oath to uphold and defend the Constitution, prior to having been found as having engaged in insurrection. As all the elements of Fourteenth Amendment disqualification were met, Trump is disqualified from serving as a matter of law. But that disqualification could have been removed at any time via the same two-thirds vote of Congress that previously allowed Tift to serve. As there was nothing preventing Congress from doing this after Trump nominally became President-elect on January 6, 2025, there was no need to remove him from the Colorado ballot. The Supreme Court got this right, and to that extent, *Trump v. Anderson, supra.,* is binding precedent.

In a manner of speaking, we've attended this rodeo before. Back in 2008, there was a substantial question as to whether Republican candidate John McCain was a "natural-born citizen," and could be barred from serving on this ground. *Cf.,* Gabriel J. Chin, *Why Senator John McCain Cannot Be President: Eleven Months and a Hundred Yards Short of Citizenship,* 107 Mich. L. Rev. First Impressions 1 (2008); Stephen E. Sachs, *Why John McCain Was a Citizen at Birth,* 107 Mich. L. Rev. First Impressions 49 (2008). As he lost his bid to become President, we never had to answer the question of whether the remedy was "President Sarah Palin," but pre-election challenges to his eligibility were dismissed as premature and on standing grounds. *Robinson v. Bowen,* No. 3:08-cv-03836-WHA (N.D. Cal. Sept. 17, 2008); *Hollander v. McCain,* No. 08-cv-99-JL (D.N.H. Aug. 8, 2008) (neither party appealed). As it was a case or controversy within the competence of the courts, the matter could have and should have been decided at One First Street. Whether Senator McCain's status could have been changed by legislation is also an open question, but that is beside the point. Congress could have and should have addressed Trump's status when they had a chance. But sadly, they didn't. *Iacta alea est.*[3]

---

[3] Translated, "The die has been cast." Suetonius, *De Vita Caesarum* [The Lives of the Twelve Caesars], Bk. I, ¶ 32, at https://penelope.uchicago.edu/Thayer/L/Roman/Texts/Suetonius/12Caesars/Julius*.html.

## II. ONLY A LAWFULLY ELECTED PRESIDENT CAN WIELD THE ARTICLE II EXECUTIVE POWER.

The Constitution is our national catechism.  Thereunder, an oathbreaking adjudged insurrectionist not absolved by Congress literally cannot be our President *de jure*.  U.S. Const. amend. XIV, § 3.  And if Appellant Trump is not our President, all his actions—and, those of his agents—are void *ab initio*, as an act of a usurper is void:

> [W]hen the constitution or form of government remains unaltered and supreme, there can be no de facto department, or de facto office. The acts of the incumbents of such departments or office cannot be enforced conformably to the constitution, and can be regarded as valid only when the government is overturned.

*Norton v. Shelby County*, 118 U.S. at 443.

*Norton* is not just binding because it is precedent; it is binding because it is consonant with constitutional theory.  Specifically, it is consistent with America's unique concept of popular sovereignty, foreign to our British forebears. The Framers' views were consonant with that of Locke, who maintained that a usurper could never attain legitimate power. John Locke, *Second Treatise of Government* ch. XVIII (1689).  E.g., John Adams, *Novanglus* No. 5, Feb. 20, 1775; Thomas Jefferson, *Kentucky Resolution* (1798) (acts in excess of jurisdiction are void *ab initio*); George Washington, *Farewell Address* (Sept. 19, 1796) (the Constitution is the outer boundary of popular consent); *The Federalist* No. 84 (Hamilton) (same).  The stirring prose of Thomas Paine distills the

thought. "[I]n America **THE LAW IS KING**. For as in absolute governments the King is law, so in free countries the law ought to be King; and there ought to be no other." Thomas Paine, *Common Sense* (Philadelphia, R. Bell, 1776) (emphasis in original), reprinted in pt. III, ¶ 103 (Project Gutenberg, 1994). As long as we remain governed by the Constitution, either an occupant of an office has a legal right to discharge the duties of an office, or s/he does not. There is no third option.

This is in direct contrast to the experience in medieval England during the Wars of the Roses (1455-1487), where factions vied over the kingship. As it wasn't entirely clear who the actual King was, Parliament enacted *The Treason Act*, 11 Hen. VII [1495], c. 1 ("noe person going wth the Kinge to the Warres shalbe attaynt of treason"), creating the de facto officer doctrine. Translated from the Middle English, it forbade legal punishment of subjects who followed the orders of the *de facto* king, irrespective of whether he was legitimate or a usurper. **Importantly, it is NOT a common-law doctrine.**

Under the Framers' Constitution, any American citizen could have sauntered into any U.S. District Court on January 21, seeking a declaration that Appellant Trump could not serve as our President as a matter of law. Citizen standing in public interest cases was a given. Raoul Berger, *Standing to Sue in Public Actions: Is it a Constitutional Requirement?*, 78 Yale L.J. 816, 819 (1969) ("No

English court, so far as I can discover, has ever … denied that a writ of prohibition may be granted at the suit of a stranger."). The common law, with its array of remedies, was an integral part of our law. "The common law ... ought not to be deemed to be repealed, unless the language of a statute be clear and explicit for this purpose," *Fairfax's Devisee v. Hunter's Lessee*, 11 U.S. 603, 623 (1813); *accord, United States v. Texas*, 507 U.S. 529, 534 (1993) (quotations and citations omitted). All the common law writs were available.[4] A lawsuit could have been filed before the ink on the first Executive Order was dry, and the damage litigated in this case would have been averted. The practice is consistent with the Framers' design, the common law, and the concept of popular sovereignty. But then, our black-robed bishops rewrote our Gospel to suit their pleasure.

## III. SUPREME COURT JUSTICES HAVE NO LAWFUL AUTHORITY TO REWRITE THE CONSTITUTION.



---

[4] Judiciary Act of 1789, ch. 20, § 14, 1 Stat. 73, 81-82 (1789) (including "all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law").

To many, this was a confession in a criminal conspiracy. At level best, a litigant thanking a judge for issuing a ruling favoring him is unseemly, and degrades the institution. But thankfully, we need not indulge that debate here. We expect judges to be as above reproach as Caesar's wife.[5] Umpires, who dutifully call balls and strikes. *Confirmation Hearing on the Nomination of John G. Roberts, Jr. to Be Chief Justice of the United States: Hearing Before the S. Comm. on the Judiciary*, 109th Cong. 55-56 (2005) (statement of John G. Roberts, Jr., Nominee to Be Chief Justice of the United States).

This standard is not aspirational. This is a warranty, implicit in the nature of Article III and the judicial oath, 28 U.S.C. § 453, and a clear directive from the citizenry you work for.

## A.  Sola Scriptura: The People Wrote the Law

> *We have now sunk to a depth at which the restatement of the obvious is the first duty of intelligent men.*
>
> ~George Orwell[6]

While the Supreme Court has declared that insurrectionist Trump is eligible to ascend to the Presidency, *Trump v. Anderson, supra,* and enjoys an immunity from criminal prosecution that is breathtaking in scope, *Trump v. United States,*

---

[5] "I wished my wife to be not so much as suspected." Plutarch, *The Lives of the Noble Grecians and Romans* 674 (Arthur Hugh Clough ed., Project Gutenberg 2024) (1996), https://www.gutenberg.org/cache/epub/674/pg674-images.html#chap48.

[6] George Orwell, The Taming of Power (book review), *New Adelphi*, Vol. 15-16 (Jan. 1939) 205.

603 U.S. 593 (2024),[7] the Constitution does not and as such, they had no lawful authority to rule as they did. For if a "decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law, but that **it is *not* law**." 1 Wm. Blackstone, *Commentaries on the Laws of England* *70 (1765) (emphasis added). Or to distill the law to essentials,

### The Constitution is NOT what judges say it is; it is what THE CONSTITUTION says it is.

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." *U.S. Const. art. VI, cl. 2*. "Governments are instituted among men, deriving their just powers from the consent of the governed." *Declaration of Independence*, para. 2 (U.S. 1776). As Lincoln famously declared, "no man is good enough to govern another man, without the other's consent," Abraham Lincoln, Speech

---

[7] As Justice Thomas observes, "[w]e should always start, when we read the Constitution, by reading the Declaration [of Independence], because it gives us the reasons why the structure of the Constitution was designed the way it was." Clarence Thomas, A Conversation with Justice Clarence Thomas, 36-10 *Imprimis* (Oct. 2007). The Framers designed their Constitution to prevent unchecked executive power—a principle rooted in their experience under King George III, as chronicled in the Declaration.

Consistent with this aim, the Framers made it a point not to grant immunity from criminal prosecution to the President. No reference can be found in the Constitution, its penumbrae, or its emanations. *See* Antonin G. Scalia, *Historical Anomalies in Administrative Law*, Y.B. Sup. Ct. Hist. Soc'y. 103 (1985). Presidential immunity has no "grounding in constitutional text, history, or precedent." *Dobbs*, 597 U.S. at 280. But without any colorable support in or reference to the law—and in inexplicable disregard of their own public positions—six Justices decided *sua sponte* that Presidents ought to be above the law. Objectively inexplicable, particularly in light of *Anderson*.

(on the Kansas-Nebraska Act, Springfield, IL), Oct. 16, 1854, and the Framers' Constitution marks the outer limit of our consent.

Thereunder, "We the People of the United States" write our own laws, pursuant to the processes specified therein. We make the big calls, leaving the day-to-day process of lawmaking to our legislators. We hire a President to run this leviathan and judges, to resolve disputes. **And we expect our authorized agents to stay in their lanes.** The President can administer the law, but Congress controls the purse strings. The President has discretion in the discharge of his duties, but he is bound by the law, and must acquiesce to the decisions of our courts. "All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it." *United States v. Lee*, 106 U.S. 196, 220 (1882). And the system is designed to bind them.

For five centuries, it has been universally understood that the office of the judge "is *jus dicere*, and not *jus dare*; to interpret law, and not to make law, or give law." Francis Bacon, *Essays LVI* (Of Judicature) (1620). Mindful that "the discretion of the judge is the first engine of tyranny," 4 C. Gibbon, *The History of the Decline and Fall of the Roman Empire* 385 (1776-89) (Philips Samson, and Co. 1856), Alexander Hamilton argued that to "avoid an arbitrary discretion in the courts, it is indispensable that [judges] should be bound by strict rules and precedents, which serve to define and point out their duty in every

particular case before them." *The Federalist* No. 78, 470 (I. Kramnick ed. 1987) (Alexander Hamilton). Blackstone asserted that the judge's duty to follow precedent derived from the nature of the judicial power itself: a judge is "sworn to determine, not according to his own judgments, but according to the known laws." 1 Blackstone, *Commentaries* at 69. A century earlier, Coke observed that "[i]t is the function of a judge not to make, but to declare the law, according to the golden mete-wand of the law and not by the crooked cord of discretion." 1 E. Coke, *Institutes of the Lawes of England* 51 (1642).

Professor (Justice) Story adds that "A more alarming doctrine could not be promulgated by any American court, than that it was at liberty to disregard all former rules and decisions, and to decide for itself [what the law is], without reference to the settled course of antecedent principles." 1 J. Story, *Commentaries on the Constitution of the United States* 350 (1838). The judge was expected to be little more than an administrator, playing what Professor Llewellyn called "the game of matching cases." Karl Llewellyn, *The Bramble Bush* 49 (1960).

Under our system, the judicial power is "to decide what the law is, not to declare what it should be," *Minor v. Happersett*, 88 U.S. 162, 178 (1874), for as long as judges are at liberty to "substitute their own pleasure to the constitutional intentions of the legislature," *The Federalist* No. 78 at 440

(Alexander Hamilton)—or the people—it can no longer honestly be said that we are a nation governed by laws.

The rewriting of the Constitution under a false pretense of interpreting it is "a flagrant perversion of the judicial power." *Heiner v. Donnan*, 285 U.S. 312, 331 (1932). In the timeless words of Justice Holmes, it is 'an unconstitutional assumption of powers by courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). "Courts are constituted by authority and they can not go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities." *Vallely v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 353 (1920). **There is no contrary authority.**

Under the Framers' Constitution, the citizen was not an idle spectator. If a judge violated his condition of good behavior, the citizen could remove him pursuant to a writ of scire facias.[8] This was the Framers' approach to judicial

---

[8] *See generally,* Raoul Berger, *Impeachment of Judges and "Good Behavior" Tenure*, 79 Yale L.J. 1475 (1970); *Saikrishna Prakash & Steven D. Smith, How to Remove a Federal Judge*, 116 Yale L.J. 72, 88-128 (2006). This remedy has fallen into desuetude, but constitutional rights and remedies do not extinguish solely due to the passage of time.

The conventional view that Congress enforces "good behavior" through impeachment is misplaced. During the Chase impeachment debate, Senator Hemphill noted that to allow Congress to enforce good behavior tenure would constitute a de facto power of address and accordingly, that power could not lie with Congress. *5 Elliot's Debates* 444. This was reinforced in the 1913 investigation of Judge Emory Speer, where Congress concluded that judicial abuses (e.g., "despotism, tyranny") were not impeachable despite violating good

discipline—they didn't trust judges as far as they could throw them, but they didn't trust the legislature to lord their power over judges, as was the case in Britain. Alexander Hamilton opined that "the standard of good behavior for the continuance in office of the judicial magistracy, … [and] the best expedient which can be devised in any government, to secure a steady, upright, and impartial administration of the laws." *The Federalist* No. 78 at 437 (Alexander Hamilton).

The Framers' Constitution was the governmental equivalent of Luther's Ninety-Five Theses, which ultimately distill to "sola scriptura." Thereunder, We Citizens write the law, and You Judges interpret it. And if you fail in that charge, we can fire you.

## B.  Any Attempt by Judges to Write Law is Void Ab Initio.

> *The illegitimacy of the Court's departures from the Constitution is underscored by the fact that no Justice has ever attempted a justification of the practice. At most, opinions have offered, as if it solved something, the observation that the Court has never felt its power confined to the intended meaning of the Constitution. True enough, but a long habit of abuse of authority does not make the abuse legitimate. That is particularly so when the representative branches of government have no effective way of resisting the Court's depredations.*
>
> ~Judge Robert Bork[9]

---

behavior tenure. Charles Geyh, *When Courts and Congress Collide*, 160–61 (U. Mich. Press 2008). The oath of office, unchanged since 1791, Judiciary Act of 1789, 1 Stat. at 81, provides fair notice of judicial obligations, supporting citizen-driven remedies like scire facias.

[9] Robert H. Bork, Our Judicial Oligarchy, 67 *First Things* 21, 24 (Nov. 1996).

The question posed by the *Anderson* dictum is not one of whether it is persuasive, but if it is even permissible. And no less an expert than one John Glover Roberts, Jr. assures us that it is not. Writing for the Court, Roberts asserted that "Members of this Court are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments. Those decisions are entrusted to our Nation's elected leaders, who can be thrown out of office if the people disagree with them." *Nat. Fedn. of Indep. Business v. Sebelius*, 567 U.S. 519, 132 S.Ct. 2566, 2579 (2012).

To put it more pragmatically, the rule Defendant Roberts espouses is that his job is to interpret the Constitution we have, as opposed to the one he might prefer. There might be compelling arguments for settling the question of a candidate's eligibility at the outset of a campaign, or for uniform rules applying to all states. But those are lawmaking decisions, expressly entrusted to the people and the other branches of government, as a matter of constitutional Gospel. Infringing on their prerogative is way above an Article III judge's pay grade.

Every Justice in the *Anderson* majority—Roberts, Thomas, Alito, Gorsuch, Kavanaugh, Barrett—has publicly admitted that they can't change the Constitution to suit their pleasure. (**Roberts**: "Judges have power to say what the law is, not what it should be." *Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584,

2811 (2015) (Roberts, C.J., dissenting); **Thomas**: "Judicial power… is never exercised for the purpose of giving effect to the will of the Judge." *Gamble v. United States*, 587 U.S. 678, 139 S.Ct. 1960, 1982 (2019) (Thomas, J., concurring); **Alito**: "It is the job of a judge… to interpret the Constitution, not distort [it]," Confirmation Hearing on the Nomination of Samuel A. Alito, Jr. To Be an Associate Justice of the Supreme Court of the United States: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 465 (2006) (statement of Samuel A. Alito, Jr.); **Gorsuch**: "Ours is the job of interpreting the Constitution… according to its original public meaning," *Cordova v. City of Albuquerque*, 816 F.3d 645, 661 (10th Cir. 2016) (Gorsuch, J, concurring); **Kavanaugh**: "The Constitution does not grant [us] unilateral authority to rewrite" it, *Dobbs*, 597 U.S. 215, __, 142 S.Ct. 2228, 2306 (2022) (Kavanaugh, J. concurring); **Barrett**: "Partisan politics are not a good reason for deciding a case." Amy C. Barrett, Precedent and Jurisprudential Disagreement, 91 Tex. L. Rev. 1711, 1729 (2012-13)). **There is no contrary authority.**

### C.  A Constitutional 'Murder Mystery' Starring Clarence Thomas

*[N]o government official is "tempted" to place restraints upon his own freedom of action, which is why Lord Acton did not say "Power tends to purify." The Court's temptation is in the quite opposite and more natural direction—towards systematically eliminating checks upon its own power; and it succumbs.*

~Justice Antonin Scalia[10]

In three decades on the bench, Clarence Thomas has had a relative eternity to develop and refine his approach to jurisprudence; his soliloquy in *Gamble*, 139 S.Ct. at 1980-87 (2019) (Thomas, J., concurring) (citation omitted). is a master class in judicature.

Thomas provides the rule that this Court should follow when confronted by bloody juridical abortions like *Trump v. Anderson*: "When faced with a demonstrably erroneous precedent, my rule is simple: We should not follow it." *Gamble*, 587 U.S. 678, 139 S.Ct. at 1984. "This view of stare decisis follows directly from the Constitution's supremacy over other sources of law—**including our own precedents** ... [as it] necessarily limits 'the power of a court to give legal effect to prior judicial decisions' that articulate demonstrably erroneous interpretations of the Constitution because those prior decisions cannot take precedence over the Constitution itself." *Id.* at 1984-85 (citations omitted; emphasis added).

Thomas incisively laments that "the Court's typical formulation of the stare decisis standard does not comport with our judicial duty under Article III because it elevates demonstrably erroneous decisions—meaning decisions

---

[10] *Planned Parenthood of S.E. Pa. v. Casey,* 505 U.S. 833, 981 (1992) (Scalia, J., dissenting).

outside the realm of permissible interpretation—over the text of the Constitution and other duly enacted federal law." *Id.* "[W]e are not entitled to interpret the Constitution to align it with our personal sensibilities." *Id.* at 1980. "By applying demonstrably erroneous precedent instead of the relevant law's text...the Court exercises "force" and "will," two attributes the People did not give it." *Id.* at 1981 (citing *The Federalist* No. 78). "It is always "tempting for judges to confuse our own preferences with the requirements of the law.'" *Id.* (citation omitted). He goes on to observe:

> A proper understanding of stare decisis in our constitutional structure requires a proper understanding of the nature of the "judicial Power" vested in the federal courts. That "Power" is—as Chief Justice Marshall put it—the power "to say what the law is" in the context of a particular "case" or "controversy" before the court. Phrased differently, the "judicial Power" "is fundamentally the power to decide cases in accordance with law." It refers to the duty to exercise "judicial discretion" as distinct from "arbitrary discretion."

*Id.* at 1982 (citations omitted).

"Judicial discretion is not the power to "alter" the law; it is the duty to correctly "expound" it." *Id.* (citation omitted). As he observed, "there are right and wrong answers to legal questions," *Id.* at 1984 (citation omitted), and it is the task of the judge to ascertain and apply the right ones, because judicial opinions are not the supreme Law of the Land.  U.S. Const. art. VI, cl. 2.

The mystery is how a judge who has embraced the judicial philosophy of originalism with such clarity and force would murder it in such a high-profile case as *Trump v. Anderson.*

## IV: IF A CASE OR CONTROVERSY CAN BE ADJUDICATED, IT __MUST__ BE ADJUDICATED.

*Cohens v. Virginia,* 19 U.S. 264 (1821). It is the decision that made *Marbury v. Madison,* 5 U.S. 137 (1803), into binding precedent, thereby Americanizing *Ashby v. White* [1703] 92 Eng. Rep. 126, 136 (H.C.) (for every right, there must be a remedy):

> We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. ... We find no exception to this grant [of jurisdiction], and we cannot insert one.

*Cohens,* 19 U.S. at 404.

The Constitution is a stern mistress, brooking no infidelity. When a litigant has a right that can be vindicated, this Court owes a concomitant duty to provide a remedy, for "[t]o take away all remedy for the enforcement of a right is to take away the right itself." *Poindexter v. Greenhow,* 114 U.S. 270, 303 (1884). The "political question" doctrine, when scrupulously applied, is a principled application of *Cohens,* as some matters are constitutionally committed to the other branches. *E.g., Nixon v. United States,* 506 U.S. 224 (1993) (Senate has

sole power to try impeachments, and can write its own rules); *Goldwater v. Carter*, 444 U.S. 996 (1979) (per curiam) (foreign affairs are the exclusive province of the President); *cf., Baker v. Carr*, 369 U.S. 186 (1962) ("the mere fact that the suit seeks protection of a political right does not mean it presents a political question"). Judges committing "treason to the constitution"[11] occurs with distressing regularity, but that does not make it permissible.

## V. STANDING—IN THE WAY

Before a judicial panel can even reach the merits of a case under modern rules, it must first satisfy itself that the party bringing the claim has standing to be heard, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) (hypothetical jurisdiction violates Article III); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and as a matter of law and logic, a person who cannot serve as an elected official cannot sue in an official capacity. For the reasons presented above, neither

---

[11] *Cohens,* 19 U.S. at 404. The most comical and floridly partisan example of the Court's abnegation of its duty was in *Rucho v. Common Cause*, 588 U.S. 684 (2019). The central problem, lamented Roberts, was not determining whether a jurisdiction has engaged in partisan gerrymandering. It is "determining when political gerrymandering has gone too far." *Id.* at 685. That, of course, is reminiscent of the Court's struggles with how to define obscenity. There, the Court's "duty admits of no "substitute for facing up to the tough individual problems of constitutional judgment involved," *Jacobellis v. Ohio*, 378 U.S. 184, 188 (1964), wherein Justice Stewart famously remarked, "I know it when I see it." *Id.* at 197 (Stewart, J., concurring). *Rucho* was every bit as justiciable as *Jacobellis,* but in politically charged cases like this and *Anderson,* you can always count on a judge to "dance with the gurl that brung 'im." *Rucho* does not alter the *Cohens* rule, so much as it does expose judges who violate their oaths.

Appellant Trump nor his authorized agents can appeal the case below, and as the Executive Order at issue is void *ab initio*, all that is left for this Court to remand the matter with appropriate instructions, and for the United States to refund the monies improperly collected.

## CONCLUSION

> **Fortunately, the court ruled that Trump does not have the "unbounded authority" he claims "to impose unlimited tariffs on goods from nearly every country." The British overthrew King Charles I in part because he tried to impose "ship money" taxes without legislative authorization.**

The Universe has a sense of humor.

Justice Thomas observed that "[w]e should always start, when we read the Constitution, by reading the Declaration [of Independence], because it gives us the reasons why the structure of the Constitution was designed the way it was." Clarence Thomas, *Conversation, supra.*  Americans endured the capricious rule of King George III, whom historians describe as "the Mad King," for forty years. They consciously designed their government to ensure that no one man would wield unchecked power. And until recently, that foundation of liberty was affixed in granite.

Inadvertently, the normally precise Professor Somin's historical faux pas[12] betrays a point: Whereas the British were stuck with King George III for sixty years because their law said so, we are not stuck with our Mad King because our law says so. Bullets or briefs—*Amicus prefers briefs*—makes no difference; we had to use bullets in 1776, but our law does not countenance the rule of a usurper.

Amicus does not pretend that unraveling the legal train wreck our leaders left us will be easy. But there is no provision in the Constitution that ratifies lawless actions because undoing them will be hard. *Fiat iustitia, ruat cœlum!* Let justice be done, though the heavens fail. The law is pellucid: The acts of a usurper are void. *Norton, supra.* This is a justiciable question, which this Court is not at liberty to avoid. *Cohens, supra.*

The system is designed to handle this request. First, courts have been invalidating Executive Orders forever. *E.g., Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *United States v. Lee*, 106 U.S. 196 (1882); *Little v. Barreme*, 6 U.S. 170 (1804). Second, our government is designed to function despite upheaval; Speaker Mike Johnson would be President pursuant to 3 U.S.C. § 19, and day-to-day operations of the executive branch can easily be

---

[12] Ilya Somin, A Victory for Separation of Powers, *The Atlantic*, May 31, 2025 (paywall). The graphic was aired by MSNBC. MNBC Highlights – May 30 (YouTube video), MSNBC, Jun. 1, 2025, https://www.youtube.com/watch?v=Acy-3xqtBvI

delegated to subordinate officers not implicated in the usurpation. Tariffs can be refunded by simply writing checks.

Finally, it has been suggested that courts should not act when it otherwise has a duty to because it somehow might make America look bad. *Baker v. Carr*, 369 U.S. at 217. But truth be told, we've done a decent job of that even when judges have acted. E.g., James Stanley, a master sergeant stationed at Fort Knox, was secretly administered doses of LSD under an Army scheme to study its effects on humans, and denied a remedy. *United States v. Stanley*, 483 U.S. 669, 671 (1987). Linda Sparkman was secretly sterilized without her consent or semblance of medical necessity, pursuant to a judicial order issued in direct contravention of statutory law, and denied a remedy. *Stump v. Sparkman*, 435 U.S. 349 (1978). And then, there was the time we imprisoned 120,000 Japanese Americans in internment camps during World War II on the charge of bigotry. *Korematsu v. United States*, 323 U.S. 214 (1944). The specter of looking bad has never stopped our courts from doing the wrong thing. Still, courts can do the right thing when they try. *E.g., Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954).

If enduring national embarrassment is an actual factor in constitutional jurisprudence, Amicus submits that nothing will ever compare to the shame we will all feel when we lose our precious Republic to a coup because judges

feared that enforcing the Constitution might cause a little embarrassment. Senator Chris Murphy (D-CT) recently elaborated: "We can't be preparing for the 2026 election. It might not come. All of our focus right now has to be on protecting the democracy, about stopping the corruption." Aaron Rupar (@atrupar.com), Bluesky (Apr. 15, 2025, 08:21 EDT), https://bsky.app/profile/atrupar.com/post/3lqt6abivw42h.

The stakes have never been higher.

Respectfully submitted this 6th day of June, 2025,

_____/s/_____
(Signature under seal)

FORM 8B. Notice of Unrepresented Person Appearance

RECEIVED
October 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

JUN 1 0 2025

### NOTICE OF UNREPRESENTED PERSON APPEARANCE

United States Court of Appeals
For the Federal Circuit

**Case Number** 2025-1812

**Short Case Caption** V.O.S. Selections, Inc., v. Trump

---

**Instructions:** Refer to Federal Circuit Rule 47.3 for requirements governing appearance in this court. Unrepresented persons must immediately file an amended Form 8B if contact information changes. **A motion must be filed to change either the filing or service selection during the pendency of the case.**

Complete page 1 of this form and, if applicable, either page 2 or 3 corresponding to your filing and service selection. **Submit only one of pages 2 or 3; do not submit both.**

---

### ENTRY OF APPEARANCE

I am entering my appearance on my own behalf ("pro se") in the above case.

**Name:** John Doe (filing as an amicus only)

**Address:** [redacted]

**Phone:** [under seal]        **Email:** manncoulter.fox@gmail.com

### FILING AND SERVICE SELECTION

I will file all documents in the above case (select only one):

☐ in paper form by mail or in person, and I elect to receive all service by mail only.

☐ through the court's electronic filing system, and I have completed **page 2 (Consent to Electronic Filing and Service)**; I understand I will receive service by email only.

☒ in paper form by mail or in person, and I elect to receive all service by email at the above email address and have completed **page 3 (Consent to Paper Filing and Electronic Service)**.

---

I certify that all information is true and correct and that a failure to abide by the above selections may result in my case being delayed or other actions deemed necessary by the court.

Date: Jun. 6, 2025            Signature: [under seal]

Name: John Doe

Save for Filing

FORM 8B. Notice of Unrepresented Person Appearance

Form 8B (p. 3)
October 2023

## CONSENT TO PAPER FILING AND ELECTRONIC SERVICE

| **Instructions:** Please review and check each box verifying your agreement. You must check all boxes to receive service through this court's electronic filing system. If you are submitting this page, do not submit page 2 of this form. |
|---|

| ☑ | I consent to receive service in my case through email only, and I have regular access to my email account and the internet. I have an active PACER account. |
|---|---|
| ☑ | I understand that when I receive a filing notification email (Notice of Docket Activity), I will be able to view, save, and print publicly filed documents once without charge within 15 days but may then need to pay a fee. |
| ☑ | I understand that it is my responsibility to regularly monitor my email and docket to ensure I have not missed notifications. I am responsible for ensuring my email account is working and emails from FilingNotice@cafc.uscourts.gov are not treated as junk or spam messages. |
| ☑ | I will submit an amended Form 8B to notify the court of changes to my email address. I understand that failure to update my email address or monitor email may result in missed notifications and that the court is not responsible for these missed notifications. |
| ☑ | I understand that email service is valid service under Fed. R. App. P. 25 and Fed. Cir. R. 25, even if accomplished on an email address that is invalid due to a failure to timely update information or to verify my email account is functioning. |
| ☑ | I understand I will receive service electronically in this case and I must seek leave of the court to file electronically or revert to mail service. |
| ☑ | I understand I will receive service electronically in future cases where I am a party unless I file a new Form 8B modifying my service selection in that case. |
| ☑ | I understand that the Clerk's Office cannot provide me with technical assistance or support with using or viewing email. |

I certify that all information is true and correct and that failure to abide by the above selections may result in delays or adverse actions deemed necessary by the court.

Date: Jun. 6, 2025

Signature: [under seal]

Name: John Doe

FORM 19. Certificate of Compliance with Type-Volume Limitations                    **Form 19**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-1812

**Short Case Caption:** V.O.S. Selections, Inc., v. Trump

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑    the filing has been prepared using a proportionally-spaced typeface and includes 6114 words.

☐    the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐    the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: Jun. 6, 2025                    Signature:    [under seal]

                                      Name:    John Doe

Save for Filing

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2025-1812

**Short Case Caption** V.O.S. Selections, Inc. v. Trump

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  Jun. 6, 2025

by  ☑ U.S. Mail  ☐ Hand Delivery  ☐ Email  ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| See attached | See attached |
| | |
| | |
| | |
| | |

☑ Additional pages attached.

Date: Jun. 6, 2025

Signature: *(UNDER SEAL)*

Name:  John Doe

Save for Filing

## CERTIFICATE OF SERVICE -- ATTACHMENT

The following parties were served via United States Mail:

Brian Simmonds Marshall, Asst. AG
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

Syreeta A. Tyrell, Asst. AG
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004

Sarah H. Weiss, Sr. Asst. AG
1300 Broadway, #10
Denver, CO 80203

Michael K. Skold, Solicitor General
165 Capitol Ave
Hartford, CT 06106

Ian R. Liston, Deputy AG
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

Peter J. Farrell
Deputy Solicitor General
445 Minnesota Street, Suite 600
St. Paul, MN 55101

Heidi Parry Stern, Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119

James W. Grayson Chief Deputy AG
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508

Gretchen Helfrich
Deputy Chief, Special Litigation Bureau
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603

Vivian A. Mikhail, Deputy AG
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006

Rabia Muqaddam
Special Counsel for Federal Initiatives
28 Liberty St.
New York, NY 10005

Ryan P. Kane, Deputy Solicitor General
109 State Street
Montpelier, VT 05609

Sosun Bae, Senior Trial Counsel
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044

Jeffrey M. Schwab
Liberty Justice Center
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735

RECEIVED

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
### Case No. 2025-1812

JUN 10 2025

United States Court of Appeals
For the Federal Circuit

**V.O.S. SELECTIONS, INC., et al.,**

*Plaintiffs-Appellees,*

SIGNATURES

**v.**

**DONALD J. TRUMP, et al.**

*Defendants-Appellants*

**SIGNATURE**


femhrt
(norethindrone acetate/ethinyl estradiol tablets)
Please see full prescribing information enclosed.



# FILED UNDER SEAL

Doe is the Plaintiff in an ongoing lawsuit [*Doe v. Flores*, Case No. 25-cv-01042 (JEB), pending in District Court in the District of Columbia], challenging the constitutionality of these and other tariffs. Amicus is proceeding in that matter under a pseudonym; a motion to proceed has not been resolved at this writing.

This signature is intended to be serve as my signature on the following documents:

Motion for Leave to File Amicus Curiae Brief
Brief of John Doe as Amicus Curiae
Notice of Unrepresented Person Appearance
Certificate of Compliance with Type-Volume Limits
Certificate of Service

A redacted version of the Notice and related Certificates is submitted for public filing.

Respectfully submitted this 6th day of June,

K.L. Smith
23636 Genesee Village Rd
Golden, CO 80401
(720) 404-5383
manncoulter.fox@gmail.com



ow2recycle.info

PAPER POUCH

**PRESS FIRMLY TO SEAL**

**Retail**



UNITED STATES POSTAL SERVICE®

20439

RDC 07

U.S. POSTAGE PAID
PME
EVERGREEN, CO 80439
JUN 06, 2025

**$31.40**

S2324D501192-05

**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL EXPRESS®**

ER 138 848 505 US

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)    PHONE ( 720 704 5383

SMITH
23236 GENESEE VLG RD
GOLDEN, CO
80401-7044

**PAYMENT BY ACCOUNT (if applicable)**
Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**
☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)    PHONE 202 275 8000
US CT OF APP
FOR THE FEDERAL CIRCUIT
717 MADISON PL. NW #401
ZIP + 4® (U.S. ADDRESSES ONLY) WASH, DC
20 439 ___ - ___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code 80439 | Scheduled Delivery Date (MM/DD/YY) 6/7/25 | Postage $ 31.40 | |
| Date Accepted (MM/DD/YY) 6/6/25 | Scheduled Delivery Time ☐ 12:00 PM ☒ 6:00 PM | Insurance Fee $ | COD Fee $ |
| Time Accepted 3:54 ☐ AM ☒ PM | | Return Receipt Fee $ | Live Animal Transportation Fee $ |
| Special Handling/Fragile $ | Sunday/Holiday Premium Fee $ | Total Postage & Fees $ 31.40 | |
| Weight ☒ Flat Rate ___ lbs. ___ ozs. | Acceptance Employee Initials CM | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |