**Nos. 2025-1812, 2025-1813**

# United States Court of Appeals for the Federal Circuit

———————————

V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, DBA GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC,

*Plaintiffs-Appellees*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, PETE R. FLORES, ACTING COMMISSIONER FOR UNITED STATES CUSTOMS AND BORDER PROTECTION, IN HIS OFFICIAL CAPACITY AS ACTING COMMISSIONER OF THE UNITED STATES CUSTOMS AND BORDER PROTECTION, JAMIESON GREER, IN HIS OFFICIAL CAPACITY AS UNITED STATES TRADE REPRESENTATIVE, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, HOWARD LUTNICK, IN HIS OFFICIAL CAPACITY AS SECRETARY OF COMMERCE, UNITED STATES CUSTOMS AND BORDER PROTECTION,

*Defendants-Appellants*

———————————

2025-1812

———————————

Appeal from the United States Court of International Trade in No. 1:25-cv-00066-GSK-TMR-JAR, Judge Gary S. Katzmann, Judge Timothy M. Reif, and Senior Judge Jane A. Restani.

----------------------------------------------------

STATE OF OREGON, STATE OF ARIZONA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF VERMONT,

*Plaintiffs-Appellees*,

v.

PRESIDENT DONALD J. TRUMP, UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, KRISTI NOEM, SECRETARY OF HOMELAND
SECURITY, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE
DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS
AND BORDER PROTECTION, PETE R. FLORES, ACTING COMMISSIONER
FOR UNITED STATES CUSTOMS AND BORDER PROTECTION, IN HIS
OFFICIAL CAPACITY AS ACTING COMMISSIONER FOR U.S. CUSTOMS
AND BORDER PROTECTION, UNITED STATES,

*Defendants-Appellants*

———————————

2025-1813

———————————

Appeal from the United States Court of International Trade in No. 1:25-cv-00077-
GSK-TMR-JAR, Judge Gary S. Katzmann, Judge Timothy M. Reif, and Senior
Judge Jane A. Restani.

**BRIEF AMICUS CURIAE OF
THE AMERICA FIRST POLICY INSTITUTE
IN SUPPORT OF DEFENDANTS-APPELLANTS
AND IN SUPPORT OF REVERSAL**

JED RUBENFELD
127 Wall St.
New Haven CT 06515
203-432-7631
jed.rubenfeld@yale.edu
*Attorney of Record*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25-1812, 25-1813 |
| **Short Case Caption** | V.O.S. Selections, Inc. v. Trump |
| **Filing Party/Entity** | AMERICA FIRST POLICY INSTITUTE (AMICUS CURIAE) |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 06/24/2025                Signature:   /s/ Jed Rubenfeld

                               Name:      Jed Rubenfeld

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| AMERICA FIRST POLICY INSTITUTE | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable            ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☐   No    ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable            ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

Table of Authorities……………………………………………..    i

Statement of Interest of Amicus Curiae………………………………..    1

Preliminary Statement……………………………………………….    1

Argument……………………………………………………………    3

    I.     It Is Well Established That an Executive Order Can Be
    Sustained under a Statute the Order Did Not Cite……………………    3

    II.    Section 338 Authorizes the Tariffs at Issue in this Case……    8

        A.    Section 338 confers directly on the President a
    "comprehensive" tariff-setting power to respond to "any burden of
    disadvantage" other countries place on U.S. commerce……………    8

        B.    Under Section 338, the President was not required
    to publish or recite any factual findings in his Executive Orders…..    10

        C.    The challenged tariffs are authorized by Section 338…    13

           1. The worldwide and reciprocal tariffs are squarely
        covered by Section 338………………………………..    13

           2. The trafficking tariffs are also covered by Section
        338………………………………………………..    16

Conclusion…………………………………………………………….    17

Certificate of Compliance……………………………………………    18

Certificate of Service…………………………………………………    19

# TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Kahn*, 618 F.2d 784 (D.C. Cir. 1979) ....................................4

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) ...............................7

*Am. Federation of Gov't Emps., AFL-CIO v. Reagan*, 870 F.2d 723 (D.C. Cir. 1989) ........................................................................................................11

*Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of State*, 300 F. Supp. 3d 540 (S.D.N.Y. 2018) ........................................................................4

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) .......................................4

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ................13

*Florsheim Shoe Co. v. United States*, 744 F.2d 787 (Fed. Cir. 1984) .....................13

*Hartman v. Merit Systems Protection Bd.*, 77 F.3d 1378 (Fed. Cir. 1996) ..............7

*In re Colson*, 412 A.2d 1160 (D.C. App. 1979) .......................................7

*Johnson v. MSPB*, 128 Fed. Appx. 139 (Fed. Cir. 2005) ..............................7

*Learning Res., Inc. v. Trump*, No. 25-1248, 2025 U.S. Dist. LEXIS 103492 (D.D.C. May 29, 2025) ......................................................................6, 9

*Maple Leaf Fish Co. v. United States*, 762 F.2d 86 (Fed. Cir. 1985) .....................13

*Martin v. Mott*, 25 U.S. 19 (1827) .......................................................11

*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999) ..............5

*Philadelphia & T. Ry. v. Stimpson*, 39 U.S. (14 Pet.) 448 (1840) .........................13

*United Nat'l Foods, Inc. v. NLRB*, 66 F.4th 536 (5th Cir. 2023) ............................7

*United States v. Yoshida Int'l, Inc.*, 526 F.2d 560 (C.C.P.A. 1975) .........................5

*V.O.S. Selections, Inc. v. United States*, No. 25-00066, 2025 Ct. Intl. Trade LEXIS 67 (C.I.T. May 28, 2025) ......................................................................16

*Yoshida Int'l, Inc. v. United States*, 378 F. Supp. 1155 (Cust. Ct. 1974) ................6

**Statutes**

15 U.S.C. § 715c ...........................................................................12

19 U.S.C. § 1338 ................................................................ passim

19 U.S.C. § 1862 ...............................................................12

7 U.S.C. § 624 ..................................................................12

**Other Authorities**

11 Annual Report of the United States Tariff Commission (1926–1927) ................9

13 Annual Report of the United States Tariff Commission (1928–1929) ................9

15 Annual Report of the United States Tariff Commission (1930–1931) ...............11

25 Annual Report of the United States Tariff Commission (1940–1941) ...............11

6 Annual Report of the United States Tariff Commission (1921–1922) ..................9

CONGRESSIONAL RESEARCH SERVICE, Congressional and Presidential Authority to Impose Import Tariffs (Apr. 23, 2025) .................................................10

Executive Order 10925, 3 C.F.R. 448 (1959-63 Compilation) (Mar. 6, 1961) .........4

Executive Order 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9113 (Feb. 1, 2025) ........................16

Executive Order 14194, Imposing Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 9117 (Feb. 1, 2025) .............................................16

Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9121 (Feb. 1, 2025) .......16

Executive Order 14257, Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15041 (Apr. 2, 2025) ............................. 3, 14

*The Emancipation Proclamation*, Proclamation No. 17, 12 Stat. 1268 (Jan. 1, 1863) ...............................................................................................4

**BRIEF AMICUS CURIAE OF
THE AMERICA FIRST POLICY INSTITUTE
IN SUPPORT OF DEFENDANTS-APPELLANTS**

## Statement of Interest of Amicus Curiae

The America First Policy Institute is a non-profit, non-partisan research institute with a single mission: to put the American people first. Its guiding principles include liberty, free enterprise, national greatness, foreign-policy engagement in the American interest, and the primacy of American workers, families, and communities. AFPI has a profound interest in this case. The tariffs enjoined below are a pillar of the America-first policies of the current Administration, and Amicus has expressed in print its strong support for them. *See, e.g.*, AMERICAN FIRST POLICY INSTITUTE, *Rethinking Tariffs*, May 9, 2025, www.americafirstpolicy.com/issues/rethinking-tariffs-as-bold-tools-for-american-security-global-fairness.

Amicus respectfully submits this brief to fill a significant gap in the arguments made to this Court. As explained below, the tariffs at issue in this case are fully, expressly authorized by a federal statute that the court below did not consider.[1]

## Preliminary Statement

The stakes of this case are enormous. If allowed to stand, the ruling below

---

[1] No party or party's counsel authored this brief in whole or in part, and no person other than the amicus curiae, its members, or its counsel or contributed money intended to fund the preparing or submission of this brief.

1

threatens to eviscerate the foreign policy of the President of the United States and to deprive America of hundreds of billions of dollars in revenue.  Before the judiciary renders a decision so consequential, it is surely essential that all relevant law be fully considered.  That did not happen here.

In fact, the single most relevant federal statute was not considered at all.

The Court of International Trade enjoined the tariffs at issue in this case on the ground that those tariffs were not authorized by the International Emergency Economic Powers Act ("IEEPA").  But another statute not considered below, the Tariff Act of 1930, does authorize these tariffs—expressly.

Section 338 of the Tariff Act of 1930 confers directly on the President the power to impose tariffs on any country in any amount up to 50%, "whenever the President shall find as a fact that any foreign country places any burden or disadvantage" on United States commerce "directly or indirectly, by law or administrative regulation or practice, by or in respect to any customs, … charge, exaction, classification, regulation, condition, restriction, or prohibition." 19 U.S.C. § 1338(a), (d).   As will be shown below, President Trump's worldwide and reciprocal tariffs—enjoined by the court below—fit Section 338 of the Tariff Act of 1930 like a glove.

The reason the court below did not discuss the Tariff Act of 1930 is understandable: the President did not cite that statute in the pertinent Executive

2

Orders.  But it is well established that an Executive Order may be upheld under a statute not cited in the Order itself.  Because Section 338 of the Tariff Act of 1930 plainly authorizes the challenged tariffs, the judgment below must be reversed and the injunction vacated.

## **ARGUMENT**

In the Executive Orders relevant to this case, President Trump invoked "the authority vested in me as President by the Constitution and the laws of the United States of America, ***including*** the International Emergency Economic Powers Act."[2] Due to this non-exclusive reference to the IEEPA, this case has proceeded as if the IEEPA were the only relevant source of statutory authority for the challenged tariffs. But as will be shown below: (1) it is well established that an Executive Order can be sustained under a statute the Order itself did not cite; and (2) the tariffs at issue here are squarely and expressly authorized by Section 338 of the Tariff Act of 1930.

I.     **It is well established that an Executive Order can be sustained under a statute the Order did not cite.**

There is no requirement that an Executive Order cite any specific statutory authorization: many Executive Orders and Pr]oclamations,[3] including some of the

---

[2] *See, e.g.*, Executive Order 14257, Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15041, 15041 (Apr. 2, 2025) (emphasis added).

[3] There is no substantive legal difference between an Executive Order and a Proclamation. *See, e.g.*, *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't*

most important in American history, have not done so. *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281, 304-05 n.33 (1979)**Error! Bookmark not defined.** (discussing and interpreting Executive Order that "merely states that it is promulgated '[u]nder and by virtue of the authority vested in [the] President of the United States by the Constitution and statutes of the United States'"); *AFL-CIO v. Kahn*, 618 F.2d 784, 790-91 nn.32-33 (D.C. Cir. 1979) (discussing various executive orders citing no specific statutory authority); Executive Order 10925, 3 C.F.R. 448 (1959-63 Compilation) (Mar. 6, 1961) (Pres. John F. Kennedy) (prohibiting racial discrimination by federal agencies and contractors and establishing the predecessor of the EEOC) ("by virtue of the authority vested in me as President of the United States by the Constitution and statutes of the United States"); *The Emancipation Proclamation*, Proclamation No. 17, 12 Stat. 1268 (Jan. 1, 1863) (Pres. Abraham Lincoln) (citing no statutory authority).

For this reason, it is well established that courts ruling on the statutory authority supporting an Executive Order may examine statutes not cited in the Order itself. *See, e.g.*, *Chrysler Corp.*, 444 U.S. at 304-05 ("For purposes of this case, it is not necessary to decide whether Executive Order 11246 as amended [which cited no

---

*of State*, 300 F. Supp. 3d 540, 542 n.1 (S.D.N.Y. 2018) ("'the difference [between an Executive Order and a Proclamation] is typically one of form, not substance,' and 'the Supreme Court has held that there is no difference between the two in terms of legal effect'") (citation omitted).

specific statutory authorization] is authorized by the Federal Property and Administrative Services Act of 1949, Titles VI and VII of the Civil Rights Act of 1964, [or] the Equal Employment Opportunity Act of 1972.").  Courts may uphold Executive Orders under *any* statute that confers on the President the authority he has exercised.  *See id*. at 304-06 & nn.33-36 (discussing various lower court decisions upholding Executive Order at issue under various different statutes); *see also Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 189 (1999) ("Because the Removal Act did not authorize the 1850 [executive] order, we must look elsewhere for a constitutional or statutory authorization for the order.").

Accordingly, when an Executive Order cites as authority certain statutes later deemed inapplicable, courts may uphold the Order under a different statute not cited in the Order itself.  In the case most closely on point to this one, the Court of Customs and Patent Appeals—this Court's predecessor—did exactly that. *See United States v. Yoshida Int'l, Inc.*, 526 F.2d 560 (C.C.P.A. 1975).

*Yoshida* upheld tariffs imposed by President Richard Nixon's Executive Proclamation 4074 under the Trading With the Enemy Act of 1917 ("TWEA").  *See id*. at 584.  But Proclamation 4074 had *not* invoked TWEA.  As correctly stated just recently by District of Columbia District Judge Contreras,

> In issuing Proclamation 4074, President Nixon instead invoked the Tariff Act of 1930 and the Trade Expansion Act of 1962…. H.R. Rep. No. 95-459, at 5 (1977) ("[TWEA] was not among the statutes cited in the President's proclamation as authority for the surcharge."). TWEA was first cited "later by

5

the Government in response to a suit brought in Customs Court by Yoshida International"—i.e., in *Yoshida*. H.R. Rep. No. 95-459, at 5.

*Learning Res., Inc. v. Trump*, No. 25-1248, 2025 U.S. Dist. LEXIS 103492, at *32 n.10 (D.D.C. May 29, 2025) (citations omitted).

In *Yoshida*, the lower court (then known as the Customs Court) first ruled that the two statutes expressly invoked by Proclamation 4074 did not authorize the tariffs at issue.  *Yoshida Int'l, Inc. v. United States*, 378 F. Supp. 1155, 1168 (Cust. Ct. 1974). The Customs Court then held that it was not barred from considering TWEA merely because the Proclamation had failed to cite that statute:

> With respect to defendant's contention that the Trading with the Enemy Act (50 U.S.C. App.) serves as further authority for the validity of Presidential Proclamation 4074, the plaintiff submits that no consideration should be given thereto inasmuch as the Proclamation does not specifically refer to this Act as a part of its statutory authority.
> To sustain the plaintiff's contention would be to place an unwarranted limitation upon judicial review….

*Yoshida*, 378 F. Supp. at 1168.

Although the Customs Court found that TWEA did not authorize the Nixon tariffs, the Court of Customs and Patent Appeals reversed, upholding the contested tariffs under TWEA even though the Proclamation had failed to cite that statute. *Yoshida*, 526 F.2d at 584.  *Yoshida* is of course binding precedent here. Thus the fact that the Executive Orders in this case do not cite the Tariff Act of 1930 in no way prevents this Court from upholding those Orders thereunder.

Similarly, the fact that the Government's briefs have not (to date) argued the applicability of Section 338 is no bar to this Court's consideration thereof. On the contrary, a court is "duty-bound" to decide the law correctly even if the governing law is found in a statute not cited in the parties' briefs. *United Natural Foods, Inc. v. NLRB*, 66 F.4th 536, 556 (5th Cir. 2023) (Oldham, J., dissenting) ("We're not 1L moot court judges who're artificially bound by the eight corners of the parties' two briefs. Does anyone think that, when a party presents legal question X for decision in federal court, a federal judge is somehow disabled from reading any case, statute, regulation, or other authority not cited in the party's brief? Of course not. We are duty-bound to understand the legal questions presented to us."), *majority opinion vacated*, 144 S. Ct. 2708 (2024); *see also, e.g.*, *Allen v. State Bd. of Elections*, 393 U.S. 544, 554 (1969) ("this Court may, in the interests of judicial economy, determine the applicability of the provisions of [a statute], even though some specific sections were not argued below"); *Johnson v. MSPB*, 128 Fed. Appx. 139, 141 (Fed. Cir. 2005) ("Petitioner has not cited *and we have not found* any statute that [supports] her position") (emphasis added); *Hartman v. Merit Systems Protection Bd.*, 77 F.3d 1378, 1379 n.3 (Fed. Cir. 1996) (same); *In re Colson*, 412 A.2d 1160, 1184 (D.C. App. 1979) (en banc) (concurring opinion) (noting and defending majority's deciding of case under statute "called … to the court's attention" by amicus).

II.    **Section 338 Authorizes the Tariffs at Issue in this Case.**

    **A.    Section 338 confers directly on the President a "comprehensive" tariff-setting power to respond to "any burden of disadvantage" other countries place on U.S. commerce.**

Section 338 of the Tariff Act of 1930 directly confers on the President the power to impose tariffs on any country in any amount up to 50%, when "the President shall find as a fact that any foreign country places any burden or disadvantage" on United States commerce "directly or indirectly, by law or administrative regulation or practice, by or in respect to any customs, tonnage, or port duty, fee, charge, exaction, classification, regulation, condition, restriction, or prohibition." 19 U.S.C. § 1338(a), (d).  No prior investigation or action by any agency is required; no specific procedure is required.  Rather, the President may simply "by Proclamation" set and impose offsetting tariffs at his discretion on "any foreign country" he finds to be placing any such "burden or disadvantage on United States commerce."  19 U.S.C. § 1338(a), (d).

Legislative history confirms that Section 338 was intended to grant the President a "comprehensive" tariff-setting authority to respond to all forms of discrimination against U.S. commerce.  Section 338 was a recodification of—its text substantially identical to—Section 317 of the Tariff Act of 1922, which, as the United States Tariff Commission stated decades ago, dealt with discrimination

against U.S. commerce "in a comprehensive manner,"[4] "cover[ing] discriminations of all varieties," whether the cause of disadvantage to U.S. commerce lay in "customs duties or other charges, or in classifications, prohibitions, restrictions, or regulations of any kind."[5] Congress delegated this power to the President to ensure that American tariffs could be adjusted rapidly and frequently (which is difficult if not impossible for Congress itself to do) in response to changing circumstances.[6]

Section 338 authorizes two kinds of tariffs. Section 338(a)(1) allows the President to impose tariffs "whenever he shall find" that a country imposes duties or any other "limitation" on U.S. commerce not imposed on all other nations. 19 U.S.C. § 1338(a)(1). Section 338(a)(2) allows the President to impose tariffs "whenever he shall find" that countries are using tariffs or any other "regulation, condition, [or] restriction" to "place the commerce of the United States at a disadvantage" vis-à-vis its own or any other nation's commerce. 19 U.S.C. § 1338(a)(2). *See Learning Res., Inc.*, 2025 U.S. Dist. LEXIS 103492, at *25 ("Section 338 of the Tariff Act of 1930 grants the President the authority to 'declare new or additional duties' of up to 50

---

[4] 11 Annual Report of the United States Tariff Commission, at 2 (1926–1927).

[5] 13 Annual Report of the United States Tariff Commission, at 46 (1928–1929).

[6] Section 317 of the Tariff Act of 1922 was enacted after then-President Harding sent a message to Congress warning that "[a] rate may be just to-day and entirely out of proportion six months from to-day. If our tariffs are to be made equitable and not necessarily burden our imports and hinder our trade abroad, frequent adjustment will be necessary for years to come." 6 Annual Report of the United States Tariff Commission, at 1–2 (1921–1922) (quoting president's message to Congress of December 6, 1921).

percent on imports from countries that have imposed 'unreasonable' charges, exactions, regulations, or limitations that are 'not equally enforced upon the like articles of every foreign country,' or that have '[d]iscriminate[d] in fact against the commerce of the United States.'"). While rarely invoked, Section 338 of the Tariff Act of 1930 has never been repealed and is undoubtedly "currently in effect."[7]

### B.    Under Section 338, the President was not required to publish or recite any factual findings in his Executive Orders.

While Section 338 requires the President to "find as a fact" that other countries are imposing "burdens" or "disadvantages" on U.S. commerce, it does *not* require him to proclaim those findings, to recite them in his Executive Order, to publish them in any way, or to disclose the basis thereof.  This omission is no accident or oversight. On the contrary, to protect the confidentiality of the President's foreign policy decisionmaking, Section 338 investigations into other countries' discrimination against U.S. commerce have historically been "conducted under cover of secrecy."[8] As the U.S. Tariff Commission reported, "[h]earings are neither

---

[7] CONGRESSIONAL RESEARCH SERVICE, Congressional and Presidential Authority to Impose Import Tariffs (Apr. 23, 2025), https://www.congress.gov/crs-product/ R48435. *See also, e.g.*, *Learning Res., Inc.*, 2025 U.S. Dist. LEXIS 103492, at *25 (describing Section 338's currently operative grant of tariff-setting power to the President).

[8] 19 C.F.R. § 201.1 (1961).

required nor contemplated by section 338," [9] and fact-finding under that provision is not "ma[d]e public."[10]

Where (as here) a statute requires the President to make certain findings as a precondition for taking action, but the statute does not expressly oblige the President to make those findings public, the President is *not* required to "aver the facts" that trigger his authority or to include his findings in his Executive Order. *See, e.g.*, *Martin v. Mott*, 25 U.S. 19, 33 (1827) (rejecting claim that "it is necessary to aver the facts which bring the exercise [of power] within the purview of the statute"); *American Federation of Gov't Emps., AFL-CIO v. Reagan*, 870 F.2d 723 (D.C. Cir. 1989) (same).

In *American Federation*, the D.C. Circuit expressly rejected a claim that an Executive Order was "legally ineffective because it *does not show facially and affirmatively that the President made the determinations upon which exercise of the power is conditioned*." 870 F.2d at 724 (emphasis added). The district court in that case had so held, but the Circuit Court reversed. *Id*. at 725. In language directly applicable here, the D.C. Circuit stated, "The Act does not itself require or even suggest that any finding be reproduced in the order." *Id.* at 728. Accordingly, the

---

[9] 15 Annual Report of the United States Tariff Commission, at 111 (1930–1931).
[10] 25 Annual Report of the United States Tariff Commission, at 43 (1940–1941).

President was not required to recite or "insert" in his Executive Order the factual findings that triggered his authority:

> Section 7103(b)(1) makes clear that the President may [take specified actions] whenever he "determines" that the conditions statutorily specified exist. ***That section does not expressly call upon the President to insert written findings into an … order, or indeed to utilize any particular format for … an order. The District Court, by mandating a presidential demonstration of compliance with the section, engrafted just such a demand onto the statute***.

*Id.* at 727 (emphasis added).

By contrast to Section 338, many statutes whose operation depends on presidential findings do expressly require the President to proclaim those findings and/or explain them to Congress. *See, e.g.*, 7 U.S.C. § 624(d) (authorizing President to take certain actions "whenever he finds *and proclaims*" specified facts) (emphasis added); 15 U.S.C. § 715c ("[w]henever the President finds [certain facts], he *shall by proclamation declare such facts*") (emphasis added); 19 U.S.C. § 1862(c)(2) (requiring President to submit to Congress "a written statement of the reasons why the President has decided to take action").

Section 338 contains no such requirements. Thus under the Supreme Court's decision in *Martin v. Mott*, and consistent with the D.C. Circuit's decision in *American Foundation*, Section 338 does not require the President to "aver" or include in his Executive Orders the findings that serve as the precondition for

12

exercising power.[11] *See also Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985) (where President statutorily authorized to impose tariffs upon finding certain facts, "[t]he President's findings of fact and the motivations for his action are not subject to review") (quoting *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 795 (Fed. Cir. 1984)).

### C.    The challenged tariffs are authorized by Section 338.

Section 338 fits the challenged tariffs like a glove.  All were adopted to counter what the President determined to be significant burdens, disadvantages, and discriminations imposed on U.S. commerce by other countries' tariffs and non-tariff restrictions.  Although, as just shown, the President was not required to include in his Executive Orders any findings of burden, disadvantage, and discrimination against U.S. commerce, he did in fact do so.

> 1. *The worldwide and reciprocal tariffs are squarely covered by Section 338.*

On April 2, 2025, the President issued Executive Order 14257, announcing a 10 percent tariff on "all imports from all trading partners," and additional

---

[11] *See also, e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (upholding executive action made without formal findings where statute authorized executive action only on certain conditions); *Philadelphia & T. Ry. v. Stimpson*, 39 U.S. (14 Pet.) 448, 458 (1840) (where statute required certain conditions to be met before corrected patent could issue, patent signed by President was valid despite absence of recitals so indicating on face of patent).

"reciprocal" tariffs for 57 countries ranging from 11 percent to 50 percent.[12] These worldwide and reciprocal tariffs are squarely covered by Section 338.

Executive Order 14257 expressly declares that tariffs are necessary because "disparate tariff rates and non-tariff barriers" imposed by the affected countries "make it harder for U.S. manufacturers to sell their products in foreign markets," "while artificially increasing the competitiveness of their goods in global markets."[13] Moreover, the Order discusses in detail WTO data for countries around the world showing much higher tariffs being imposed against U.S. goods than the U.S. charges against foreign goods. In addition, the Order further cites the "2025 National Trade Estimate Report on Foreign Trade Barriers," which (as the Order correctly states) "details a great number of non-tariff barriers to U.S. exports around the world on a trading-partner by trading-partner basis."[14]

Executive Order 14257 thus incorporates by reference the findings set forth in the WTO's detailed tariff data and in the NTE's almost 400-page country-by-country description of non-tariff barriers to U.S. commerce. At the same time, with respect to European nations—E.U. member states and Great Britain do not impose tariffs on one another's goods, while imposing substantial tariffs on non-E.U.

---

[12] Executive Order 14257, Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15041, 15045 (Apr. 2, 2025).
[13] *Id*. at 15042.
[14] *Id*. at 15042-43.

nations—President Trump has stated, ""The European Union, which was formed for the primary purpose of taking advantage of the United States on TRADE, has been very difficult to deal with. Their powerful trade barriers, VAT taxes, ridiculous corporate penalties, non-monetary trade barriers, monetary manipulations, unfair and unjustified lawsuits against Americans companies, and more, have led to a trade deficit with the U.S. of more than $250,000,000."[15]

Accordingly, the worldwide and reciprocal tariffs announced in Executive Order 14257 are based on cited-to findings of exactly the kind specified by Section 338 of the Tariff Act of 1930—findings that the affected countries are imposing "burdens" and "disadvantages" on U.S. commerce through discriminatory tariff and non-tariff restrictions, regulations, and practices.

While the President briefly imposed on China tariffs higher than 50% (in excess of the duties permitted by Section 338), those higher tariffs are not currently in effect, and the worldwide, reciprocal tariffs are all within the Section 338 limit. In addition, while Section 338 refers to a 30-day period between proclamation and collection of tariffs, *see* 19 U.S.C. § 1338(d), all of President Trump's worldwide country-specific reciprocal tariffs (except those on China) were paused for at least

---

[15] *Trump Agrees to Extend Deadline After Threatening E.U. With 50% Tariff, With Talks Set to 'Begin Rapidly'*, Time, May 25, 2025, https://time.com/7288483/ trump-european-union-tariff-threat-trade-war-concerns.

30 days. *See V.O.S. Selections, Inc. v. United States*, No. 25-00066, 2025 Ct. Intl. Trade LEXIS 67, at *18 (C.I.T. May 28, 2025).

2. *The trafficking tariffs are also covered by Section 338.*

On February 1, 2025, President Trump issued three Executive Orders announcing tariffs on goods from (respectively) Canada, Mexico, and China, in response to those countries' practices enabling and assisting the trafficking of illegal narcotics into the United States.[16] Currently these "trafficking tariffs" (enjoined by the court below) are set at 25 percent for most Mexican and Canadian products and 20 percent for Chinese products. *V.O.S. Selections*, 2025 Ct. Intl. Trade LEXIS 67, at *17.

All three Executive Orders explain that tariffs are needed because the cross-border drug traffic at issue, enabled or promoted by the countries in question, is causing rampant death in the U.S. population and "putting a severe strain on [America's] healthcare system." Needless to say, drug-caused deaths and severe strain on the healthcare system impose serious burdens on U.S. commerce. As stated above, Section 338 empowers the President to impose tariffs not only in response to

---

[16] Executive Order 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9113, 9114 (Feb. 1, 2025) (Canada); Executive Order 14194, Imposing Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 9117, 9118 (Feb. 1, 2025) (Mexico); Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9121, 9122 (Feb. 1, 2025).

another country's customs duties, but also when the President determines "that any foreign country places any burden … on United States commerce" "directly *or indirectly*, by law or administrative regulation *or practice*, by or *in respect to any … prohibition*." 19 U.S.C. § 1338(a), (d) (emphasis added). Because the trafficking tariffs target countries the President has found to be "indirectly" causing a "burden" on U.S. commerce as a result of "practice[s]" relating to America's "prohibition" of certain narcotics, those tariffs also fall within the ambit of Section 338.

## Conclusion

For the foregoing reasons, the judgment below should be reversed, and the injunction vacated.

Dated: June 24, 2025

Respectfully submitted,

_____ *-s-*
Jed Rubenfeld
Yale Law School
127 Wall St.
New Haven CT 06511
203-432-7631
jed.rubenfeld@yale.edu
*Attorney of Record*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>25-1812, 25-1813</u>

**Short Case Caption:** <u>V.O.S. Selections, Inc. v. Trump</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑     the filing has been prepared using a proportionally-spaced typeface and includes <u>4,044</u> words.

☐     the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐     the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>06/24/2025</u>

Signature: <u>/s/ Jed Rubenfeld</u>

Name: <u>Jed Rubenfeld</u>