# United States Court of Appeals for the Federal Circuit

---

V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, dba Genova Pipe, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC,

*Plaintiffs-Appellees,*

$-$ v. $-$

DONALD J. TRUMP, in his official capacity as President of the United States, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, PETE R. FLORES, Acting Commissioner for United States Customs and Border Protection, in his official capacity as Acting Commissioner of the United States Customs and Border Protection,

*(For Continuation of Caption See Next Page)*

---

*Appeals from the United States Court of International Trade in Nos. 1:25-cv-00066-GSK-TMR-JAR, 1:25-cv-00077-GSK-TMR-JAR, Senior Judge Jane A. Restani, Judge Gary S. Katzmann, Judge Timothy M. Reif.*

---

## CRUTCHFIELD AMICUS CURIAE BRIEF SUPPORTING PLAINTIFFS-APPELLEES AND AFFIRMANCE

PETER J. BRANN
DAVID SWETNAM-BURLAND
BRANN & ISAACSON
113 Lisbon St.
P.O. Box 3070
Lewiston, ME  04243-3070
207.786.3566
pbrann@brannlaw.com
dsb@brannlaw.com

*Attorneys for Amicus Curiae Crutchfield Corporation*

JAMIESON GREER, in his official capacity as United States Trade Representative, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, HOWARD LUTNICK, in his official capacity as Secretary of Commerce, UNITED STATES CUSTOMS AND BORDER PROTECTION,

*Defendants-Appellants.*

STATE OF OREGON, STATE OF ARIZONA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF VERMONT,

*Plaintiffs-Appellees,*

– v. –

PRESIDENT DONALD J. TRUMP, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, Secretary of Homeland Security, in her official capacity as Secretary of the Department of Homeland Security, UNITED STATES CUSTOMS AND BORDER PROTECTION, PETE R. FLORES, Acting Commissioner for United States Customs and Border Protection, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection, UNITED STATES,

*Defendants-Appellants.*

## Certificate of Interest

Pursuant to Fed. Cir. R. 47.4, Crutchfield certifies:

1.      *The full name of every entity represented in the case by the counsel filing the certificate*: Crutchfield Corporation. *See* Fed. Cir. R. 47.4(a)(1).

2.      *For each entity, the name of every real party in interest, if that entity is not the real party in interest*: None. *See* Fed. Cir. R. 47.4(a)(2).

3.      *For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock*: None.  *See* Fed. Cir. R. 47.4(a)(3).

4.      *The names of all law firms, partners, and associates that have not entered an appearance in the appeal and appeared for the entity in the lower tribunal or are expected to appear for the entity in this court*: None. *See* Fed. Cir. R. 47.4(a)(4).

5.      *Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal*: None. *See* Fed. Cir. R. 47.4(a)(5).

6.    *All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases*: None applicable. *See* Fed. Cir. R. 47.4(a)(6).

I certify that the foregoing information is accurate and complete to the best of my knowledge.

Dated: June 26, 2025                    /s/ Peter J. Brann
                                        Peter J. Brann

# Table of Contents

Certificate of Interest. ...................................................................................i

Table of Contents ........................................................................................ iii

Table of Authorities ....................................................................................iv

Preliminary Statement and Summary of Argument....................................1

*Amicus Curiae* Interest....................................................................................1

Argument......................................................................................................5

    The Plain Language of the IEEPA Does Not Grant the President
    Unprecedented, Unilateral, and Unreviewable Authority to Set or Change
    Tariffs, Which Would Violate the Major Questions Doctrine and the Non-
    Delegation Doctrine....................................................................................5

Conclusion .................................................................................................14

Certificate of Service ................................................................................15

Certificate of Compliance .........................................................................16

# Table of Authorities

## Cases

*Ala. Assn. of Realtors v. DHHS*, 594 U.S. 758 (2021) ......................................8–10

*Biden v. Nebraska*, 600 U.S. 477 (2023) ...................................................10

*Bostock v. Comstock Cty., Georgia*, 590 U.S. 644 (2020) ......................................9

*Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142 (2012)...........................7

*Dept. of Transportation v. Assoc. of Am. Railroads*, 575 U.S. 43 (2015)........ 12–13

*Feliciano v. Dep't of Transportation*, 145 S. Ct. 1284 (2025) .............................8–9

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)......................10

*Gundy v. United States*, 588 U.S. 128 (2019)................................................. 11–13

*J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394 (1928) ..........................12

*Learning Resources, Inc. v. Trump*, 2025 WL 1525376 (D.D.C. May 29, 2025)
    (appeal pending, D.C. Cir., No. 25-5202)..................................................6

*Mistretta v. United States,* 488 U.S. 361 (1989)......................................................11

*Stanley v. City of Sanford, Florida*, 2025 WL 1716138 (U.S. June 20, 2025)..........8

*United States v. Yoshida Int'l, Inc.,* 526 F.2d 560 (C.C.P.A. 1975)........................8

*Utility Air Reg. Grp. v. EPA*, 573 U.S. 302 (2014) ..................................... 6, 10–11

*Wayman v. Southard*, 23 U.S. (10 Wheat.) 1 (1825)...............................................12

*West Virginia v. EPA*, 597 U.S. 697 (2022) ................................................ 8, 10–11

*Whitman v. Am. Trucking Assoc.*, 531 U.S. 457 (2001) ......................................8, 12

## Statutes

Cal. Civ. Code § 1770(a)(29)........................................................................4

50 U.S.C. § 1701–1710.................................................................................1

iv

50 U.S.C. § 1701(a) ...............................................................................13

50 U.S.C. § 1702 ......................................................................... 7–8, 13

50 U.S.C. § 1702(a)(1)(B) ................................................................7, 13

50 U.S.C. §§ 4301–4341 ..........................................................................8

**Constitutional Provisions**

U.S. Const. Art. I...................................................................................11

U.S. Const. Art. I, § 8, cl. 1...................................................................12

U.S. Const. Art. II, § 1 ..........................................................................11

**Other Authorities**

Laura Doan, *Trump Says His Tariffs Could Bring in Trillions in Revenue.*
   *Economists Disagree*, CBS News (Apr. 4, 2025).....................................7

Nicholas Molinari, *Spirit of the Holiday: American Business at the Heart of the*
   *Holidays*, U.S. Chamber of Commerce (Dec. 29, 2024) .........................4

National Retail Federation, *Winter Holiday FAQs* (Dec. 2024)...............................4

Statista, *Higher Tariffs Here to Stay Despite Trade War De-Escalation,*
   (May 2025) ........................................................................................3

## Preliminary Statement and Summary of Argument

*Amicus Curiae* Crutchfield Corporation submits this brief in support of Plaintiffs-Appellees and affirmance of the judgment below. The unprecedented assertion that the International Emergency Economic Powers Act of 1977 (IEEPA), 50 U.S.C. §§ 1701–1710, grants the President unilateral and unreviewable authority to impose, increase, decrease, suspend, or alter tariffs on virtually every country in the world cannot be reconciled with the plain language of the IEEPA and the U.S. Constitution. Even if this reading survived a straightforward textual analysis, which it does not, that interpretation would violate the major questions doctrine and the non-delegation doctrine. Crutchfield wants to avoid the economic harm not only of the tariffs, but also of the chaos and uncertainty resulting from wild gyrations in the tariffs premised on chimerical emergencies.

## *Amicus Curiae* Interest[*]

Crutchfield is a family-owned and operated business that has been selling electronics to American consumers for over 50 years from its home in Virginia. Started in the family's basement, Crutchfield originally sold its products through its

---

[*] No party or party's counsel assisted in the drafting this brief or contributed money toward preparing or submitting this brief. No one other than *amicus curiae* or its counsel contributed money toward preparing or submitting this brief. This Court previously granted permission for all interested persons to file *amici* briefs on the merits.

catalogs and by telephone, and now also sells its wide range of consumer electronics products through the internet in all 50 states.

Crutchfield obtains its products from different suppliers and vendors, almost all of which are overseas. For many products, the *only* available suppliers and vendors, at least in 2025, are overseas. Thus, tariffs imposed today, and the threat of additional tariffs imposed tomorrow, matter.

Obviously, announced tariffs of 145% for products coming from China (which supplies nearly 60% of Crutchfield's products), and announced tariffs of 50% for the European Union (EU), 25% for Mexico and Canada, as well as many other countries that supply products to Crutchfield, are potentially crippling.

Pauses to announced tariffs of uncertain length and the threat of additional tariffs of unknown size likewise paralyzes Crutchfield's ability to make rational business decisions. Although many of the highest announced tariffs are currently paused, they hang like the proverbial sword of Damocles over every retailer that imports any product, or component part, from anywhere in the world. Furthermore, Crutchfield cannot engage in sensible business planning if tariffs can be increased, decreased, suspended, or altered on a moment's notice without any recourse (in Defendants' view) to challenge them. This chart on the changing China tariffs illustrates the whirlwind Crutchfield faces:



Statista, *Higher Tariffs Here to Stay Despite Trade War De-Escalation* (May 2025), available at https://www.statista.com/chart/34447/additional-tariffs-by-the-us-on-china-and-vice-versa-2025/.

This turmoil is particularly devastating to American retailers. The holiday season can be make-or-break. Studies suggest consumers spent approximately $1

trillion on holiday sales in 2024. *See* Nicholas Molinari, *Spirit of the Holiday: American Business at the Heart of the Holidays*, U.S. Chamber of Commerce (Dec. 29, 2024), available at https://www.uschamber.com/economy/spirit-of-the-season-american-businesses-at-the-heart-of-the-holidays. Additionally, holiday sales account for a disproportionate amount of retailers' sales and profits. *See* National Retail Federation, *Winter Holiday FAQs* (Dec. 2024) ("Overall, holiday sales in November and December have averaged about 19% of total retail sales over the last five years, but the figure can be higher for some retailers. In addition, holiday sales can be more profitable because the increased volume of purchases comes without significantly increasing retailers' fixed costs of doing business."), available at https://nrf.com/research-insights/holiday-data-and-trends/winter-holidays/winter-holiday-faqs.

Just as Irving Berlin wrote *White Christmas* in the summer, to prepare for the holiday season, Crutchfield must make critical business decisions many months in advance. For example, to send its catalogs in time for the holidays, it must determine what products to sell and finalize for the printers the catalog copy with fixed prices long before the snow flies. Customers expect, and regulators require, that prices advertised in the catalog are accurate. *See, e.g.,* Cal. Civ. Code § 1770(a)(29).

For its online products, Crutchfield must make go-no go business decisions long before it hopes to sell those products. Due to the extensive lead times to source,

manufacture, and ship products from overseas, decisions on how many products to order must be made months in advance. Conversely, faced with possible crippling tariffs, decisions to cancel or scale back purchase orders from overseas vendors for future orders must be made long before retailers know if their worst fears are realized.

Crutchfield has a direct interest not only in the ultimate merits of the issues on appeal—does the IEEPA grant the President the unprecedented, unilateral, and unreviewable authority to set tariffs, and if so, is such authority constitutional—but also in the threat stemming from such claimed power. If tariffs can be imposed, increased, decreased, suspended or altered, not through the deliberate legislative process in which both chambers of Congress must agree and the President must sign the legislation, but instead through the changing whim of a single person, then Crutchfield cannot plan for the short term, let alone the long run, because it cannot possibly predict what the household electronics it sells will cost. This uncertainty stems from Defendants' assertion of authority it claims to have discovered in a statute dating from the Carter administration. Crutchfield seeks a reset to the *status quo* that existed from the IEEPA's enactment in 1977 until early 2025 to prevent unpredictable and unexpected changes to the tariff rates unmoored from any express executive authority conferred by Congress. That is, Crutchfield asks this Court to quell the chaos, not add to it.

# Argument

**The Plain Language of the IEEPA Does Not Grant the President Unprecedented, Unilateral, and Unreviewable Authority to Set or Change Tariffs, Which Would Violate the Major Questions Doctrine and the Non-Delegation Doctrine.**

We do not presume to improve upon the lengthy, careful, analysis of the court below that demonstrates beyond peradventure the IEEPA did not grant the President authority to set tariffs. *See* Appx1-49; *see also Learning Resources, Inc. v. Trump*, 2025 WL 1525376 (D.D.C. May 29, 2025) (appeal pending, D.C. Cir., No. 25-5202) (similar). Rather, we argue that it is a simple straight line from the plain language of the IEEPA and the Constitution to the conclusion that the IEEPA did not *and* could not delegate such authority to the President.

**Plain Language.** Defendants do not and cannot dispute that no other President has claimed since the IEEPA was enacted in 1977 that it conferred authority on the President to set tariffs. "When an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy, we typically greet its announcement with a measure of skepticism." *Utility Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (plurality opinion) (citation omitted).

Yet, Defendants contend that under this newly-discovered power, the IEEPA "clearly" authorizes these tariffs, *see* Appellants' Brief 24, 32, 54, and these worldwide tariffs will "raise over $1 trillion in the next year or so, helping to reduce

6

the national debt and even potentially offset some income taxes." Laura Doan, *Trump Says His Tariffs Could Bring in Trillions in Revenue. Economists Disagree*, CBS News (Apr. 4, 2025) ("'You're going to see billions of dollars, even trillions of dollars coming into our country very soon in the form of tariffs,' the President said last week."), available at https://www.cbsnews.com/news/factcheck-trump-tariffs-revenue/. The Court should be skeptical that this trillion-dollar power to affect the world economy lay hidden in a 1977 statute for nearly 50 years.

In describing the President's authority, the IEEPA does not mention "tariffs" or any of its usual synonyms, such as tax, levy, imposition, impost, excise, or duty. *See* 50 U.S.C. § 1702. Instead, Defendants pluck the words "regulate" and "importation" from a laundry list of administrative powers to argue that this language "clearly" gives the President the right to impose tariffs:

> [I]nvestigate, block during the pendency of an investigation, *regulate*, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, *importation* or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, *any property in which any foreign country or a national thereof* has any interest by any person, or with respect to *any property, subject to the jurisdiction of the United States*[.]

50 U.S.C. § 1702(a)(1)(B) (emphasis added to show language quoted by Defendants); *see* Appellants' Brief 32. Because language in a statute is known by the company it keeps, *see Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163 n.19 (2012), the fact that none of the rest of this statute suggests any taxing

7

power reinforces the conclusion that this statute did not delegate tariff authority to the President. *Cf. Ala. Assn. of Realtors v. DHHS*, 594 U.S. 758, 764–65 (2021) (*per curiam*) (statute that doesn't mention evictions is a "wafer-thin reed" to convey "unprecedented," "expansive authority" to the CDC to halt evictions for millions of people); *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) ("Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle devices.'") (cleaned up) (quoting *Whitman v. Am. Trucking Assoc.*, 531 U.S. 457, 468 (2001)); *Whitman*, 531 U.S. at 468 (Congress does not "hide elephants in mouseholes") (citation omitted).

Defendants do not claim, nor could they, that the plain language of Section 1702 granted the President the previously-overlooked power to impose trillions of dollars in tariffs. Rather, Defendants take a long and winding road in which a predecessor court interpreting a different statute 50 years ago under different circumstances and under different Supreme Court precedent concluded that President Nixon had authority to impose temporary tariffs under the Trading With the Enemy Act (TWEA), 50 U.S.C. §§ 4301–4341. *See United States v. Yoshida Int'l, Inc.*, 526 F.2d 560 (C.C.P.A. 1975). As the Supreme Court recently reminded, when interpreting statutes, "we do not usually pick a conceivable-but-convoluted interpretation over the ordinary one." *Stanley v. City of Sanford, Florida*, 2025 WL 1716138, *5 (U.S. June 20, 2025) (citations omitted); *see also Feliciano v. Dep't of*

*Transportation*, 145 S. Ct. 1284, 1291 (2025) ("those whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages") (citations omitted). Even if the predecessor court faithfully applied the Supreme Court's statutory interpretation tools in 1975 to interpret the TWEA, those results cannot be teleported by this Court in 2025 to interpret the IEEPA.

Because "[l]egislative history, for those who take it into account, is meant to clear up ambiguity, not create it[,]" *Bostock v. Comstock Cty., Georgia*, 590 U.S. 644, 674 (2020) (quotation omitted), Defendants' interpretation of the IEEPA using a different statute is unavailing. Even Defendants concede that the TWEA was "modified" by the IEEPA, *see* Appellants' Brief 10, and the court below more accurately described that modification—the IEEPA was enacted in part to *cabin* the authority asserted by President Nixon to set tariffs. Appx8, Appx28-31. The suggestion that the IEEPA secretly expanded the President's peacetime tariff power cannot be squared with either the plain language or the legislative history of the IEEPA.

Similarly, Defendants' argument that tariffs and the threat of tariffs allegedly give the President great "leverage" is unavailing. *See* Appellants' Brief 4, 23, 27, 56–57. "[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Assn. of Realtors*, 594 U.S. at 766 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 585–586 (1952), and describing *Youngstown*

9

as "concluding that even the Government's belief that its action 'was necessary to avert a national catastrophe' could not overcome a lack of congressional authorization").

**Major Questions Doctrine.** Defendants' claim that the IEEPA granted the President unlimited and unreviewable authority to impose any tariff on any country at any time runs into the brick wall of the major questions doctrine. "Even if the text were ambiguous, the sheer scope of the [President's] claimed authority under [the IEEPA] would counsel against the Government's interpretation." *Ala. Assn. of Realtors*, 594 U.S. at 724 (brackets added). In asserting boundless tariff power over all foreign trade, "[t]here is no serious dispute that the [President] claims the authority to exercise control over 'a significant portion of the American economy.'" *Biden v. Nebraska*, 600 U.S. 477, 503 (2023) (brackets added) (quoting *Utility Air*, 573 U.S. at 324; *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)).

With great power comes great responsibility. "We expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Ala. Assn. of Realtors*, 594 U.S. at 724 (cleaned up) (quoting *Utility Air*, 573 U.S. at 324; *Brown & Williamson*, 529 U.S. at 160). In these circumstances, "both separation of powers principles and a practical understanding of legislative intent make us 'reluctant to read into ambiguous statutory text' the

delegation claimed to be lurking there." *West Virginia*, 597 U.S. at 723 (quoting *Utility Air*, 573 U.S. at 324). The President "instead must point to 'clear congressional authorization' for the power [he] claims." *West Virginia*, 597 U.S. at 723 (brackets added) (quoting *Utility Air*, 573 U.S. at 324). Suffice it to say, connecting the words "regulate" and "importation" with an ellipsis that erases 16 intervening words of the statute does not add up to "clear congressional authorization" for the President to impose a "tariff."

**Non-Delegation Doctrine.** Even if the ambiguous language of the IEEPA can be elastically expanded to authorize the imposition of tariffs, Defendants' argument runs aground on another shoal, namely, the non-delegation doctrine. "The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 588 U.S. 128, 132 (2019) (plurality opinion). "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States,* 488 U.S. 361, 371 (1989).

As every civics student knows, "[a]ll *legislative* Powers herein granted shall be vested in a Congress of the United States," U.S. Const. Art. I (emphasis added), while "[t]he *executive* Power shall be vested in a President of the United States of America," U.S. Const. Art. II, § 1 (emphasis added). Additionally, the Constitution expressly grants to Congress, not the President, the power to raise money and impose

11

taxes and tariffs: "The Congress shall have Power To *lay and collect Taxes, Duties, Imposts and Excises*, to pay the Debts and provide for the common Defence and general Welfare of the United States[.]" U.S. Const. Art. I, § 8, cl. 1 (emphasis added).

"Accompanying that assignment of [legislative] power to Congress is a bar on its further delegation." *Gundy*, 588 U.S. at 135 (brackets added). "Congress, this Court explained early on, may not transfer to another branch 'powers which are strictly and exclusively legislative.'" *Id.* (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42–43 (1825) (Marshall, C.J.)); *see also Dept. of Transportation v. Assoc. of Am. Railroads*, 575 U.S. 43, 61 (2015) (Alito, J., concurring) (Congress "cannot delegate its exclusively legislative authority at all.") (citation omitted); *id.* at 68 (Thomas, J., concurring in the judgment) ("When the Government is called upon to perform a function that requires an exercise of legislative, executive, or judicial power, only the vested recipient of that power can perform it.").

Because the text of the Constitution "permits no delegation" of Congress' legislative powers, "*Congress* must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *Whitman*, 531 U.S. at 473 (emphasis and brackets in original) (quoting *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 409 (1928)).

Given that standard, a nondelegation inquiry always begins (and often almost ends) with statutory interpretation. The constitutional question

12

is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion. So the answer requires construing the challenged statute to figure out what task it delegates and what instructions it provides.

*Gundy*, 588 U.S. at 135–36.

In contrast to the Court's late nineteenth and early twentieth century tariff cases in which Congress set the legislative policy and the President made factual determinations to adjust the tariffs that were subject to judicial review so there was no delegation of legislative power, *see Dept. of Transportation*, 575 U.S. at 77–82 (Thomas, J., concurring in the judgment), the IEEPA does not provide *any* "intelligible principle" to guide anyone in imposing, increasing, decreasing, suspending, or altering tariffs of any amount for any length of time on any country.

The statutory language relied upon by Defendants—"regulate" and "importation"—provides no discernible standard on anything to do with tariffs. *See* 50 U.S.C. § 1702(a)(1)(B). The multiple twists this year in the tariff rates underscore the conclusion that Section 1702 is standardless. If we open the aperture to include the preconditions necessary to invoke the IEEPA, *see* 50 U.S.C. § 1701(a), the "unusual and extraordinary threat" relied upon to impose the tariffs are trade deficits that have existed for generations.

In short, the IEEPA did not *and* could not delegate unprecedented, unlimited, and unreviewable authority to the President to set worldwide tariffs.

13

## Conclusion

*Amicus Curiae* Crutchfield respectfully requests that the judgment below be affirmed.

Dated: June 26, 2025                   Respectfully submitted,

<u>/s/ Peter J. Brann</u>
Peter J. Brann
David Swetnam-Burland
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME  04243-3070
207.786.3566
pbrann@brannlaw.com
dsb@brannlaw.com

*Attorneys for Amicus Curiae*
*Crutchfield Corporation*

14

**Certificate of Service**

On June 26, 2025, I served the foregoing document on all counsel of record through the Court's CM/ECF system.

Dated: June 26, 2025                    /s/ Peter J.  Brann
                                        Peter J. Brann

## Certificate of Compliance

Under Fed. R. App. P. 29(b), counsel for the undersigned *Amicus Curiae* certify that this brief complies with the type–volume limitation for motions under Fed. R. App. P. 27(d)(2). Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2), the brief contains 2873 words.

The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), I have relied on the word count feature of this word processing system in preparing this certificate.

I certify that the foregoing information is accurate and complete to the best of my knowledge.

Dated: June 26, 2025                         /s/ Peter J.  Brann
                                             Peter J. Brann