Nos. 2025-1812, 2025-1813

_____

# In the United States Court of Appeals for the Federal Circuit

_____

V.O.S. SELECTIONS, INC., ET AL.,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, ET AL.,

*Defendants-Appellants.*

_____

STATE OF OREGON, ET AL.,

*Plaintiffs-Appellees,*

v.

PRESIDENT DONALD J. TRUMP, ET AL.,

*Defendants-Appellants.*

_____

On Appeal from the United States Court of International Trade in Nos. 1:25-cv-00066-GSK-TMR-JAR and 1:25-cv-00077-GSK-TMR-JAR (Judge Gary S. Katzmann, Judge Timothy M. Reif, and Senior Judge Jane A. Restani)

_____

**BRIEF OF AMICUS CURIAE BURLAP & BARREL, INC.**

*Filed In Support of Plaintiffs-Appellees and Affirmance*

_____

Yaman Salahi
yaman@salahilaw.com
Salahi PC
505 Montgomery St., 11th Fl.
San Francisco, California 94111
Tel: 415.236.2352
*Counsel for Burlap & Barrel, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---:|:---|
| **Case Number** | 25-1812, 25-1813 |
| **Short Case Caption** | V.O.S. Selections, Inc. v. Trump |
| **Filing Party/Entity** | Amicus Curiae Burlap & Barrel, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: July 8, 2025

Signature: /s/ Yaman Salahi

Name: Yaman Salahi

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Burlap & Barrel, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☐   No   ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iv

AUTHORITY TO FILE ........................................................................ 1

IDENTITY AND INTEREST OF *AMICUS CURIAE* ......................... 1

INTRODUCTION ................................................................................ 2

ARGUMENT ....................................................................................... 4

    A. Many Goods Cannot Be Produced Domestically .............................. 4

    B. American Small Businesses Like Burlap & Barrel Will Suffer
        Irreparable Harm Absent An Injunction ......................... 7

    C. The Court May Affirm Relief to Parties and Non-Parties Alike
        Through Class Certification ................................... 11

CONCLUSION ................................................................................. 15

CERTIFICATE OF COMPLIANCE ................................................. 16

CERTIFICATE OF SERVICE .......................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Banner v. United States*,
  238 F.3d 1348 (Fed. Cir. 2001) ............................................................ 15

*Trump v. CASA, Inc.*,
  606 U.S. ----, 2025 WL 1773631 (U.S. June 27, 2025) ............... 4, 13, 14

*V.O.S. Selections, Inc., et al., v. United States, et al.*,
  772 F. Supp. 3d 1350 (C.I.T. 2025) ...................................................... 12

## OTHER AUTHORITIES

Executive Order 14193,
  titled "Imposing Duties To Address the Flow of Illicit Drugs Across
  Our Northern Border," 90 Fed. Reg. 9113 (Feb. 1, 2025) ..................... 8

Executive Order 14195,
  titled "Imposing Duties To Address the Synthetic Opioid Supply
  Chain in the People's Republic of China," 90 Fed. Reg 9121 (Feb. 1,
  2025) .................................................................................................... 8

Executive Order 14228,
  90 Fed. Reg. 11463 (Mar. 3, 2025)......................................................... 8

Executive Order 14257,
  titled "Regulating Imports with a Reciprocal Tariff to Rectify Trade
  Practices that Contribute to Large and Persistent Annual United
  States Goods Trade Deficits," 90 Fed. Reg. 15041 (Apr. 2, 2025)......... 8

Executive Order 14266,
  90 Fed. Reg. 15625 (Apr. 9, 2025) ......................................................... 9

Executive Order 19194,
  titled "Imposing Duties To Address the Situation at Our Southern
  Border," 90 Fed. Reg. 9117 (Feb. 1, 2025) ............................................ 8

## RULES

Fed. R. Civ. P. 23 ....................................................................................... 14

USCIT R. 23.................................................................................... 14, 15

**AUTHORITY TO FILE**

The Court's June 13, 2025 order provides that "[a]ny amicus briefs may be filed without consent and without leave of court."

**IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]**

*Amicus* Burlap and Barrel, Inc. ("Burlap & Barrel") is a New York-based Public Benefit Corporation focused on building new international spice supply chains that are equitable, transparent, and traceable. Since 2016, Burlap & Barrel has sourced unique spices and other ingredients that are grown naturally and sustainably using traditional techniques, bringing those flavors to dinner tables around the country. As Burlap & Barrel's Co-Founder and Co-CEO Ori Zohar has recently stated, "We bring in spices from countries where they are grown in particular ways, using heirloom varieties. We cannot just buy these spices here in the United States. Many are not grown here at all."[2]

---

[1] No party or party's counsel authored this brief in whole or in part, and no person other than amici curiae, their members, or their counsel contributed money intended to fund preparing or submitting this brief.

[2] Elizabeth Segran, *Trump's tariffs are about to ruin dinner. Here's how one small spice seller is preparing*, Fast Company (Apr. 4, 2025), https://www.fastcompany.com/91310971/trump-tariffs-burlap-barrel-spice-business.

1

Burlap & Barrel has a concrete interest in this dispute, as the challenged tariff orders threaten to severely harm if not destroy its business if not enjoined.

## INTRODUCTION

Beginning in February 2025, President Donald J. Trump issued several executive orders imposing tariffs on products imported into the United States from around the world. Virtually every product imported by Burlap & Barrel has been or will be affected by the tariffs. Contrary to assertions made in some quarters, these tariffs are not paid by foreign countries or foreign producers. They are paid by importers, *i.e.*, American businesses like Burlap & Barrel.

As a result of the tariffs, Burlap & Barrel is now paying at least 10% more on imported products, and may soon pay up to 46% more in additional tariffs to bring delectable experiences to households and restaurants around the United States. Unlike many other businesses who have passed that cost on to consumers or demanded price reductions from suppliers, Burlap & Barrel is covering the costs of the tariffs itself internally—for now. But that comes with downsides. Because of these new costs, Burlap & Barrel had to pause spending on innovation and R&D, including developing new products and creating new partnerships with other brands, restaurants, and celebrity chefs, as well as other special projects. This decision impacts the company's growth as well as the American economy. Moreover, the tariffs also

2

threaten to irreparably fracture Burlap & Barrel's business relationships with foreign vendors if they lead to reduced ordering or other downstream effects.

Burlap & Barrel supports affirmance of the Court of International Trade's order enjoining the tariffs, and submits this brief to address three discrete issues.

*First*, Burlap & Barrel explains that, in many cases, Americans have no viable alternative to international trade to procure certain goods. Spices are a quintessential example. American soil and climate factors do not support the growth of a domestic market for most spices.

*Second*, Burlap & Barrel explains the severe harm it and other American small businesses, and American consumers, will face from the tariffs if they are not enjoined.

*Third*, Burlap & Barrel addresses the scope of the Court of International Trade's injunction in light of *Trump v. CASA, Inc.*, 606 U.S. ----, 2025 WL 1773631 (U.S. June 27, 2025). Burlap & Barrel submits that the injunction can be upheld on the basis that complete relief is not possible with a narrower injunction. Alternatively, the Court may affirm the injunction by certifying a class of current and future importers or remanding to the Court of International Trade to consider whether a class injunction is appropriate.

# ARGUMENT

## A.    Many Goods Cannot Be Produced Domestically

Spices are made from plants, including their roots, bark, leaves, and seeds.  Many spice plants can only be found or cultivated in specific climates or regions around the world.  That makes spices quintessential items of international trade, as most cannot be grown domestically due to climate and geography.  Indeed, since ancient times, humans have been mesmerized by the aromas and flavors associated with spices grown in faraway lands.

It is not surprising therefore that spices have long been prized in international trade.  Long before Europeans made landfall in the Americas, Eastern Mediterranean powers—from the ancient Egyptians to the Greeks, Romans, Ottomans and beyond—served as key intermediaries in the spice trade between European countries and the countries in which many desired spices were grown in south, southeast, and east Asia.[3]  The spice trade has thrived for thousands of years, likely even pre-dating recorded history, because people have always loved the flavors and aromas that spices provide.

A desire and taste for foreign spices has long been a key facet of American life, too.  In her 1796 cookbook, Amelia Simmons included a recipe for apple pie, instructing bakers to "[s]tew and strain the apples,

---

[3] *See* James Hancock, *A history of the spice trade: how spices shaped the world*, CABI Digital Library (Feb. 14, 2022), https://www.cabidigitallibrary.org/do/10.5555/blog-history-spice-trade.

to every three pints, grate the peal of a fresh lemon, add cinnamon, mace [part of the nutmeg fruit], rose-water and sugar to your taste— and bake in paste No. 3."[4]  And though today the phrase "as American as apple pie" often signals that a thing is representative of American culture or tradition, the cinnamon trees that provide apple pie's distinctive flavor are not native to the Americas.  "Cinnamon" includes several species of tropical evergreen trees that grow in hot, moist climates and are native to the Asian continent.  Though some isolated parts of the United States can facilitate the cultivation of such trees, a commercial industry does not exist here.  Instead, the most highly prized and potent varieties of cinnamon are grown in countries including Vietnam and Sri Lanka, where trees must grow for a minimum of 7-10 years before they are ready for harvest.  The same is true of many other spices that are staples of our cuisine, including black and white peppercorns, vanilla, ginger, turmeric, cloves, nutmeg, many varieties of chili peppers, and so on.

Since 2016, Burlap & Barrel has sourced unique spices and other ingredients that are grown naturally and sustainably using traditional techniques, bringing those flavors to dinner tables around the country.  As Burlap & Barrel's Co-Founder and Co-CEO Ori Zohar has recently stated, "We bring in spices from countries where they are grown in

---

[4] Amelia Simmons, *American Cookery* 24 (Hartford 1976), available at https://www.loc.gov/item/96126967/.

particular ways, using heirloom varieties. We cannot just buy these spices here in the United States. Many are not grown here at all."[5] Burlap & Barrel's "Spice Sourcing Map" demonstrates the inherently international sourcing of many spices:



**B.    American Small Businesses Like Burlap & Barrel Will Suffer Irreparable Harm Absent An Injunction**

Since February 2025, President Donald J. Trump has issued over half-a-dozen executive orders imposing tariffs on products imported from around the world, including the Canada Tariffs,[6] the Mexico Tariffs,[7] the China Tariffs,[8] and the Worldwide Tariffs.[9]  Virtually every

---

[6]  Executive Order 14193, titled "Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border," was issued on February 1, 2025.  *See* 90 Fed. Reg. 9113 (imposing an additional 25 percent import duty on all non-energy imports from Canada).  Among other things, Burlap & Barrel imports mustard seeds and dulse seaweed flakes from Canada.

[7]  On February 1, 2025, the President issued Executive Order 19194, titled "Imposing Duties To Address the Situation at Our Southern Border," to impose a 25 percent tariff on the import of goods from Mexico.  *See* 90 Fed. Reg. 9117, § 2(a).  Among other things, Burlap & Barrel imports chili powders, dried herbs, and salt from Mexico.

[8]  President Trump issued Executive Order 14195 targeting imports from China on February 1, 2025, titled "Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China." *See* 90 Fed. Reg 9121.  The order imposes an additional 10 percent duty on all imports from China.  *Id.* § 2(a).  On March 3, 2025, the President issued Executive Order 14228 finding that China has not taken adequate steps to alleviate the illicit drug crisis through cooperative enforcement actions," and raising import tariffs from the additional 10 percent earlier provided to an additional 20 percent.  *See* 90 Fed. Reg. 11463, § 2.  Among other things, Burlap & Barrel imports packaging and non-spice merchandise, including kitchen towels and gift bags, from China.

[9]  On April 2, 2025, President Trump issued Executive Order 14257, titled "Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits."  *See* 90 Fed. Reg. 15041.  The order establishes a

product imported by Burlap & Barrel is affected by the tariffs. Contrary to assertions made in some quarters, these tariffs are not paid by foreign countries or foreign producers. They are paid by importers, including American small businesses like Burlap & Barrel.

The tariffs pose a severe threat to Burlap & Barrel. Co-founded by Ethan Frisch and Ori Zohar in 2016, the small business is an American success story, growing from just $100,000 in sales in its first year to selling nearly $8 million worth of spices in the United States in 2024, growth of approximately 8,000% in less than a decade. Burlap & Barrel's success is the result of its founders' vision. Mr. Frisch is a native New Yorker who began his career as a line cook and pastry chef in New York and London. While engaging in humanitarian work in Afghanistan and Jordan, he was surprised by the high quality of spices he encountered compared to the muted and stale spices he was accustomed to in the United States. He recently told CNBC that he first tasted wild-grown cumin in Afghanistan's Hindu Kush mountains

---

baseline additional 10 percent tariff on all imports. *Id.* § 2. This provision affects virtually all of Burlap & Barrel's imported spice products. Annex I to the order enumerates additional tariffs on a country-by-country basis. As relevant to Burlap & Barrel, Annex I imposes an additional 26% tariff on products from India, 32% for Indonesia, 14% for Nigeria, 44% for Sri Lanka, and 46% for Vietnam, countries from which Plaintiff sources many of its spices. *Id.*, Annex I. On April 9, 2025, the President issued Executive Order 14266, delaying the country-specific tariffs identified in Annex I of the April 2, 2025 order from going into effect until July 9, 2025. *See* 90 Fed. Reg. 15625. However, the 10% worldwide tariff is otherwise already in effect.

in 2012: "I thought I knew my way around a spice cabinet. And then I realized that there was a whole world of spices that I had not had access to, that were not really being imported to the U.S."[10] He wanted to share that experience with other Americans while having a positive impact on the livelihoods of spice farmers around the world, and paired up with his longtime friend, Mr. Zohar, an experienced entrepreneur and former advertising executive, to start Burlap & Barrel. By sourcing its spices directly from small-scale farmers around the world, Burlap & Barrel builds more efficient supply chains that bypass intermediaries who drive up prices for consumers, and uses those savings to pay farmers between 2 and 10 times more than the commodity price.

Burlap & Barrel places a significant emphasis on the quality of its spices, working closely with expert farmers in more than 30 countries who cultivate uniquely high-quality products in a model akin to fine wines and specialty coffees. Thus, virtually all of Burlap & Barrel's imported spice products have been affected by one or more of President Trump's executive orders, or will be very soon. For example, Burlap & Barrel's spice products from Afghanistan, Argentina, Barbados, Colombia, Costa Rica, Ethiopia, France, Grenada, Guatemala, Hungary, Morocco, Nepal, Peru, Spain, Tanzania, and Turkey now face an

---

[10] Tom Huddleston Jr., *38-year-old turned his New York apartment into a 'spice warehouse'—now his company brings in $8 million a year*, CNBC (Apr. 25, 2025), https://www.cnbc.com/2025/04/25/burlap-barrel-ceos-how-we-grew-spice-business-from-nyc-apartment.html.

additional 10% tariff.  The situation is even worse for products imported from Canada (25%), India (26%), Indonesia (32%), Mexico (25%), Nigeria (14%), Sri Lanka (44%), and Vietnam (20%).

Many of Burlap & Barrel's bestselling spices—including cinnamon, black peppercorns, garlic powder, ginger powder, and others—are imported from Vietnam, which has recently been assigned a 20% tariff rate.[11]  Those spices represent approximately 20% of Burlap & Barrel's total sales.  This unexpected cost increase presents an existential threat to Burlap & Barrel's ability to succeed long-term.

Burlap & Barrel contributes heavily to the United States economy with strong and active relationships with many U.S.-based businesses and individuals, including: purchasing spices from farms in several U.S. states, including California, New York, Vermont, and New Mexico; working with small and medium-sized businesses in New York, New Jersey, Maryland, Virginia, Texas, and Nevada for spice processing, packing, warehousing, and shipping; employing around 20 individuals across several U.S. states including Arkansas, Colorado, Kentucky, and Massachusetts on a long-term, ongoing basis; and shipping tens of thousands of orders monthly with the U.S. Postal Service and other domestic logistics providers.

---

[11]  *See* Kevin Breuninger, *Trump says U.S. struck trade deal with Vietnam that imposes 20% tariff on its imports*, CNBC (July 2, 2025), https://www.cnbc.com/2025/07/02/trump-trade-vietnam-deal.html.

In 2024, Burlap & Barrel shipped approximately 100,000 unique orders including approximately 1,000,000 units of merchandise to restaurants, retailers, small and large food manufacturers, and directly to home cooks, all of whom depend on the vibrant flavors and unique characteristics of Burlap & Barrel spices for their day-today operations and meals.

Burlap & Barrel has already received invoices for tens of thousands of dollars in additional costs towards the tariffs in question, and, according to internal projections, expects to pay several hundred thousand additional dollars per year if the Tariff Orders are not reversed.  The Tariff Orders thus have a direct economic impact on Burlap & Barrel and pose an existential threat to the company's long term success.  Contrary to Defendants' arguments, *see* ECF No. 61-1 at 63, the harm to American businesses and consumers is far from speculative.  It is already happening.

## C.    The Court May Affirm Relief to Parties and Non-Parties Alike Through Class Certification

The Court of International Trade correctly held that "[t]here is no question here of narrowly tailored relief; if the challenged Tariff Orders are unlawful as to Plaintiffs they are unlawful as to all." *V.O.S. Selections, Inc., et al., v. United States, et al.*, 772 F. Supp. 3d 1350, 1383 (C.I.T. 2025).

On appeal, Defendants-Appellants challenge the scope of the injunction insofar as it reaches non-parties to the litigation. *See* Opening Br. At 64-67. After Defendants filed their opening brief, the Supreme Court issued its decision in *Trump v. CASA, Inc.*, 606 U.S. ----, 2025 WL 1773631 (U.S. June 27, 2025), holding, on an application for a stay, that the government was "likely to succeed on the merits of its argument regarding the scope of relief" based on its conclusion that Congress has not granted courts the authority to issue universal injunctions as an exercise of equitable authority. *Id.* at *6.

The Supreme Court's decision in *CASA* leaves open at least two avenues for this Court to affirm the Court of International Trade's injunction.

*First*, the Court may either find that (or, alternatively, remand to the Court of International Trade to consider whether) the Plaintiffs in this matter are unlikely to have "complete relief" without an injunction of this scope. *See CASA*, 2025 WL 1773631, at *11-12. Our domestic economy is complex and the Plaintiffs are likely to suffer harm from the challenged orders even with respect to items they are not importing or purchasing directly. For example, any business in a Plaintiff-State that imports goods itself, or purchases imported goods from other suppliers, will incur additional costs if it is not protected by this injunction. Higher costs for businesses in the Plaintiff-States means less tax revenue and thus financial harm to those states, not to mention the

costs that will be incurred if businesses fail, lay off employees, or reduce taxable spending. For example, Burlap & Barrel is based in New York, one of the Plaintiff states, and employs people in several other states, including in the Plaintiff State of Colorado. In light of the direct nexus between the harm to businesses like Burlap & Barrel and harm to the Plaintiff-States, *CASA* does not categorically preclude the scope of the Court of International Trade's injunction. Even if *CASA* requires an injunction to be confined in scope to the Plaintiffs, it should also apply to businesses and residents within the Plaintiff-States, harm to whom translates directly to harm to those states.[12]

*Second*, the *CASA* Court explained that class action procedures governed by Federal Rule of Civil Procedure 23 may support granting injunctive relief to unnamed parties. *See CASA*, 2025 WL 1773631, at *9-10. The Court of International Trade has adopted an analogue to Federal Rule of Civil Procedure 23, authorizing the certification of a class when the requirements for numerosity, commonality, typicality, and adequacy are satisfied, USCIT R. 23(a), and—as relevant here—

---

[12] A nationwide injunction is also appropriate because businesses in the Plaintiff-States transact with businesses in other, non-party states. The latter will also be affected by the Tariff Orders and are likely to pass on higher costs to the Plaintiff-States and businesses situated within them. As noted above, Burlap & Barrel's domestic trade partners are located throughout the United States, including in California, New York, New Jersey, Maryland, Nevada, Texas, Virginia, and Vermont.

when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." USCIT R. 23(b)(2). This Court "may affirm the district court on a ground not selected by the district judge so long as the record fairly supports such an alternative disposition of the issue." *Banner v. United States*, 238 F.3d 1348, 1355 (Fed. Cir. 2001).

Here, there is ample support in the record for this Court to certify a class of "all persons in the United States who import, or will import, products from any country covered by the Tariff Orders." The relevant criteria are clearly satisfied. There are plainly thousands of importers, so numerosity is satisfied because joinder would be impracticable (USCIT R. 23(a)(1)); there are common questions of law regarding the President's statutory and constitutional authority to issue the Tariff Orders (USCIT R. 23(a)(2)); Plaintiffs are plainly typical class representatives because they challenge the same Tariff Orders, on the same basis, and allege the same economic harm (higher costs in the form of tariffs) as all other class members (USCIT R. 23(a)(3)); and Plaintiffs are also adequate because they have no conflicts of interest with class members and their counsel have demonstrated their adequacy by successfully litigating the issues below (USCIT R. 23(a)(4)). Further, the criteria of USCIT R. 23(b)(1)(A) and 23(b)(2) are satisfied because separate actions create a risk of inconsistent adjudications that

14

would establish incompatible standards of conduct for the government, and the government has acted on grounds that apply generally to the class.  Even if this Court does not consider the issue in the first instance, it should remand to the Court of International Trade to do so and should prevent the Tariff Orders from taking effect until a reasonable time following remand to facilitate the lower court's expedited consideration of the issue.

## CONCLUSION

The Court of International Trade's judgment and injunction should be affirmed.

Respectfully submitted,

*/s/ Yaman Salahi*
Yaman Salahi
yaman@salahilaw.com
**SALAHI PC**
505 Montgomery St., 11th Floor
San Francisco, CA 94111
(415) 236-2352
*Counsel for Amicus Burlap & Barrel,
Inc.*

15

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation of Fed. Cir. R. 29(a)(5) and Fed. Cir. R. 32(a)(7)(B) because this brief contains 3,295 words, excluding the parts of the brief exempted by FRAP 32(f). (The maximum number of words is 6,500 for an amicus brief in connection with a principal brief, which has a word limit of 13,000 words under Fed. Cir. R. 32(a)(7)(B).)

This brief complies with the typeface requirements of Fed. Cir. R. 32(a)(5) and the type style requirements of Fed. Cir. R. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font, Size 14.

Date: July 8, 2025                    Respectfully submitted,

*/s/ Yaman Salahi*
Yaman Salahi
yaman@salahilaw.com
**SALAHI PC**
505 Montgomery St., 11th Floor
San Francisco, CA 94111
(415) 236-2352
*Counsel for Amicus Burlap & Barrel, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July 2025, a true and correct copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the Federal Circuit via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

Date: July 8, 2025                    Respectfully submitted,

*/s/ Yaman Salahi*
Yaman Salahi
yaman@salahilaw.com
**SALAHI PC**
505 Montgomery St., 11th Floor
San Francisco, CA 94111
(415) 236-2352
*Counsel for Amicus Burlap & Barrel, Inc.*