Case Nos. 2025-1812, -1813

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC, DBA GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC,**

*Plaintiffs–Appellees,*

*v.*

**DONALD J. TRUMP, in his official capacity as President of the United States, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, PETE R. FLORES, Acting Commissioner for United States Customs and Border Protection, in his official capacity as Acting Commissioner of the United States Customs and Border Protection, JAMIESON GREER, in his official capacity as United States Trade Representative, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, HOWARD LUTNICK, UNITED STATES CUSTOMS AND BORDER PROTECTION,**

*Defendants–Appellants.*

**THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, THE STATE OF VERMONT,**

*Plaintiffs–Appellees,*

*v.*

**PRESIDENT DONALD J. TRUMP, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, Secretary of Homeland Security, in her official capacity as Secretary of the Department of Homeland Security, UNITED STATES CUSTOMS AND BORDER PROTECTION, PETE R. FLORES, Acting Commissioner for United States Customs and Border Protection, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection, UNITED STATES,**

*Defendants–Appellants.*

ON APPEAL FROM THE UNITED STATES COURT OF INTERNATIONAL TRADE
NOS. 25-66, -77, JUDGES KATZMANN, REIF, AND RESTANI

## BRIEF OF 191 MEMBERS OF THE UNITED STATES CONGRESS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS–APPELLEES

| | |
|---|---|
| The Norton Law Firm PC | Jennifer Hillman |
| William Fred Norton | Georgetown University Law Center |
| Nathan Walker | 600 New Jersey Ave NW |
| Josephine Petrick | Washington, DC 20001 |
| Celine Purcell | jennifer.hillman@law.georgetown.edu |
| Emily Kirk | *Counsel listing continued on next page* |
| Rebecca Kutlow | |

*Counsel listing continued on next page*

300 Frank H. Ogawa Plaza, Suite 450
Oakland, CA 94612
Telephone: 510-906-4900
fnorton@nortonlaw.com
nwalker@nortonlaw.com
jpetrick@nortonlaw.com
cpurcell@nortonlaw.com
ekirk@nortonlaw.com
rkutlow@nortonlaw.com

*Attorneys to Amici Curiae*

Peter Harrell
Peter Harrell LLC
1102 St. Louis Place NE
Atlanta, GA 30306
harrell@peterharrelllaw.com

*Of Counsel*

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2025 -1812, -1813 |
| **Short Case Caption** | V.O.S. Selections Inc. et al. v. Trump et al. |
| **Filing Party/Entity** | Amici Curiae, 191 Members of the United States Congress |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/08/2025

Signature: /s/ William Fred Norton

Name: William Fred Norton

i

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| See attached list. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑   Additional pages attached

ii

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| William Fred Norton | Nathan Walker | Josephine Petrick |
| Celine Purcell | Emily Kirk | Rebecca Kutlow |
| Jennifer Hillman | Peter Harrell | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☐   No    ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## LIST OF REPRESENTED ENTITIES
## AMICI CURIAE

### MEMBERS OF THE U.S. HOUSE OF REPRESENTATIVES

**Jamie Raskin**
Representative of Maryland

**Richard E. Neal**
Representative of Massachusetts

**Gregory W. Meeks**
Representative of New York

**Hakeem Jeffries**
Representative of New York

**Katherine Clark**
Representative of Massachusetts

**Pete Aguilar**
Representative of California

**Joe Neguse**
Representative of Colorado

**Rosa L. DeLauro**
Representative of Connecticut

**Robert Garcia**
Representative of California

**Gabe Amo**
Representative of Rhode Island

**Jake Auchincloss**
Representative of Massachusetts

**Becca Balint**
Representative of Vermont

**Nanette Barragán**
Representative of California

**Joyce Beatty**
Representative of Ohio

**Wesley Bell**
Representative of Missouri

**Ami Bera, M.D.**
Representative of California

**Donald S. Beyer Jr.**
Representative of Virginia

**Sanford D. Bishop, Jr.**
Representative of Georgia

**Suzanne Bonamici**
Representative of Oregon

**Brendan F. Boyle**
Representative of Pennsylvania

**Shontel M. Brown**
Representative of Ohio

**Julia Brownley**
Representative of California

**Janelle S. Bynum**
Representative of Oregon

**Salud O. Carbajal**
Representative of California

iv

**André Carson**
> Representative of Indiana

**Troy A. Carter, Sr.**
> Representative of Louisiana

**Ed Case**
> Representative of Hawaii

**Sean Casten**
> Representative of Illinois

**Kathy Castor**
> Representative of Florida

**Joaquin Castro**
> Representative of Texas

**Sheila Cherfilus-McCormick**
> Representative of Florida

**Judy Chu**
> Representative of California

**Gilbert R. Cisneros, Jr.**
> Representative of California

**Emanuel Cleaver, II**
> Representative of Missouri

**James E. Clyburn**
> Representative of South Carolina

**Steve Cohen**
> Representative of Tennessee

**Herbert C. Conaway, Jr.**
> Representative of New Jersey

**J. Luis Correa**
> Representative of California

**Jim Costa**
> Representative of California

**Joe Courtney**
> Representative of Connecticut

**Angie Craig**
> Representative of Minnesota

**Jasmine Crockett**
> Representative of Texas

**Jason Crow**
> Representative of Colorado

**Sharice L. Davids**
> Representative of Kansas

**Danny K. Davis**
> Representative of Illinois

**Madeleine Dean**
> Representative of Pennsylvania

**Diana DeGette**
> Representative of Colorado

**Suzan K. DelBene**
> Representative of Washington

**Mark DeSaulnier**
> Representative of California

**Maxine Dexter**
> Representative of Oregon

**Lloyd Doggett**
    Representative of Texas

**Sarah Elfreth**
    Representative of Maryland

**Veronica Escobar**
    Representative of Texas

**Adriano Espaillat**
    Representative of New York

**Dwight Evans**
    Representative of Pennsylvania

**Cleo Fields**
    Representative of Louisiana

**Lizzie Fletcher**
    Representative of Texas

**Bill Foster**
    Representative of Illinois

**Valerie P. Foushee**
    Representative of North Carolina

**Lois Frankel**
    Representative of Florida

**Laura Friedman**
    Representative of California

**Maxwell Alejandro Frost**
    Representative of Florida

**John Garamendi**
    Representative of California

**Jesús G. "Chuy" García**
    Representative of Illinois

**Sylvia Garcia**
    Representative of Texas

**Dan Goldman**
    Representative of New York

**Jimmy Gomez**
    Representative of California

**Maggie Goodlander**
    Representative of New Hampshire

**Josh Gottheimer**
    Representative of New Jersey

**Jahana Hayes**
    Representative of Connecticut

**Pablo José Hernández**
    Representative of Puerto Rico

**Jim Himes**
    Representative of Connecticut

**Steven Horsford**
    Representative of Nevada

**Steny H. Hoyer**
    Representative of Maryland

**Jared Huffman**
    Representative of California

**Glenn F. Ivey**
    Representative of Maryland

**Jonathan L. Jackson**
    Representative of Illinois

**Sara Jacobs**
    Representative of California

**Henry C. "Hank" Johnson, Jr.**
    Representative of Georgia

**Julie Johnson**
    Representative of Texas

**Sydney Kamlager-Dove**
    Representative of California

**William Keating**
    Representative of Massachusetts

**Timothy M. Kennedy**
    Representative of New York

**Ro Khanna**
    Representative of California

**Raja Krishnamoorthi**
    Representative of Illinois

**Greg Landsman**
    Representative of Ohio

**Rick Larsen**
    Representative of Washington

**John B. Larson**
    Representative of Connecticut

**George Latimer**
    Representative of New York

**Summer L. Lee**
    Representative of Pennsylvania

**Teresa Leger Fernández**
    Representative of New Mexico

**Mike Levin**
    Representative of California

**Sam T. Liccardo**
    Representative of California

**Ted W. Lieu**
    Representative of California

**Stephen F. Lynch**
    Representative of Massachusetts

**Seth Magaziner**
    Representative of Rhode Island

**Doris Matsui**
    Representative of California

**Lucy McBath**
    Representative of Georgia

**Sarah McBride**
    Representative of Delaware

**April McClain Delaney**
    Representative of Maryland

**Jennifer L. McClellan**
    Representative of Virginia

**Betty McCollum**
    Representative of Minnesota

**James P. McGovern**
    Representative of Massachusetts

**Robert J. Menendez**
    Representative of New Jersey

**Grace Meng**
    Representative of New York

**Kweisi Mfume**
    Representative of Maryland

**Dave Min**
    Representative of California

**Gwen S. Moore**
    Representative of Wisconsin

**Joseph D. Morelle**
    Representative of New York

**Kelly Morrison**
    Representative of Minnesota

**Jared Moskowitz**
    Representative of Florida

**Seth Moulton**
    Representative of Massachusetts

**Kevin Mullin**
    Representative of California

**Jerrold Nadler**
    Representative of New York

**Eleanor Holmes Norton**
    Representative of the District of
    Columbia

**Johnny Olszewski, Jr.**
    Representative of Maryland

**Frank Pallone, Jr.**
    Representative of New Jersey

**Jimmy Panetta**
    Representative of California

**Nancy Pelosi**
    Representative of California

**Scott H. Peters**
    Representative of California

**Brittany Pettersen**
    Representative of Colorado

**Chellie Pingree**
    Representative of Maine

**Stacey E. Plaskett**
    Representative of the Virgin
    Islands

**Nellie Pou**
    Representative of New Jersey

**Mike Quigley**
    Representative of Illinois

**Delia C. Ramirez**
    Representative of Illinois

**Luz M. Rivas**
    Representative of California

**Deborah K. Ross**
    Representative of North Carolina

**Andrea Salinas**
Representative of Oregon

**Linda T. Sánchez**
Representative of California

**Mary Gay Scanlon**
Representative of Pennsylvania

**Jan Schakowsky**
Representative of Illinois

**Bradley Scott Schneider**
Representative of Illinois

**Kim Schrier, M.D.**
Representative of Washington

**Robert C. "Bobby" Scott**
Representative of Virginia

**Terri A. Sewell**
Representative of Alabama

**Brad Sherman**
Representative of California

**Mikie Sherrill**
Representative of New Jersey

**Lateefah Simon**
Representative of California

**Adam Smith**
Representative of Washington

**Eric Sorensen**
Representative of Illinois

**Melanie A. Stansbury**
Representative of New Mexico

**Greg Stanton**
Representative of Arizona

**Marilyn Strickland**
Representative of Washington

**Suhas Subramanyam**
Representative of Virginia

**Thomas R. Suozzi**
Representative of New York

**Eric Swalwell**
Representative of California

**Shri Thanedar**
Representative of Michigan

**Bennie G. Thompson**
Representative of Mississippi

**Mike Thompson**
Representative of California

**Dina Titus**
Representative of Nevada

**Norma J. Torres**
Representative of California

**Ritchie Torres**
Representative of New York

**Derek T. Tran**
Representative of California

**Juan Vargas**
      Representative of California

**Marc A. Veasey**
      Representative of Texas

**Nydia M. Velázquez**
      Representative of New York

**Debbie Wasserman Schultz**
      Representative of Florida

**Maxine Waters**
      Representative of California

**Bonnie Watson Coleman**
      Representative of New Jersey

**Nikema Williams**
      Representative of Georgia

**Frederica S. Wilson**
      Representative of Florida

## MEMBERS OF THE UNITED STATES SENATE

**Senator Jeanne Shaheen**
  New Hampshire
  Ranking Member
  Senate Foreign Relations Committee

**Senator Charles E. Schumer**
  New York
  Senate Minority Leader

**Senator Peter Welch**
  Vermont

**Senator Angela Alsobrooks**
  Maryland

**Senator Maria Cantwell**
  Washington

**Senator Catherine Cortez Masto**
  Nevada

**Senator Margaret Wood Hassan**
  New Hampshire

**Senator Angus S. King, Jr.**
  Maine

**Senator John Hickenlooper**
  Colorado

**Senator Christopher A. Coons**
  Delaware

**Senator Mark R. Warner**
  Virginia

**Senator Amy Klobuchar**
  Minnesota

**Senator Lisa Blunt Rochester**
  Delaware

**Senator Edward J. Markey**
  Massachusetts

**Senator Ron Wyden**
  Oregon
  Ranking Member
  Senate Finance Committee

**Senator Tim Kaine**
  Virginia

**Senator Michael F. Bennet**
  Colorado

**Senator Ben Ray Luján**
  New Mexico

**Senator Andy Kim**
  New Jersey

**Senator Chris Van Hollen**
  Maryland

**Senator Tammy Duckworth**
  Illinois

**Senator Richard Blumenthal**
  Connecticut

**Senator Alex Padilla**
  California

**Senator Richard J. Durbin**
  Illinois

**Senator Jeffrey A. Merkley**
  Oregon

**Senator Raphael Warnock**
  Georgia

**Senator Mazie K. Hirono**
  Hawaii

**Senator Jacky Rosen**
  Nevada

xi

**Senator Gary C. Peters**
  Michigan

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ................................................................ xv

STATEMENT OF AUTHORSHIP AND FUNDING .............................. xx

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO
    FILE ........................................................................................ 1

INTRODUCTION .............................................................................. 2

DISCUSSION ................................................................................... 3

I.    When Congress Delegates Its Constitutional Authority to
    Impose Tariffs, It Does So Explicitly and with Procedural
    Safeguards ............................................................................. 3

    A.    It is undisputed that Congress, not the President, has
        the constitutional power to impose tariffs............................ 3

    B.    When Congress delegates its tariff-raising authority, it
        does so explicitly and specifically........................................ 4

    C.    When Congress delegates its tariff-raising authority, it
        imposes substantive limitations and procedural
        controls on the imposition of tariffs. ................................... 8

II.    IEEPA Does Not Authorize the President to Impose Tariffs ...... 13

    A.    The plain text of IEEPA does not provide the President
        with the power to impose tariffs. ....................................... 13

    B.    Congress has demonstrated it knows how to clearly and
        unmistakably authorize tariffs when it wants to—it did
        not do so in IEEPA. ............................................................ 14

    C.    Congress has laid out an extensive statutory regime
        that authorizes the President to impose tariffs for
        discrete purposes, and IEEPA does not contain a
        residual tariff authority for other purposes. ....................... 17

D.  IEEPA's power to "regulate" does not include the power to "tariff." ................................................................. 20

E.  Past governmental use of IEEPA's power to "regulate" imports is consistent with the plain language reading of "regulate"—while "tariff" is not. ...................................... 22

F.  The term "regulate" in IEEPA cannot include the power to impose tariffs because it would put IEEPA in conflict with the constitutional prohibition on export taxes. ............ 24

G.  The President is not entitled to deference when he misuses IEEPA. ....................................................................... 25

III.  IEEPA's Legislative History and Historical Practice Confirm It Does Not Delegate Congress's Tariff Power .............. 26

A.  IEEPA's legislative history confirms it was not intended to delegate tariff authority to the President. ........ 26

B.  The President's use of IEEPA to impose tariffs is unprecedented. ....................................................................... 28

IV.  Allowing the President to Impose Tariffs Under IEEPA Would Allow the Executive to Usurp Trade Power ...................... 29

CONCLUSION ........................................................................................ 32

CERTIFICATE OF COMPLIANCE ....................................................... 34

APPENDIX: LIST OF AMICI CURIAE ................................................. 35

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.G. Spalding & Bros. v. Edwards,*
  262 U.S. 66 (1923) ................................................................24

*Biden v. Nebraska,*
  600 U.S. 477 (2023) ......................................15, 21, 29, 31

*Bittner v. United States,*
  598 U.S. 85 (2023) ..............................................................14

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr.*
  *Trades Council,*
  485 U.S. 575 (1988) ............................................................24

*Erlenbaugh v. United States,*
  409 U.S. 239 (1972) ............................................................22

*Fed. Energy Admin. v. Algonquin SNG, Inc.,*
  426 U.S. 548 (1976) ............................................................16

*Fed'n of Indep. Bus. v. Sebelius,*
  567 U.S. 519 (2012) ......................................................21, 24

*Georgia v. President of the United States,*
  46 F.4th 1283 (11th Cir. 2022) ........................................15

*Gonzales v. Oregon,*
  546 U.S. 243 (2006) ............................................................15

*INS v. Chadha,*
  462 U.S. 919 (1983) ............................................................28

*Jama v. Immig. & Customs Enf't,*
  543 U.S. 335 (2005) ............................................................14

*Kentucky v. Biden,*
    23 F.4th 585 (6th Cir. 2022) ................................................................. 15

*Learning Res., Inc. v. Trump,*
    2025 WL 1525376 (D.D.C. May 29, 2025) ..........................13, 15, 20, 26

*Loper Bright v. Raimondo,*
    603 U.S. 369 (2024) ................................................................. 25

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) ................................................................. 15

*Marland v. Trump,*
    498 F. Supp. 3d 624 (E.D. Pa. 2020) ................................................................. 26

*Mayes v. Biden,*
    67 F.4th 921 (9th Cir. 2023) ................................................................. 15

*Parker Drilling Mgmt. Servs., Ltd. v. Newton,*
    587 U.S. 601 (2019) ................................................................. 19

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) ................................................................. 19

*State v. Su,*
    121 F.4th 1 (9th Cir. 2024) ................................................................. 15

*TikTok Inc. v. Trump,*
    507 F. Supp. 3d 92 (D.D.C. 2020) ................................................................. 26

*United States v. Penn,*
    63 F.4th 1305 (11th Cir. 2023) ................................................................. 21

*United States v. Yoshida Int'l, Inc.,*
    526 F.2d 560 (C.C.P.A. 1975) ................................................................. 19

*Van Loon v. Dep't of the Treasury,*
    122 F.4th 549 (5th Cir. 2024) ................................................................. 25

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ................................................................. 15, 21

*Whitman v. Am. Trucking Ass'n,*
   531 U.S. 457 (2001) .............................................................. 31

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) ........................................................ 4, 15

## U.S. Constitutional Provisions

Article 1
   § 8 ............................................................................................ 4
   § 8, cl. 1 .................................................................................. 2
   § 8, cl. 3 .................................................................................. 2
   § 9, cl. 5 ................................................................................ 24

## Statutes

15 U.S.C.
   § 78(d) .................................................................................. 21

19 U.S.C.
   § 1338 ................................................................................ 4, 6
   § 1338(a) .............................................................. 5, 7, 15, 16
   § 1862 .......................................................................... 6, 16, 19
   § 1862(a) ........................................................................ 5, 16
   § 1862(c) ................................................................................ 5
   § 2132 ...................................................................... 4, 6, 18
   § 2132(a)(3)(A) .......................................................... 5, 7, 16
   §§ 2251-2254 ................................................................ 4, 6
   § 2251(a)(3)(A) .................................................................. 16
   § 2251(a)(3)(B) .................................................................. 16
   § 2253(a)(3) .................................................................. 7, 16
   § 2253(a)(3)(A)–(B) ............................................................ 5
   §§ 2411–2420 ................................................................ 4, 6
   § 2411(c)(1)(B) .......................................................... 5, 7, 16
   § 2492(a) ............................................................................ 16

47 U.S.C.
   § 303(e) .............................................................................. 21

50 U.S.C.

§ 1662(d)........................................................................27
§ 1701...........................................................................27
§ 1701(a) .......................................................................17
§ 1702 .....................................................13, 14, 25, 31
§ 1702(a)(1)(B) ..................................................... passim
§ 1703(b)(5) ...................................................................23
§§ 1701–1710 ...................................................................2

## Rules

Fed. Cir. R.
  29(b)...........................................................................34
  32(b)...........................................................................34
  47.4 ..............................................................................i

Fed. R. App. P.
  29(a)(4)(E) .................................................................xiii
  32(a)(5)–(6) ................................................................34

## Other Authorities

Exec. Order No.
  12170 ..........................................................................28
  13694 ..........................................................................29
  14068 ..........................................................................23

Federalist Papers No.
  31-36 ...........................................................................28

H. R. Rep. No.
  95-459 ...................................................................27, 28

Pub. L. No.
  73-316 ...........................................................................8
  95-223 ..........................................................................26
  103-465 ........................................................................30
  116-113 ........................................................................30

S. Rep. No.
  95-466 ..........................................................................28

Christopher A. Casey & Jennifer K Elsea, *The International Emergency Economic Powers Act: Origins, Evolution, and Use,* Congressional Research Service (Jan. 30, 2024)*, https://www.congress.gov/crs-product/R45618* ................................ 28

Department of the Treasure, Office of Foreign Assets Control, General License No. 41, *Authorizing Certain Transactions Related to Chevron Corporation's Joint Ventures in Venezuela* (2022), https://ofac.treasury.gov/media/929531/download?inline ............. 22, 23

Patrick A. Thronson, *Toward Comprehensive Reform of America's Emergency Law Regime*, 46 U. Mich. J. L. Reform 737 (2013) .......... 26

## STATEMENT OF AUTHORSHIP AND FUNDING

(Fed. R. App. P. 29(a)(4)(E).)

No counsel for a party authored this brief in whole or part, no party or counsel for a party contributed money to fund preparing or submitting this brief, and no person contributed money intended to fund preparing or submitting this brief.  *See* Fed. R. App. P. 29(a)(4)(E).

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

*Amici* are 191 Members of the U.S. House of Representatives and the U.S. Senate. *See* Appendix (listing *Amici*). This Court ordered that amicus briefs may be filed without consent and leave of court. Fed. Cir. Dkt. 53. *Amici,* which include members on committees with jurisdiction over tariffs and trade, have a strong interest in ensuring that any action by the President complies with the authority delegated to him by Congress. The Constitution confers onto Congress, not the President, the authority to impose tariffs and regulate commerce with foreign nations. When the President wishes to impose tariffs, he must comply with the existing, lawful delegations of tariff power that Congress has enacted or, if he finds those authorities insufficient, ask Congress for new authority. The President has usurped Congress's constitutional authority by impermissibly using the International Emergency Economic Powers Act ("IEEPA") to impose tariffs. *Amici* urge this Court to affirm the CIT's judgment that the President's tariffs, imposed under IEEPA, are unlawful.

1

## INTRODUCTION

The Court of International Trade and the District Court for the District of Columbia reached the correct conclusion: President Trump's imposition of tariffs under IEEPA is unlawful.

Only Congress has the power to "lay and collect Taxes, Duties, Imposts and Excises," U.S. Const. Art. I, § 8, cl. 1, and to "regulate Commerce with foreign Nations," *id.*, cl. 3. This reflects the Framers' interest in ensuring the most democratically accountable branch—the one closest to the People—be responsible for enacting taxes, duties, and tariffs. Federalist Papers Nos. 31–36.

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701–1710, provides the President with defined powers to address national emergencies, but does not confer the power to impose or remove tariffs.

Neither the word "duties" nor the word "tariffs" appear anywhere in IEEPA. Rather, IEEPA merely allows the President, in times of emergency, to "regulate … importation or exportation" of property. 50 U.S.C. § 1702(a)(1)(B). A delegated power to "regulate" is not a power to impose tariffs.

2

IEEPA contains none of the hallmarks of legislation delegating tariff power to the executive such as limitations tied to specific products or countries, caps on the amount of tariff increases, procedural safeguards, public input, collaboration with Congress, or time limitations.  In the five decades since IEEPA's enactment, no President from either party, aside from the current President, has ever claimed that IEEPA conferred any authority to impose tariffs.

Unmoored from the structural safeguards Congress built into actual tariff statutes, the President's unlawful "emergency" tariffs under IEEPA have led to chaos and uncertainty.

*Amici* respectfully submit that this Court should affirm the CIT's judgment and hold that IEEPA does not delegate tariff authority to the President and that the President's tariffs under IEEPA are therefore unlawful.

## DISCUSSION

## I.    When Congress Delegates Its Constitutional Authority to Impose Tariffs, It Does So Explicitly and with Procedural Safeguards

### A.    It is undisputed that Congress, not the President, has the constitutional power to impose tariffs.

"The President's power, if any, … must stem either from an act of

Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). Neither is present here.

Article I, Section 8 vests Congress—not the President—with the exclusive power to "lay and collect Taxes, Duties, Imposts and Excises," and to "regulate Commerce with foreign Nations." The Administration does not argue to the contrary. Thus, absent a delegation of that authority, the President may not raise tariffs on imported goods. *See id.*; *Youngstown*, 343 U.S. at 585. IEEPA does not delegate tariff authority to the President.

## B.  When Congress delegates its tariff-raising authority, it does so explicitly and specifically.

When Congress authorizes duties, it says so. It uses the word "duty" to signal a delegation of its Article I power to "lay and collect … Duties" and has done so from the moment it began delegating tariff authority.[1]

- Section 338 of the Tariff Act of 1930 refers to "new or

---

[1] Sections 122 (19 U.S.C. § 2132 [hereinafter "Section 122"]), 201–204 (19 U.S.C. §§ 2251-2254 [hereinafter "Section 201"]), and 301–310 (19 U.S.C. §§ 2411–2420 [hereinafter "Section 301"]) of the Trade Act of 1974; and Section 338 of the Tariff Act of 1930 (19 U.S.C. § 1338) all explicitly reference "duties."

4

additional duties."  19 U.S.C. § 1338(a) (hereinafter "Section 338").

- Section 232, which authorizes the President to "adjust imports," 19 U.S.C. § 1862(c), explicitly refers to duties when discussing limits on presidential adjustments.  *Id.* § 1862(a) (titled "Prohibition on Decrease or Elimination of Duties or Other Import Restrictions").

- Section 122 of the Trade Act of 1974 empowers the President to proclaim "a temporary import surcharge ... in the form of duties."  19 U.S.C. § 2132(a)(3)(A).

- Section 201 of that same Act authorizes the President to "proclaim an increase in, or the imposition of, any duty on the imported article" or to "proclaim a tariff-rate quota."  19 U.S.C. § 2253(a)(3)(A)–(B).

- Section 301, also of the Trade Act of 1974, allows the President to "impose duties or other import restrictions."  19 U.S.C. § 2411(c)(1)(B).

Unlike these statutes, IEEPA does not contain the term "duty" or "tariff" anywhere.  *See infra* § II.A.

5

All of the express tariff statutes were enacted pursuant to a trade or tariff act:

- Section 338 is part of Chapter 4 of Title 19 of the U.S. Code. Chapter 4 is titled the "Tariff Act of 1930." 19 U.S.C. § 1338.

- Section 232 is part of Chapter 7 of Title 19 of the U.S. Code. Chapter 7 is titled the "Trade Expansion Program." 19 U.S.C. § 1862.

- Sections 122, 201, and 301 are all part of Chapter 12 of Title 19 of the U.S. Code. Chapter 12 is titled the "Trade Act of 1974." 19 U.S.C. §§ 2132, 2251–2254, & 2411–2420.

By contrast, IEEPA is part of Title 50 (denominated "War and National Defense") and is titled the "International Emergency Economic Powers Act." It is not a "Tariff" or "Trade" act, nor was it codified as a tariff statute in Title 19 of the United States Code (denominated "Customs Duties").

Further, because tariffs are levied on imports of specific products imported from specific countries, when Congress delegates tariff authority to the President, it also includes words that explicitly limit the delegation to products that have historically been subject to tariffs,

6

often "articles" from a single country:

- Section 338 refers to duties "upon articles wholly or in part the … product of … any foreign country."  19 U.S.C. § 1338(a).

- Section 201 limits the President's tariff authority to a duty or a tariff-rate quota "on the imported article."  19 U.S.C. § 2253(a)(3).

- Section 301 permits the duties or other import restrictions "on the goods of … such foreign country."  19 U.S.C. § 2411(c)(1)(B).

Only Section 122 permits temporary, broad-based tariffs on all imports from all countries, but Section 122 limits those tariffs to a maximum increase of 15% *ad valorem* and to a period of no more than 150 days.  19 U.S.C. § 2132(a)(3)(A); *see* Opinion at 33.

IEEPA, on the other hand, permits the regulation of the importation or exportation of "any property in which any foreign country or a national thereof has any interest …, or with respect to any property subject to the jurisdiction of the United States."  50 U.S.C. § 1702(a)(1)(B).  As such, IEEPA extends to many forms of property that

7

historically have never been subject to import tariffs, such as financial assets, real property, and intellectual property rights. Indeed, IEEPA has most commonly been applied to freezing financial assets or prohibiting certain financial transactions. *See infra* §§ III.A–B.

IEEPA bears none of the formal hallmarks of a tariff statute. It is not one.

## C.   When Congress delegates its tariff-raising authority, it imposes substantive limitations and procedural controls on the imposition of tariffs.

Whenever Congress has delegated its tariff authority, it has done so explicitly and subject to specific and articulated parameters and safeguards.

Prior to the 1930s, Congress did not typically delegate tariff power at all. Instead, it set tariff rates legislatively. And, in cases where Congress did delegate tariff authority to the President, it was generally to adjust legislatively established tariff rates within specified limits and after the President made specific factual determinations.

With the Reciprocal Trade Agreements Act of 1934, Pub. L. No. 73-316, 48 Stat. 943, Congress began delegating carefully limited tariff-setting authority to the President. Those delegations usually took the

form of authorizing the President to negotiate reciprocal trade
agreements and to proclaim limited tariff reductions, within bounds
Congress prescribed.

In recent decades, Congress has enacted specific statutes that
allow the President to adjust tariff rates in response to specific trade-
related concerns or in response to required findings by U.S. agencies.
These laws, however, include specific procedures, substantive
standards, and temporal limits, starkly contrasting with IEEPA.

*First*, Congress establishes trade-specific prerequisites that must
be met before the President is authorized to act.  Section 338, for
example, requires a finding "as a fact" that a foreign country imposes a
non-reciprocal "charge, exaction, regulation, or limitation" on U.S.
exports, or "discriminates in fact" against the commerce of the United
States as compared to its treatment of imports from other countries.
Section 338(a)(1)–(2).  Section 232 requires a finding by the Secretary of
Commerce that an article is being imported "in such quantities or under
such circumstances as to threaten to impair the national security."
Section 232(b)(3)(A).  Section 122 requires a determination of major
international payments problems ("large and serious United States

9

balance-of-payments deficits" or "an imminent and significant depreciation of the dollar") requiring special import measures. Section 122(a)(1)–(2). A surge in imports that is significant enough to cause or threaten serious injury to the domestic industry producing a comparable product is the prerequisite to action under Section 201. Action under Section 301 can be based on either a finding that U.S. rights under a trade agreement have been denied or that an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts U.S. commerce.

*Second*, Congress has historically set procedural safeguards before it hands over tariff authority to the President. Both Section 201 and previous Section 338 investigations have involved extensive processes conducted by the independent U.S. International Trade Commission, including (1) issuing questionnaires to collect extensive data, (2) public hearings in which all interested parties can submit written submissions and appear to provide testimony, (3) a formal vote by the Commission as to whether the prerequisites are met, and (4) a written report outlining the factual basis for the Commission's determination.

Similarly, Section 301 requires (1) a formal investigation by the Office of the United States Trade Representative (USTR), sometimes begun by a petition from an industry group or union, (2) consultations with interested parties, (3) a public hearing, and (4) the publication in the Federal Register of the results of the investigation and the determination as to whether the statutory prerequisites to tariff action have been met.  Section 301 investigations must be undertaken pursuant to regulations that Congress insisted USTR issue concerning the filing of petitions and the conduct of investigations and hearings.

These processes and requirements for factual findings demonstrate how Congress has set defined parameters on how the Executive Branch can use its delegated tariff authority.  Congress also included detailed reporting requirements so it would be apprised of any tariff actions taken under these tariff-delegating statutes.  None of these procedural safeguards are included in IEEPA.

***Third***, Congress maintains control over delegated tariff authority by imposing time limitations on the process governing the imposition of the tariffs, stating the length of time the tariffs can be in place, and prescribing how much notice importers must be given.  Section 338, for

11

example, requires a 30-day notice period between the time the tariffs are announced and when they are collected. (The President's IEEPA orders have generally become effective within 48 hours.) Section 122 permits duties to remain in place for no more than 150 days unless extended by Congress. Section 232 requires a Presidential determination of agreement (or not) with the Secretary of Commerce's report and findings within 90 days, with action implemented no less than 15 days later. Section 201 contains both procedural time limitations and restrictions on the length of time that the tariffs can remain in place: four years with the possibility of a single extension, resulting in a maximum of eight years.

Congress has also placed caps on how high tariff increases can go, as the amount of the tariff matters greatly. Section 122 limits the additional duties to 15% *ad valorem*. Similarly, Section 338 limits the additional tariffs to 50% *ad valorem*. Section 301(a)(3) specifies that any action taken be "in an amount that is equivalent in value to the burden or restriction being imposed by that country on United States Commerce."

As an emergency powers statute, not a tariff statute, IEEPA

12

contains none of these carefully constructed limits. These
"comprehensive statutory limitations would be eviscerated if the
President could invoke a virtually unrestricted tariffing power under
IEEPA." *Learning Res., Inc. v. Trump*, No. CV 25-1248 (RC), 2025 WL
1525376, at *9 (D.D.C. May 29, 2025); *see* Opinion at 30–31 ("[T]his
court does not read the words 'regulate ... importation' in IEEPA as
authorizing the President to impose whatever tariff rates he deems
desirable. Indeed, such a reading would create an unconstitutional
delegation of power … the words 'regulate ... importation' cannot grant
the President unlimited tariff authority.").

## II.    IEEPA Does Not Authorize the President to Impose Tariffs

In enacting IEEPA, Congress did not grant the President
additional authority to impose or remove tariffs, as the court correctly
held in *Learning Res., Inc. v. Trump*, No. CV 25-1248, 2025 WL
1525376 (D.D.C. May 29, 2025), *appeal docketed*, No. 25-5202 (D.C. Cir.
May 30, 2025). IEEPA's text and context foreclose it from delegating
tariff authority.

### A.    The plain text of IEEPA does not provide the President with the power to impose tariffs.

IEEPA specifies the powers it grants the Executive. 50 U.S.C.

13

§ 1702. In relevant part, it authorizes the President to

> investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States ....

*Id.* § 1702(a)(1)(B).

Despite the many powers clearly enumerated in the statute, nowhere does it contain the word "tariff," "duty," "excise," or other similar words Congress has consistently used when delegating tariff powers to the President. *See infra* § II.B. This silence speaks volumes. *See, e.g.*, *Jama v. Immig. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply...."); *Bittner v. United States*, 598 U.S. 85, 94 (2023) (similar).

## B.   Congress has demonstrated it knows how to clearly and unmistakably authorize tariffs when it wants to— it did not do so in IEEPA.

As the CIT correctly recognized, Opinion at 27–28, there must be "clear congressional authorization" before a court will interpret a

14

statute as conferring sweeping authority over areas of vast economic and political significance—the kind of authority the Administration claims here. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022); *see also Biden v. Nebraska*, 600 U.S. 477, 501 (2023).[2] "It would be anomalous, to say the least, for Congress to have so painstakingly described the President's limited authority on tariffs in other statutes, but to have given him, just by implication, nearly unlimited tariffing authority in IEEPA." *Learning Res.*, 2025 WL 1525376, at *9 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 262 (2006)) (cleaned up).

Congress regularly meets this test when it delegates power to the President to raise or lower tariffs, clearly and explicitly granting the President that authority. *See supra* §§ I.B–C; 19 U.S.C. §§ 1338(a),

---

[2] The Administration suggests these principles do not apply if the President, rather than an executive agency, lays claim to an Article I power. Appellants' Opening Brief, Fed Cir. Dkt. 61, at 43-44. Not so. The President has no tariff power unless Congress grants it. *See Youngstown Sheet*, 343 U.S. at 585. These principles thus apply to the President, as four circuits have held. *See State v. Su,* 121 F.4th 1, 14 (9th Cir. 2024); *id.* at 17–22 (Nelson, J. concurring); *Louisiana v. Biden*, 55 F.4th 1017, 1031 & n.40 (5th Cir. 2022); *Georgia v. President of the United States*, 46 F.4th 1283, 1295–97 (11th Cir. 2022); *Kentucky v. Biden*, 23 F.4th 585, 606–08 (6th Cir. 2022). The Administration cites only a vacated opinion, *Mayes v. Biden*, 67 F.4th 921, 933 (9th Cir. 2023), which is non-precedential and was rejected by the subsequent reasoning of *Su.*

15

1862(a), 2132(a)(3)(A), 2251(a)(3)(A), (B), 2411(c)(1)(B), 2492(a).  In such cases, Congress refers to "duties," "tariffs," "articles," "countries of origin," and other clear statements of its intent to delegate tariff authorities.  *See* 19 U.S.C. §§ 1338(a), 1862, 2132(a)(3)(A), 2253(a)(3), 2411(c)(1)(B).  IEEPA contains no such references to specific imported articles or their country of origin.  Rather, it permits specified actions, *see* 50 U.S.C. § 1702(a)(1)(B), to enable the President, during a foreign policy crisis, to freeze assets, block transactions, seize foreign property, or to impose embargoes.  It does not provide for the imposition of tariffs.

Each of Congress's express tariff delegations also require ***trade-specific*** prerequisites to be met before the President is authorized to impose tariffs.  These limitations do not just signal when Congress intends to confer tariff power.  Separation of power principles, including those embodied in the non-delegation doctrine, require such constraints for tariff power to be delegated at all, as the CIT correctly held.  Opinion at 27–28.

IEEPA, by contrast, contains no comparable "clear preconditions to Presidential action."  *Fed. Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 559 (1976).  IEEPA has a non-trade specific requirement:

16

the declaration of "*any* unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a) (emphasis added). Because of the wide variety of national emergencies that could fall within IEEPA's ambit, IEEPA is not consistent with Congress's practice of limiting the delegation of tariff authority solely to meet trade-related concerns and findings.

### C. Congress has laid out an extensive statutory regime that authorizes the President to impose tariffs for discrete purposes, and IEEPA does not contain a residual tariff authority for other purposes.

Congress has laid out an extensive statutory regime that authorizes the President to impose tariffs for specific purposes. Interpreting IEEPA to confer an additional, effectively unbounded tariff authority would render that carefully constructed statutory regime meaningless.

This statutory regime for tariffs, which as described above includes Sections 122 and 301 of the Trade Act of 1974 and Section 232 of the Trade Expansion Act of 1962, stands in stark contrast to the statutory regime that governs declared emergencies where Presidents have previously lawfully invoked IEEPA powers since 1977. For

17

example, Presidents have used IEEPA to impose financial sanctions in response to fast-breaking geopolitical developments that threaten U.S. national security and to quickly freeze the assets of foreign organizations that threaten U.S. national security.  Without IEEPA, the President would lack authority to freeze assets, regulate banking transactions, and impose trade embargoes.  By contrast, Congress has provided multiple statutory authorities for the President to impose, remove, or adjust tariffs, including on an urgent basis.

With Section 122 of the Trade Act of 1974, Congress recognized that tariffs might be needed on an urgent and temporary basis – and applied to all goods from all countries.  Section 122 allows the President to take measures that may include a temporary tariff when necessary to address "large and serious United States balance-of-payments deficits" or certain other situations that present "fundamental international payments problems."  19 U.S.C. § 2132.  Section 122 tariffs are limited in duration to 150 days unless extended by Congress, are limited to 15% *ad valorem*, and are subject to other substantive limitations.  *Id.*

If IEEPA were to authorize tariffs to remedy urgent balance of payment problems, it would effectively render Section 122 a nullity,

violating the canon against rendering other statutes redundant.

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645

(2012).  As the CIT correctly recognized, Section 122 "removes the

President's power to impose remedies in response to balance-of-

payments deficits, and specifically trade deficits, from the broader

powers granted to a president during a national emergency under

IEEPA by establishing an explicit non-emergency statute with greater

limitations."  Opinion at 34.

And Congress, knowing it had already passed Section 122 in 1975,

would not have casually or silently expanded tariff powers two years

later in IEEPA without making that clear.  *See, e.g.*, *Parker Drilling*

*Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (Congress is

presumed to legislate against the background of existing law).

Congress considered IEEPA against a backdrop in which it had already

separately authorized multiple types of tariffs, including those at issue

in *United States v. Yoshida Int'l, Inc.* 526 F.2d 560 (C.C.P.A. 1975*)*, as

well as tariffs designed to address threats to national security (in

Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862)—and

19

chose to make those tariffs subject to limits in both scope and duration.[3]

Allowing the President to impose tariffs under IEEPA would effectively render all these other statutes surplusage, contrary to settled principles of statutory interpretation.

### D.    IEEPA's power to "regulate" does not include the power to "tariff."

The President contends that IEEPA's grant of authority to "regulate … importation or exportation" of any property, 50 U.S.C. § 1702(a)(1)(B), includes the power to "tariff."  But giving the President the power to "regulate" is not a clear delegation of the tariff power, and it is an implausible interpretation of the text.  *See Learning Res.,* 2025 WL 1525376, at *8 (holding that "[t]he Constitution treats the power to regulate and the power to impose tariffs separately because they are not substitutes[.]").

In defense of this reading of "regulate," the President has relied on case law holding ***Congress*** may impose tariffs pursuant to Congress's Commerce Clause authority in addition to Congress's powers.  But the fact that ***Congress may use*** its Commerce Clause power to impose

---

[3] Plaintiffs–Appellees have thoroughly briefed why *Yoshida* does not control here, and *Amici* do not repeat those arguments in this brief.

tariffs is entirely separate from the question of whether ***Congress delegated*** that tariff authority to the President; any such delegation must be clear and unequivocal, not cryptic or tacit. *See West Virginia*, 597 U.S. at 723; *Biden*, 600 U.S. at 501. And even when Congress does use its power to "regulate" commerce, the power to "regulate" and the power to impose tariffs do not necessarily go hand in hand. *See Nat'l. Fed'n. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 561–63 (2012) (the Affordable Care Act's individual mandate was a permissible exercise of Congress's taxation power, even if it could not be sustained under its discrete commerce power).

Further, reading "regulate" to implicitly include the power to impose tariffs would produce absurd results. Congress routinely grants regulatory power without any intention of conferring authority to impose tariffs. *See, e.g.*, Securities Exchange Act of 1934, § 4(a), 15 U.S.C. § 78(d) (SEC's power to regulate); Communications Act of 1934, § 303, 47 U.S.C. § 303(e) (FCC's power to regulate). These are not grants of authority to impose or remove tariffs, and the presumption of consistent usage requires treating the term in IEEPA the same way. *See, e.g.*, *United States v. Penn*, 63 F.4th 1305, 1313 (11th Cir. 2023)

21

(courts "read terms consistently across multiple statutes on the same subject"; "a legislative body generally uses a particular word with a consistent meaning in a given context") (cleaned up) (citing, *inter alia*, *Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972))).

### E. Past governmental use of IEEPA's power to "regulate" imports is consistent with the plain language reading of "regulate"—while "tariff" is not.

The extensive past use of IEEPA's power to regulate imports—without imposing tariffs on them—illustrates what Congress intended when it passed IEEPA: the authority to impose reasonable restrictions and licensing requirements on imports, not an unbounded power to assess tariffs. For example, the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) has an extensive practice of issuing "specific licenses" to companies to engage in transactions that would otherwise be prohibited by sanctions, including to import goods that would otherwise be prohibited by IEEPA trade embargoes. Similarly, OFAC has long used IEEPA's power to regulate imports to authorize specific classes of individuals to import specific classes of goods, such as allowing a U.S. oil company to import oil from Venezuela subject to conditions, despite a general ban on importing Venezuelan oil, *see*

OFAC Venezuela General License 41 (later rescinded),

https://ofac.treasury.gov/media/929531/download?inline. Further,

IEEPA has been used to restrict exports of goods. *See*, *e.g.*, Executive

Order No. 14068, Sec. 1(a)(ii) (in response to Russia's invasion of

Ukraine, prohibiting "the exportation, reexportation, sale, or supply,

directly or indirectly, from the United States, or by a United States

person, wherever located, of luxury goods," to Russia).

Each of these applications of IEEPA sanctions powers has also

been applied to either specific countries or to specific categories of non-

state actors, such as terrorists or cyber hacking groups, consistent with

IEEPA's requirement that the President report to the Congress not only

the circumstances that necessitate emergency action but also which

foreign countries the action applies to and why such actions are to be

taken with respect to those particular countries. 50 U.S.C. § 1703(b)(5).

Using IEEPA to impose across-the-board tariffs on imports from all

countries flies in the face of the Congressional mandate to justify

emergency action on a case-specific basis.

**F.    The term "regulate" in IEEPA cannot include the power to impose tariffs because it would put IEEPA in conflict with the constitutional prohibition on export taxes.**

The President's novel and expansive interpretation of "regulate" would also render IEEPA unconstitutional.  IEEPA confers a power to "regulate" both imports *and* exports.  50 U.S.C. § 1702(a)(1)(B).  Thus in the President's reading, IEEPA *must* authorize "tariffs" on exports. *Id.*  But the Constitution *expressly forbids* export tariffs.  U.S. Const. Art. I, § 9, cl. 5 ("No Tax or Duty shall be laid on Articles exported from any State.").  If "regulate imports" were construed to include imposing tariffs, consistency would require reading "regulate exports" the same way.  This latter scenario would plainly run afoul of the Constitution. *See id.*; *A.G. Spalding & Bros. v. Edwards*, 262 U.S. 66 (1923) (taxing exports is "forbidden … by the Constitution.").  The Court must avoid an interpretation of the statute that is both implausible *and* unconstitutional.  *See Sebelius*, 567 U.S. at 537–38, 574 (courts must construe a statute to save it from unconstitutionality whenever possible); *accord, e.g.*, *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

24

### G.    The President is not entitled to deference when he misuses IEEPA.

Whatever deference courts afford the President in certain foreign affairs, the President is not entitled to deference when he misuses IEEPA.  Statutory interpretation falls squarely within the traditional role of the judicial branch, and courts have not accorded the President deference when he misuses IEEPA.

Last year, the Fifth Circuit, applying *Loper Bright v. Raimondo*, 603 U.S. 369 (2024), rejected the Treasury Department's contention that the definition of "property" in the same provision of IEEPA at issue in this case, 50 U.S.C. § 1702, encompassed cryptocurrency "smart contracts" and noted that courts "discharge [their] duty by independently interpreting the statute and effectuating the will of Congress subject to constitutional limits."  *Van Loon v. Dep't of the Treasury*, 122 F.4th 549 at 563 (5th Cir. 2024) (quoting *Loper Bright*, 603 U.S. at 395) (cleaned up).

In 2020, two federal district courts enjoined the President from using IEEPA to ban distribution of Chinese-owned social media app TikTok, ruling that the ban on TikTok likely exceeded the President's authority under the statute—giving the President no deference despite

25

IEEPA's emergency powers. *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92 (D.D.C. 2020); *Marland v. Trump*, 498 F. Supp. 3d 624 (E.D. Pa. 2020). Here, too, "because IEEPA does not authorize the President to impose tariffs, the tariffs that derive from the Challenged Orders are *ultra vires*." *Learning Res.*, 2025 WL 1525376, at *13 (emphasis in original).

## III. IEEPA's Legislative History and Historical Practice Confirm It Does Not Delegate Congress's Tariff Power

Beyond IEEPA's text, two additional considerations demonstrate IEEPA is not a delegation of the tariff power. ***First***, the legislative history of IEEPA shows it was intended to limit the President's emergency powers and confine them to exercises of power that did not include tariffs. ***Second***, IEEPA is almost fifty years old, yet in that entire span, no President had ever asserted that it gave the Executive the right to impose tariffs—until now.

### A. IEEPA's legislative history confirms it was not intended to delegate tariff authority to the President.

Notably, Congress enacted IEEPA in 1977 as part of a package of reforms designed to ***curb*** the President's use of emergency powers. Pub. L. No. 95-223, Title II § 203, 91 Stat. 1626 (1977); Patrick A. Thronson, *Toward Comprehensive Reform of America's Emergency Law*

26

*Regime*, 46 U. Mich. J. L. Reform 737 (2013).  Congress wanted to limit

the expansive powers that Presidents had claimed under Section 5(b) of

the Trading with the Enemy Act of 1917 (TWEA).

In Congress's view, the purpose of IEEPA was to "redefine the

power of the President to regulate international economic transactions

in future times of war or national emergency… [IEEPA] would separate

war and non-war authorities and procedures, preserving existing

Presidential powers in time of war declared by Congress, and providing

somewhat narrower powers subject to congressional review in times of

'national emergency' short of war."  H. R. Rep. No. 95-459 at 1 (1977).

Congress structured IEEPA to strike a careful balance: providing

the President with a flexible and limited tool to address certain national

emergencies **and** limiting those powers with stricter oversight.  *Id.* at

10.  IEEPA included additional procedural limitations related to the

assertion of an emergency: to invoke IEEPA, Presidents must declare a

national emergency.  To sustain IEEPA actions for more than a year, a

President must submit an annual declaration extending the emergency.

50 U.S.C. §§ 1662(d) and 1701.  Congress also gave itself the power to

overturn IEEPA actions with a privileged concurrent resolution

terminating the underlying emergency.[4]

Nothing in the House and Senate reports support the position that IEEPA includes a tariff power.  Instead, the reports describe IEEPA's powers as including the power to regulate foreign exchange and banking transactions and to regulate or freeze property in which foreign nationals have an interest.  *See* S. Rep. No. 95-466 at 4,543 (1977); H. Rep. No. 95-459 at 15 (1977).  Notably absent from these descriptions is the word "tariff."

## B.    The President's use of IEEPA to impose tariffs is unprecedented.

Presidents invoked IEEPA sixty-nine times between Congress passing the statute and early 2024.[5]  During that time, Presidents used IEEPA to respond to a diverse range of emergencies ranging from the 1979 Iranian hostage crisis, *see* Exec. Order No. 12170, 44 Fed. Reg.

---

[4] Legislative vetoes were held unconstitutional in *INS v. Chadha,* 462 U.S. 919 (1983), but Congress has retained privileged joint resolutions as a mechanism to overturn international emergencies.

[5] Christopher A. Casey & Jennifer K. Elsea, *The International Emergency Economic Powers Act: Origins, Evolution, and Use*, Congressional Research Service (Jan. 30, 2024), https://www.congress.gov/crs-product/R45618.

65,729 (1979), to foreign cyber hacking groups threatening U.S. security, *see* Exec. Order No. 13694, 80 Fed. Reg. 18,077 (2015).

Yet between 1977 and 2025, not once did a President use IEEPA to impose tariffs.  The total absence of tariffs for nearly fifty years reinforces the conclusion that the statute was not understood to authorize such measures.  *See Biden*, 600 U.S. at 501 ("[The President's proffered interpretation] is inconsistent with the statutory language and past practice under the statute.").

## IV.    Allowing the President to Impose Tariffs Under IEEPA Would Allow the Executive to Usurp Trade Power

Power over "Taxes, Duties, Imposts and Excises" and "Commerce with foreign nations" are core Congressional prerogatives.  "The question here is not whether something should be done; it is who has the authority to do it"—and how.  *Biden*, 600 U.S. at 501.

Since the country's founding, Congress has exercised its constitutional responsibility over trade.  The very first U.S. Congress enacted the Tariff Act of 1789 within its first months of existence, which George Washington signed into law on July 4, 1789.  In the more than two centuries since, Congress has enacted thousands of pages of statutes related to U.S. trade and tariffs.  And Congress has continued

29

to carry out its constitutional responsibility for tariffs and trade in recent decades.  In 1994 Congress made the decision to approve the Uruguay Round Agreements, which established the World Trade Organization, authorized the United States' participation in it, and set tariff rates.  Pub. L. No. 103-465.  Since the 1980s, Congress has authorized the President to negotiate, and has subsequently approved, fourteen Trade Agreements with trading partners.  These include the U.S.-Mexico-Canada Agreement that President Trump negotiated, and which Congress enacted in 2020.  Pub. L. No. 116-113.  Congress has also enacted a series of tariff preference programs to promote trade and economic development.[6]

The President's sweeping tariffs, imposed in the absence of any grant of authority from Congress, threaten to undermine the trade policies and programs that Congress has pursued through these and other laws.  These unlawful tariffs do not merely modify the statutory tariffs Congress has promulgated and approved—except perhaps "in the

---

[6] *See, e.g.*, The African Growth and Opportunity Act (AGOA); Caribbean Basin Economic Recovery Act (CBERA), Caribbean Basin Trade Partnership Act (CBTPA) of 2000; Haitian Hemispheric Opportunity through Partnership Encouragement (HOPE) Act of 2006; Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA).

same sense that the French Revolution modified the status of the French nobility—it has abolished them and supplanted them with a new regime entirely"—and have done so in the absence of any statutory delegation of power by Congress. *Biden*, 600 U.S. at 496 (cleaned up).

Today, the President claims an authority to fundamentally upend Congress's longstanding and constitutional power over trade based on no more than the inclusion of the phrase "regulate … importation or exportation" of any property in a 1977 emergency powers statute.  50 U.S.C. § 1702.  He has relied on this inapposite language to impose the largest U.S. tariff increases since the 1930s.  What's more, these tariffs, imposed without any statutory authority, are at odds with legislation passed by Congress implementing trade agreements and policies. The power the President claims—to raise or lower tariffs unbounded by any limits on geography, rates, or the types of products covered—far exceeds any authority that Congress has ever granted the President in a trade statute.  Congress does not "hide elephants" (broad tariff authority) "in mouseholes" (a strained and unconstitutional interpretation of the term "regulate").  *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

31

When Congress has acted, it has established stable trade and tariff regimes carefully, deliberately, and transparently, ensuring accountability to the democratic process. In stark contrast, the President's tariffs under IEEPA are mercurial, sudden, and uncertain. It is unclear when they may start, when they may increase or decrease, how much they may increase or decrease, and when they may end.

This is dysregulation, not delegation. The President's actions are not consistent with the lawful power Congress granted in IEEPA in 1977 nor America's constitutional structure. If the President believes that imposing, removing, or amending tariffs are an appropriate policy measure, Congress has given him tools to pursue those goals.[7] But IEEPA is not one of them.

## CONCLUSION

This Court should affirm the CIT's judgment and hold that IEEPA does not authorize tariffs.

---

[7] To be clear, *Amici* take no position here as to whether any of the other statutes discussed herein would permit the tariffs at issue. That is a question for another day. The issue before this Court is the President's invocation of IEEPA to impose tariffs, which is unlawful.

Respectfully submitted,

Date: July 8, 2025

*/s/ William Fred Norton*
William Fred Norton

The Norton Law Firm PC
*Attorneys to Amici Curiae*

33

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Century Schoolbook, a proportionally spaced typeface.  This brief contains 6,105 [under 7,000] words, excluding the exempt portions.  *See* Fed. Cir. R. 29(b) (amicus briefs limited to one-half the maximum number of words authorized by Federal Circuit Rule 32(b) for a principal brief); Fed. Cir. R. 32(b) (14,000-word limit for parties' principal briefs).

/s/ *William Fred Norton*
William Fred Norton

34

## APPENDIX: LIST OF *AMICI CURIAE*

### MEMBERS OF THE U.S. HOUSE OF REPRESENTATIVES

**Jamie Raskin**
Representative of Maryland

**Richard E. Neal**
Representative of Massachusetts

**Gregory W. Meeks**
Representative of New York

**Hakeem Jeffries**
Representative of New York

**Katherine Clark**
Representative of Massachusetts

**Pete Aguilar**
Representative of California

**Joe Neguse**
Representative of Colorado

**Rosa L. DeLauro**
Representative of Connecticut

**Robert Garcia**
Representative of California

**Gabe Amo**
Representative of Rhode Island

**Jake Auchincloss**
Representative of Massachusetts

**Becca Balint**
Representative of Vermont

**Nanette Barragán**
Representative of California

**Joyce Beatty**
Representative of Ohio

**Wesley Bell**
Representative of Missouri

**Ami Bera, M.D.**
Representative of California

**Donald S. Beyer Jr.**
Representative of Virginia

**Sanford D. Bishop, Jr.**
Representative of Georgia

**Suzanne Bonamici**
Representative of Oregon

**Brendan F. Boyle**
Representative of Pennsylvania

**Shontel M. Brown**
Representative of Ohio

**Julia Brownley**
Representative of California

**Janelle S. Bynum**
Representative of Oregon

**Salud O. Carbajal**
Representative of California

**André Carson**
    Representative of Indiana

**Troy A. Carter, Sr.**
    Representative of Louisiana

**Ed Case**
    Representative of Hawaii

**Sean Casten**
    Representative of Illinois

**Kathy Castor**
    Representative of Florida

**Joaquin Castro**
    Representative of Texas

**Sheila Cherfilus-McCormick**
    Representative of Florida

**Judy Chu**
    Representative of California

**Gilbert R. Cisneros, Jr.**
    Representative of California

**Emanuel Cleaver, II**
    Representative of Missouri

**James E. Clyburn**
    Representative of South Carolina

**Steve Cohen**
    Representative of Tennessee

**Herbert C. Conaway, Jr.**
    Representative of New Jersey

**J. Luis Correa**
    Representative of California

**Jim Costa**
    Representative of California

**Joe Courtney**
    Representative of Connecticut

**Angie Craig**
    Representative of Minnesota

**Jasmine Crockett**
    Representative of Texas

**Jason Crow**
    Representative of Colorado

**Sharice L. Davids**
    Representative of Kansas

**Danny K. Davis**
    Representative of Illinois

**Madeleine Dean**
    Representative of Pennsylvania

**Diana DeGette**
    Representative of Colorado

**Suzan K. DelBene**
    Representative of Washington

**Mark DeSaulnier**
    Representative of California

**Maxine Dexter**
    Representative of Oregon

**Lloyd Doggett**
    Representative of Texas

**Sarah Elfreth**
    Representative of Maryland

**Veronica Escobar**
    Representative of Texas

**Adriano Espaillat**
    Representative of New York

**Dwight Evans**
    Representative of Pennsylvania

**Cleo Fields**
    Representative of Louisiana

**Lizzie Fletcher**
    Representative of Texas

**Bill Foster**
    Representative of Illinois

**Valerie P. Foushee**
    Representative of North Carolina

**Lois Frankel**
    Representative of Florida

**Laura Friedman**
    Representative of California

**Maxwell Alejandro Frost**
    Representative of Florida

**John Garamendi**
    Representative of California

**Jesús G. "Chuy" García**
    Representative of Illinois

**Sylvia Garcia**
    Representative of Texas

**Dan Goldman**
    Representative of New York

**Jimmy Gomez**
    Representative of California

**Maggie Goodlander**
    Representative of New Hampshire

**Josh Gottheimer**
    Representative of New Jersey

**Jahana Hayes**
    Representative of Connecticut

**Pablo José Hernández**
    Representative of Puerto Rico

**Jim Himes**
    Representative of Connecticut

**Steven Horsford**
    Representative of Nevada

**Steny H. Hoyer**
    Representative of Maryland

**Jared Huffman**
    Representative of California

**Glenn F. Ivey**
    Representative of Maryland

**Jonathan L. Jackson**
　　Representative of Illinois

**Sara Jacobs**
　　Representative of California

**Henry C. "Hank" Johnson, Jr.**
　　Representative of Georgia

**Julie Johnson**
　　Representative of Texas

**Sydney Kamlager-Dove**
　　Representative of California

**William Keating**
　　Representative of Massachusetts

**Timothy M. Kennedy**
　　Representative of New York

**Ro Khanna**
　　Representative of California

**Raja Krishnamoorthi**
　　Representative of Illinois

**Greg Landsman**
　　Representative of Ohio

**Rick Larsen**
　　Representative of Washington

**John B. Larson**
　　Representative of Connecticut

**George Latimer**
　　Representative of New York

**Summer L. Lee**
　　Representative of Pennsylvania

**Teresa Leger Fernández**
　　Representative of New Mexico

**Mike Levin**
　　Representative of California

**Sam T. Liccardo**
　　Representative of California

**Ted W. Lieu**
　　Representative of California

**Stephen F. Lynch**
　　Representative of Massachusetts

**Seth Magaziner**
　　Representative of Rhode Island

**Doris Matsui**
　　Representative of California

**Lucy McBath**
　　Representative of Georgia

**Sarah McBride**
　　Representative of Delaware

**April McClain Delaney**
　　Representative of Maryland

**Jennifer L. McClellan**
　　Representative of Virginia

**Betty McCollum**
　　Representative of Minnesota

**James P. McGovern**
Representative of Massachusetts

**Robert J. Menendez**
Representative of New Jersey

**Grace Meng**
Representative of New York

**Kweisi Mfume**
Representative of Maryland

**Dave Min**
Representative of California

**Gwen S. Moore**
Representative of Wisconsin

**Joseph D. Morelle**
Representative of New York

**Kelly Morrison**
Representative of Minnesota

**Jared Moskowitz**
Representative of Florida

**Seth Moulton**
Representative of Massachusetts

**Kevin Mullin**
Representative of California

**Jerrold Nadler**
Representative of New York

**Eleanor Holmes Norton**
Representative of the District of Columbia

**Johnny Olszewski, Jr.**
Representative of Maryland

**Frank Pallone, Jr.**
Representative of New Jersey

**Jimmy Panetta**
Representative of California

**Nancy Pelosi**
Representative of California

**Scott H. Peters**
Representative of California

**Brittany Pettersen**
Representative of Colorado

**Chellie Pingree**
Representative of Maine

**Stacey E. Plaskett**
Representative of the Virgin Islands

**Nellie Pou**
Representative of New Jersey

**Mike Quigley**
Representative of Illinois

**Delia C. Ramirez**
Representative of Illinois

**Luz M. Rivas**
Representative of California

**Deborah K. Ross**
Representative of North Carolina

**Andrea Salinas**
  Representative of Oregon

**Linda T. Sánchez**
  Representative of California

**Mary Gay Scanlon**
  Representative of Pennsylvania

**Jan Schakowsky**
  Representative of Illinois

**Bradley Scott Schneider**
  Representative of Illinois

**Kim Schrier, M.D.**
  Representative of Washington

**Robert C. "Bobby" Scott**
  Representative of Virginia

**Terri A. Sewell**
  Representative of Alabama

**Brad Sherman**
  Representative of California

**Mikie Sherrill**
  Representative of New Jersey

**Lateefah Simon**
  Representative of California

**Adam Smith**
  Representative of Washington

**Eric Sorensen**
  Representative of Illinois

**Melanie A. Stansbury**
  Representative of New Mexico

**Greg Stanton**
  Representative of Arizona

**Marilyn Strickland**
  Representative of Washington

**Suhas Subramanyam**
  Representative of Virginia

**Thomas R. Suozzi**
  Representative of New York

**Eric Swalwell**
  Representative of California

**Shri Thanedar**
  Representative of Michigan

**Bennie G. Thompson**
  Representative of Mississippi

**Mike Thompson**
  Representative of California

**Dina Titus**
  Representative of Nevada

**Norma J. Torres**
  Representative of California

**Ritchie Torres**
  Representative of New York

**Derek T. Tran**
  Representative of California

**Juan Vargas**
  Representative of California

**Marc A. Veasey**
  Representative of Texas

**Nydia M. Velázquez**
  Representative of New York

**Debbie Wasserman Schultz**
  Representative of Florida

**Maxine Waters**
  Representative of California

**Bonnie Watson Coleman**
  Representative of New Jersey

**Nikema Williams**
  Representative of Georgia

**Frederica S. Wilson**
  Representative of Florida

## MEMBERS OF THE UNITED STATES SENATE

**Senator Jeanne Shaheen**
  New Hampshire
  Ranking Member
  Senate Foreign Relations Committee

**Senator Charles E. Schumer**
  New York
  Senate Minority Leader

**Senator Peter Welch**
  Vermont

**Senator Angela Alsobrooks**
  Maryland

**Senator Maria Cantwell**
  Washington

**Senator Catherine Cortez Masto**
  Nevada

**Senator Margaret Wood Hassan**
  New Hampshire

**Senator Angus S. King, Jr.**
  Maine

**Senator John Hickenlooper**
  Colorado

**Senator Christopher A. Coons**
  Delaware

**Senator Mark R. Warner**
  Virginia

**Senator Amy Klobuchar**
  Minnesota

**Senator Lisa Blunt Rochester**
  Delaware

**Senator Edward J. Markey**
  Massachusetts

**Senator Ron Wyden**
  Oregon
  Ranking Member
  Senate Finance Committee

**Senator Tim Kaine**
  Virginia

**Senator Michael F. Bennet**
  Colorado

**Senator Ben Ray Luján**
  New Mexico

**Senator Andy Kim**
  New Jersey

**Senator Chris Van Hollen**
  Maryland

**Senator Tammy Duckworth**
  Illinois

**Senator Richard Blumenthal**
  Connecticut

**Senator Alex Padilla**
  California

**Senator Richard J. Durbin**
  Illinois

**Senator Jeffrey A. Merkley**
  Oregon

**Senator Raphael Warnock**
  Georgia

**Senator Mazie K. Hirono**
  Hawaii

**Senator Jacky Rosen**
  Nevada

**Senator Gary C. Peters**
  Michigan